# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| THE HON. PAULINE NEWMAN,<br>Circuit Judge<br>United States Court of Appeals for the Federal Circuit,<br><br>                    *Appellant*,<br><br>  v.<br><br>THE HON. KIMBERLY A. MOORE,<br>in her official capacities as<br>Chief Judge of the U.S. Court of Appeals<br>for the Federal Circuit,<br>Chair of the Judicial Council of the Federal Circuit, and Chair of the Special Committee of the Judicial Council of the Federal Circuit,<br><br>THE HON. SHARON PROST,<br>in her official capacity as<br>Member of the Special Committee of the<br>Judicial Council of the Federal Circuit,<br><br>THE HON. RICHARD G. TARANTO,<br>in his official capacity as<br>Member of the Special Committee of the<br>Judicial Council of the Federal Circuit,<br><br>And<br><br>THE JUDICIAL COUNCIL OF THE<br>FEDERAL CIRCUIT,<br>AND ALL MEMBERS THEREOF,<br><br>                    *Appellees*. | NO. 24-5173<br><br>**MOTION TO UNSEAL** |

Pursuant to Local Rule 47.1(c), Plaintiff-Appellant, the Honorable Pauline Newman respectfully moves to unseal the Supplemental Appendix and the redacted portions of the brief.

\*\*\*

Plaintiff-Appellant filed the Supplemental Appendix under seal under compulsion from Defendants-Appellees who threatened her and her attorneys with unspecified sanctions if any portion of the documents contained in that volume were made publicly available. *See* SA46-48. Defendants-Appellees are unwilling to make public even *redacted* versions of the documents included in the Supplemental Appendix but have provided no reason for this demand. Because nothing justifies withholding the Supplemental Appendix from the public, this Court should unseal it.[1]

The Supplemental Appendix contains four documents: (1) Judge Newman's September 25, 2024 Motion to Reconsider her suspension; (2) the Special Committee's October 21, 2024 Order in response to said Motion; (3) Judge Newman's December 2, 2024 Reply to the Order; and (4) the December 3, 2024 Gag Order of the Special Committee. None of the documents identifies any witnesses, complainants, or any other protected

---

[1] The Court should also order the unsealing of the redacted version of Judge Newman's Opening Brief.

people. Indeed, the only confidential information in these documents is the recitation of certain aspects of Judge Newman's own medical history. No justifiable reason exists to keep these documents under seal, and the law requires that they be made public.

The Defendants-Appellees have issued their orders under seal and have required Judge Newman, contrary to her own wishes, to keep her submissions to the Special Committee secret as well. Judge Newman has repeatedly exercised her right to request the release of these documents. *See* 28 U.S.C. § 360(a)(3); Rules for Judicial-Conduct and Judicial-Disability Proceedings ("Conduct Rules") 23(b)(7). Yet, Defendants-Appellees have refused to abide by the statute and the rules, and have indeed threatened Judge Newman and her counsel with unspecified sanctions were these documents made public anywhere—including before this Court. In other words, Defendants-Appellees have sought not only to direct the process within their own forum, but to dictate to Judge Newman how to litigate this matter here. This entirely inappropriate effort contradicts the governing statute, and it violates the First Amendment's right to petition for redress of grievances and the basic norms of due process of law.

## I.

Both the Judicial Conduct and Disability Act of 1980 and the Conduct Rules permit a judge who is subject of the complaint to authorize the release of disciplinary proceeding documents. *See* 28 U.S.C. 360(a)(3); R. 23(b)(7). Under both the Act and the Rule, such a request has to be countersigned by the chief judge of the relevant circuit, but as the Conduct Rules explain, "[o]nce the subject judge has consented to the disclosure of confidential materials related to a complaint, the chief judge ordinarily will refuse consent *only* to the extent necessary to protect the confidentiality interests of the complainant or of witnesses who have testified in investigatory proceedings or who have provided information…." R. 23(b)(7). It is undisputed that none of the documents in the Sealed Volume mentions or even alludes to any witnesses. Thus, under the plain text of the Rule, the Chief Judge of the Federal Circuit is not at liberty to unilaterally withhold these documents from the public, much less hamper Judge Newman's ability to litigate this matter in this Court in a way that she deems appropriate.

Despite the clear language of the rule, the Special Committee denied Judge Newman's request to make these documents public, and it threatened her and her attorneys with sanctions were she to file these

4

documents in a publicly available Appendix, which counsel were planning to do on her behalf. SA46-48. As a justification for the denial, the Special Committee cited dangers of creating a "misleading public impression" and inability to "provide appropriate context." SA47. But these considerations are simply not part of the Rules and therefore are not a legally cognizable or permissible basis for the Order. Moreover, the Special Committee provided no factual basis for its vague, conclusory statements. If Defendants-Appellees believe that their own orders may create a "misleading public impression," the solution is to craft better orders and not to shield their orders from public view and scrutiny.

Because Defendants-Appellees' refusal to release the documents despite Judge Newman's repeated requests contradicts the clear language of the Conduct Rules, this Court owes no deference to it. *See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2258-59 (2024). Nor is comity appropriate where judges of another court are parties to a case.

## II.

"Judicial records belong to the American people; they are public, not private, documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). For that reason, courts "heavily disfavor sealing information placed in the judicial record," *June Med. Servs., L.L.C. v.*

5

*Phillips*, 22 F.4th 512, 519-20 (5th Cir. 2022). The presumption of access (and against sealing) can be overcome only "by specific, on-the-record findings that the public's interest in access to information is overcome by specific and *compelling showings of harm.*" *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 595 (6th Cir. 2016) (quoting *Tri-Cty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 Fed. Appx. 477, 490 (6th Cir. 2012) (Gwin, J., concurring and dissenting in part)) (emphasis added). "Simply showing that the information would harm [someone's] reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983). The Special Committee's concerns with "proper context" and creating a "misleading public impression" are not "compelling" reasons that can outweigh the "strong presumption in favor of public access to judicial proceedings." *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (internal quotation marks omitted).

> This Court has
>> identified six factors to guide the inquiry into whether the presumption is overcome: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to the disclosure, and their identity; (4) the strength of any property

6

> and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Abdelhady v. George Washington Univ.*, 89 F.4th 955, 958 (D.C. Cir. 2024) (citing *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980)).

Applying these factors to the present case, it is evident that the presumption favoring access is not even close to being overcome. With respect to the public need for the documents, it is worth noting that the proceedings against Judge Newman have sparked considerable interest in the press and academic circles. *See, e.g.*, Rachel Weiner, *At the Center of a Court Drama: Judges*, WASH. POST at A1 (June 5, 2023); Jack Brake, *Effective Removal of Article III Judges: Case Suspensions and the Constitutional Limits of Judicial Self-Policing*, 91 U. Chi. L. Rev. 1111 (2024). Indeed, two former (and retired) Chief Judges of the Federal Circuit and even an active federal appellate judge have written editorials criticizing the process. *See* Paul Michel, *Judge Newman's Suspension by the CAFC Has Marred Public Faith in the Federal Judiciary*, IPWatchdog.com (Dec. 2, 2024), https://tinyurl.com/2xneyhnk; Edith H. Jones, *Federal Judges Deserve Due Process, Too*, Wall St. J. (Aug. 15, 2023); Randall R. Rader, *The Federal Circuit Owes Judge Newman an Apology*,

7

IPWatchdog.com (July 12, 2023), https://tinyurl.com/255amrnj; Paul R. Michel, *Chief Judge Moore v. Judge Newman: An Unacceptable Breakdown of Court Governance, Collegiality and Procedural Fairness*, IPWatchdog.com (July 9, 2023), https://tinyurl.com/z2xcb2kk. And it is axiomatic that "the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Shane Grp. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016).

As to the second factor, while it is true that the documents in question have not been previously made available, that factor cannot be given much weight because the prior restriction was not imposed by applying an appropriate balancing test and is, as explained *ante*, contrary to the plain language of the Conduct Rules.

Nor has anyone (other than Defendants-Appellees, for entirely self-serving reasons) objected to the release of these documents. To the contrary, the press, among other actors, has routinely made inquiries regarding the current status of Judge Newman's disciplinary proceedings and developments therein. There are also *zero* property or privacy (except Judge Newman's own) concerns involved in unsealing the Supplemental Appendix. Indeed, Defendants-Appellees appear to admit that their only

8

concern is the general public's poor perception (which they believe is unwarranted) of their own actions. *See* SA47.

Next, it is hard to see how unsealing these orders will prejudice Defendants-Appellees. After all, Judge Newman is not seeking selective release of documents that would place the Defendants-Appellees in a particularly disadvantageous legal or public position. To the contrary, it is Defendants-Appellees who are seeking to preclude Judge Newman from informing the public, *amici curiae, and this Court* about what she perceives are significant constitutional and statutory violations. A full release of the documents will allow the public to see for itself whether Defendants-Appellees or Judge Newman is correct. If Defendant-Appellees' orders are legally justifiable, their release will not only not prejudice them, but it will actually bolster their position.

Finally, the purpose for the introduction of these documents also weighs in favor of disclosure. Judge Newman contends that these documents reinforce her argument that the disciplinary proceedings against her have been marred by prejudice and violated Due Process of Law.[2] Unlike in *Hubbard,* the documents do not implicate anyone's (other

---

[2] Understandably, Defendants-Appellees disagree, and they will have a chance to explain their position in their responsive brief.

9

than Judge Newman's own) privacy interests, and their release will not impinge on Defendants-Appellees' ability to continue in their roles as members of the Special Committee or Judicial Council—aside from possibly reinforcing the already ironclad case for recusal and transfer to another circuit for resolution. Thus, *all* relevant factors favor unsealing the documents in question.

### III.

"The public's right of access to judicial records is a fundamental element of the rule of law." *Leopold v. United States (In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders)*, 964 F.3d 1121, 1123 (D.C. Cir. 2020). This right "reflects the antipathy of a democratic country to the notion of secret law, inaccessible to those who are governed by that law. The right antedates the Constitution, and has been recognized by this court since at least 1894." *Id.* at 1127 (internal quotations omitted). Contrary to Defendants-Appellees' assertion that the release of the documents in question might create a "misleading public impression," this Court held that "the right of inspection serves to produce an informed and enlightened public opinion." *Id.* (internal quotations omitted). Defendants-Appellees' concern that the public opinion will not be particularly enlightened is irrelevant and misplaced. The public has a

right to form its own opinion, free from government's interference. *See Shady Recs., Inc. v. Source Enterprises, Inc.*, 351 F. Supp. 2d 74, 76 (S.D.N.Y. 2004) ("The First Amendment fully protects … everyone … right to … form his or her own opinions."); *cf. Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 63 (1976). And were the public to temporarily form an "incorrect" opinion, it can be rectified by a subsequent order from the Special Committee or Judicial Council. Thus, there is no sound reason to deny the public access to the materials in the Supplemental Appendix.

## IV.

Finally, the history of this matter further shows that the Special Committee's Gag Order is arbitrary and capricious. When Judge Newman filed her initial complaint, she brought a First Amendment challenge to the Defendants-Appellees' prior gag order. *See* ECF 1 at 16-17 (¶¶57-61). Such a challenge was fully supported by the precedent of *McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 83 F. Supp. 2d 135, 171-78 (D.D.C. 1999), *aff'd in part, vacated in part*, 264 F.3d 52 (D.C. Cir. 2001) (holding that "a judge's interest in vindicating his reputation, and in announcing his perspective on the proceedings to all who will listen. Indeed, this interest surely deserves the most heightened First

11

Amendment protection.").[3] In response to the Complaint, Defendants-Appellees, relying on Rule 23(b)(7), released all then-sealed documents. This satisfactory resolution prompted Judge Newman to amend her Complaint and drop the First Amendment challenge to Defendants-Appellees' prior gag order. However, as soon as the voluntary dismissal was obtained, Defendants-Appellees reverted to their old ways, and became not responsive to Judge Newman's Rule 23(b)(7) requests. Defendants-Appellees' decisions on the public release of materials can only be characterized as arbitrary and capricious. For example, in June of this year, they refused to release an order setting a date for a hearing on the question of whether Judge Newman's suspension ought to be renewed. When they finally did release the order, for reasons unknown, they redacted the time and place of the argument.[4] It is hard to understand how publicly releasing the date of the hearing may create a "misleading public impression" or fail to "provide appropriate context." SA47. And absent

---

[3] This portion of the District Court's decision was not appealed, and was left undisturbed by this Court's subsequent opinion.

[4] This stands in contrast to the order setting oral argument in 2023 where no such redactions were made. *Compare* Special Committee Order of June 1, 2023 at 6, https://tinyurl.com/6z4nzau6, *with* Special Committee Order of May 31, 2024 at 1, https://tinyurl.com/446m36ez.

such an explanation, one is left with the impression that the justification presently proffered by Defendants-Appellees not only lacks roots in the statute and Conduct Rules, but also lacks any factual basis. The order simply does not provide any basis for its assertion that it is justified by desire to "preserve the integrity" of the judicial or disciplinary process. The only discernible purpose for the Gag Order is to shield the Special Committee from entirely deserved public criticism—a purpose that, as explained above, is contrary to law.

## RELIEF REQUESTED

Wherefore, for reasons stated, Appellant respectfully requests that the Court unseal all appendix documents filed under seal, as well as an unredacted version of Appellant's opening brief.

Respectfully submitted,

*/s/John J. Vecchione*
John J. Vecchione
Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
Telephone: (202) 869-5210
Facsimile: (202) 869-5238
john.vecchione@ncla.legal

*Counsel for Appellant*

# Certificate of Service

I hereby certify that on December 9, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing all registered users associated with this case.

*/s/John J. Vecchione*
John J. Vecchione
Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
Telephone: (202) 869-5210
Facsimile: (202) 869-5238
john.vecchione@ncla.legal

*Counsel for Appellant*