**ORAL ARGUMENT NOT YET SCHEDULED**
**No. 24-5173**

———————

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————

HON. PAULINE NEWMAN,

*Plaintiff-Appellant,*

v.

HON. KIMBERLY MOORE, in her official capacities as Chief Judge of the
U.S. Court of Appeals for the Federal Circuit, and Chair of the Special
Committee of the Judicial Council of the Federal Circuit;
HON. SHARON PROST, in her official capacity as Member of the
Special Committee of the Judicial Council of the Federal Circuit;
HON. RICHARD TARANTO, in his official capacity as Member of the
Special Committee of the Judicial Council of the Federal Circuit;
and JUDICIAL COUNCIL OF THE FEDERAL CIRCUIT AND
ALL MEMBERS THEREOF, in their official capacities,

*Defendants-Appellees.*

———————

**On Appeal from the United States District Court**
**for the District of Columbia,**
**No. 23-cv-01334-CRC; Hon. Christopher R. Cooper**

———————

**BRIEF OF HON. JANICE ROGERS BROWN, HON. PAUL R. MICHEL,**
**HON. RANDALL R. RADER, HON. THOMAS I. VANASKIE,**
**HON. PAUL G. CASSELL, AND HON. SUSAN G. BRADEN**
**AS *AMICI CURIAE* IN SUPPORT OF APPELLANT, URGING REVERSAL**

———————

Richard A. Samp (D.C. Bar #367194)
3815 N. Ridgeview Road
Arlington, Virginia 22207
703-525-9357
rasamp@verizon.net

December 12, 2024

**CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES**

**Parties and *Amici***. All parties and *amici* appearing before this Court are listed in the Certificates as to Parties, Rulings, and Related Cases filed by Appellant, except for the individuals who are filing this *amicus curiae* brief in support of Appellant: Hon. Susan Braden, Hon. Janice Rogers Brown, Hon. Paul Cassell, Hon. Randall Rader, and Hon. Thomas Vanaskie.

**Rulings Under Review**. The rulings under review are set forth in the Certificates as to Parties, Rulings, and Related Cases filed by Appellant.

**Related Cases**. Counsel for *amici curiae* is unaware of any related cases before this Court.

/s/ Richard A. Samp
Richard A. Samp

Dated: December 12, 2024

# RULE 29(d) CERTIFICATE REGARDING SEPARATE FILINGS

Before filing this brief, I consulted with attorneys with two other organizations that were interested in participating as *amici curiae* in support of Appellant. We determined that it would not be practicable for all the potential *amici* to join in a single brief. In particular, the brief I drafted was the only one on behalf of retired federal judges and thus the only one that sought to make arguments from the perspective of individuals with federal judicial experience. Also, unlike the other prospective briefs, this brief focuses largely on whether a federal statute precludes federal courts from exercising jurisdiction over Appellant's constitutional claims.


/s/ Richard A. Samp
Richard A. Samp

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES . . . . . . . i

RULE 29(d) CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

GLOSSARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

INTERESTS OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PROCEEDINGS BELOW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.    JUDGE NEWMAN IS ENTITLED TO BRING HER CONSTITUTIONAL CLAIMS
      BEFORE AN ARTICLE III COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      A.    Appellees Cannot Overcome the "Strong Presumption" in Favor
            of Judicial Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      B.    *McBryde* Does Not Support the District Court's Dismissal of
            Judge Newman's Constitutional Claims . . . . . . . . . . . . . . . . . . . . . 18

II.   THE JUDICIAL COUNCIL HAS VIOLATED SEPARATION-OF-POWERS
      PRINCIPLES BY REMOVING JUDGE NEWMAN'S JUDICIAL POWERS FOR AN
      INDEFINITE PERIOD OF TIME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Bradley v. Fisher*,
  80 U.S. 335 (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

\* *Demore v. Kim*,
  538 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 24

*Free Enterprise Fund v. Public Company Accounting Oversight Bd.*,
  461 U.S. 477 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Griffith v. Fed. Labor Relations Auth.*,
  842 F.2d 487 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hastings v. Judicial Conference of the United States*,
  770 F.2d 1093 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

\* *Johnson v. Robison*,
  415 U.S. 361 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 14, 15, 16, 20

\* *McBryde v. Committee to Review Circuit Court Conduct and Disability Orders*,
  264 F.3d 52 (D.C. Cir.2001) . . . . . . . . . . . .   9, 11, 18, 19, 20, 21, 22, 23, 24, 27

*Mistretta v. United States*,
  488 U.S. 361 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pierson v. Ray*,
  386 U.S. 547 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

\* *SAS Inst., Inc. v. Iancu*,
  584 U.S. 357 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*Webster v. Doe*,
  486 U.S. 592 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Williams v. Lew*,
  819 F.3d 466 (D.C. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Statutes, Regulations, and Constitutional Provisions:**

\* U.S. Const., Art. I, § 3, cl. 6 ("Impeachment Clause") . . . . . . . . . . . 12, 20, 26, 27

U.S. Const., Art. III, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

\* Authorities on which we chiefly rely are marked with asterisks

U.S. Const., amend. i ("Free Exercise Clause")...........................15

U.S. Const., amend. iv ...............................................8

Judicial Disability and Misconduct Act (the "Disability Act"),
  28 U.S.C. §§ 351 *et. seq* .........................4, 8, 10, 16, 17, 22, 23
       28 U.S.C. § 351 Statutory Note ...................................23
       28 U.S.C. § 351(b) ...............................................4
       28 U.S.C. § 352(c) ..............................................14
       28 U.S.C. § 354 ..................................................8
       28 U.S.C. § 357(a) ...........................................10, 16
       28 U.S.C. § 357(c) ........ 8, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22

21st Century Department of Justice Appropriations Authorization Act,
  Pub. L. No. 107-273, Div. C, Title I, Subtitle C, § 11044, 116 Stat. 1758,
  1856 (Nov. 2, 2002)............................................22, 23

8 U.S.C. § 1226(e) .................................................15

28 U.S.C. § 372(c)(10) (2001) .......................................19

28 U.S.C. § 1331 ..................................................13

38 U.S.C. § 211(a) .................................................14

Fed.R.Civ.P. 12(b) ...............................................5, 6

Fed.R.Civ.P. 12(b)(1)...............................................8

Fed.R.Civ.P. 12(b)(6)...............................................8

**Miscellaneous:**

Federal Circuit Special Committee, Report and Recommendation
(July 31, 2003), https://tinyurl.com/4az95aat . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Circuit Judicial Council Order
(Sept. 6, 2024), https://tinyurl.com/2vs2v627. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Judicial Conduct and Disability Committee of the Judicial Conference,
*In re Complaint of Judicial Misconduct*, C.C.D. 23-01 (February 7, 2024) . . . . 6

Rules for Judicial-Conduct and Judicial-Disability Proceedings,
Commentary on Rule 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# GLOSSARY

| | |
|---|---|
| Disability Act | Judicial Disability and Misconduct Act, 28 U.S.C. §§ 351 *et. seq.* |
| JA | Joint Appendix |
| J&CD | Judicial Conduct and Disability Committee of the Judicial Conference |
| Judicial Council | Judicial Council of the Federal Circuit |
| Special Committee | Special Committee established by Chief Judge Kimberly A. Moore of the Federal Circuit in March 2023 to investigate her complaint against Judge Pauline Newman |
| VA | Veterans' Administration |

# INTERESTS OF *AMICI CURIAE*[1]

Hon. Janice Rogers Brown served as a Judge on the United States Court of Appeals for the District of Columbia Circuit from 2005 to 2017.  From 1996 to 2005, she served as an Associate Justice on the California Supreme Court.

Hon. Paul R. Michel served as a Judge on the United States Court of Appeals for the Federal Circuit from 1988 to 2010.  He served as Chief Judge of that court from 2004 to 2010.

Hon. Randall Ray Rader served as a Judge on the United States Court of Appeals for the Federal Circuit from 1990 to 2014.  He served as Chief Judge of that court from 2010 to 2014.

Hon. Thomas I. Vanaskie served as a Judge on the United States Court of Appeals for the Third Circuit from 2010 to 2019.  He served as a Judge on the United States District Court for the Middle District of Pennsylvania from1994 to 2010; he served as Chief Judge of that court from 1999 to 2006.

Hon. Paul G. Cassell served as a Judge on the United States District Court for the District of Utah from 2002 to 2007.  He is currently a Presidential

---

[1] *Amici curiae* state that no counsel for a party authored this brief in whole or in part; and that no person or entity, other than their counsel, made a monetary contribution intended to fund the preparation and submission of this brief.  All parties have consented to the filing of the brief.

Professor of Criminal Law and a University Distinguished Professor at the University of Utah.[2]

Hon. Susan G. Braden served as a Judge on the United States Court of Federal Claims from 2003 to 2019. She was designated by the President as Chief Judge in 2017, assumed senior status in 2018, and retired from the bench in 2019.

Each of the *amici* has a strong interest in ensuring that all federal judges are at liberty to exercise their functions with complete independence and are afforded a judicial forum within which to raise constitutional claims.

## INTRODUCTION

Judge Pauline Newman has served with distinction on the United States Court of Appeals for the Federal Circuit since shortly after its creation in 1982. Her many dissents may, on occasion, have irritated some of her judicial colleagues, but those opinions routinely have been vindicated by the U.S. Supreme Court—including as recently as this year. Physicians who have examined her recently all have concluded that she is cognitively sharp, an opinion shared by members of the patent bar who have witnessed her recent public appearances. Neither the medical experts nor anyone else has concluded that Judge Newman is disabled or otherwise incapable of performing her judicial duties.

_____

[2] Current employment listed for identification purposes only.

2

Nonetheless, Judge Newman effectively has been removed from judicial office by Appellees. In response to her decision to decline a medical examination by doctors of their choice, Appellees removed Judge Newman from all judicial activities—including hearing cases, writing opinions, and voting on petitions to hear cases en banc. The initial order imposed a one-year suspension, but Appellees in September 2024 renewed the suspension for another year and made clear that the suspension would continue indefinitely until Judge Newman acquiesced to their examination demands She responded by filing suit in district court, alleging that she has been removed from office in violation of her constitutional rights. Instead of addressing the merits of those constitutional issues, the district court dismissed Judge Newman's claims largely on the ground that judicial review was precluded.

That holding cuts against the strong presumption that all U.S. citizens are entitled to have their federal constitutional claims heard in a federal court. This presumption only can be overcome by clear and convincing evidence that Congress meant to foreclose review, evidence that is lacking here. Judge Newman is entitled to her day in court.

Moreover, the facts alleged by Judge Newman state a valid claim. The Constitution assigns to the U.S. Senate alone the power to remove Article III

judges from office. By suspending Judge Newman for an indefinite period and thereby effectively removing her from judicial office, Appellees have usurped that authority and directly challenge the independence of all federal judges.

## STATEMENT OF THE CASE

The Judicial Disability and Misconduct Act, 28 U.S.C. §§ 351 *et. seq.*, enacted by Congress in 1980, authorizes the Judicial Council of each federal circuit to conduct investigations into alleged misconduct or disability of circuit and district judges sitting within that circuit. The Disability Act authorizes the Chief Judge of each U.S. Court of Appeals to issue an order that "identif[ies] a complaint" against another judge, thereby setting in motion an investigatory process. 28 U.S.C. § 351(b).

Citing that statutory procedure, Federal Circuit Chief Judge Kimberly Moore in March 2023 filed a complaint stating that "there is probable cause to believe that Judge Newman's health has left her without the capacity to perform the work of an active judge."[3] Judge Moore thereafter appointed a three-judge "Special Committee" (naming herself as one of the three members) to investigate

---

[3] Appellees have rejected Judge Newman's repeated requests that they transfer proceedings to the Judicial Council of another circuit. Such transfers are the norm in proceedings of this nature, given the significant potential for conflicts of interest.

4

this allegation.  Judge Moore also announced that Judge Newman would be assigned no new cases until the disability proceedings were concluded.[4]

In April 2023, the Special Committee issued orders directing Judge Newman to turn over all her medical records for the previous two years and to submit to extensive medical testing by doctors selected by the Committee without input by Judge Newman.[5]  Dismayed by the inaccuracy of many of the Special Committee's statements regarding her medical history and its unreasonable time demands, Judge Newman declined to be examined by the doctors selected by the Committee.  Instead, she submitted  reports from three medical experts who examined her (two in 2023 and a third in 2024).  Each of the experts concluded that Judge Newman's cognitive abilities are fully intact and there is no reason to

---

[4] One initial rationale for the no-new-case-assignment order was that Judge Newman had a backlog of unissued opinions in pending cases.  Judge Newman, however, issued an opinion in the last of her pending cases in November 2023, and Chief Judge Moore no longer relies on that rationale.  Judge Newman has been barred from exercising any of her judicial powers since that date, and she has not sat on any three-judge or en banc panels since March 2023.

[5] The factual statements herein are drawn from Judge Newman's Amended Complaint.  JA 31-63.   Because the case comes to the Court on appeal from the district court's grant of Appellees' Rule 12(b) motions to dismiss, all well-pleaded factual allegations must be accepted as true for purposes of this appeal.  *See Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016).

believe that she is or would be unable to perform the functions of her judicial office.

The Special Committee stated in July 2023 that Judge Newman's failure to "cooperate" with its investigation by submitting to its mandated medical tests constituted misconduct. It recommended to the Judicial Council that, as punishment, Judge Newman "not be permitted to hear any cases, at the panel or en banc level, for a period of one year ... subject to consideration of renewal." July 31, 2023 Report & Recommendation at 109, https://tinyurl.com/4az95aat. The Special Committee made no finding regarding whether Judge Newman's health was such that she lacked the capacity to perform the work of an active judge. On September 20, 2023, the Judicial Council approved the Committee's one-year-suspension recommendation.

Judge Newman appealed that decision to the Judicial Conduct and Disability Committee of the Judicial Conference (JC&D). On February 7, 2024, the JC&D affirmed. In re Complaint of Judicial Misconduct, C.C.D. 23-01. It concluded that Chief Judge Moore and the Judicial Council had not abused their discretion in rejecting Judge Newman's request that the complaint be transferred to another Judicial Council, and that the Judicial Council had not exceeded its statutory authority in imposing its sanction. Notably, the JC&D did not address

any of Judge Newman's constitutional claims, including her claim that the Judicial Council exceeded its constitutional authority by effectively removing her from judicial office.

On September 6, 2024, the Judicial Council, acting at the recommendation of the Special Committee, renewed its suspension for a second year. Sept. 6, 2024 Judicial Council Order, https://tinyurl.com/2vs2v627. The Special Committee recommended that this second one-year suspension be "*subject to renewal if the refusal to cooperate found here continues after that time*" (emphasis added) and termed Judge Newman's refusal to be examined by the Committee's doctors "a serious form of continuing misconduct."

## PROCEEDINGS BELOW

While the initial Judicial Council proceedings were still pending, Judge Newman filed suit for injunctive relief in U.S. District Court for the District of Columbia against all members of the Special Committee and all members of the Federal Circuit Judicial Council, in their official capacities. The Amended Complaint, filed on June 29, 2023, is divided into 11 counts and claims numerous constitutional and statutory violations. JA 31-63. Most pertinent here are Counts I, II, and III, which allege that Appellees have removed Judge Newman from the

federal bench and that those efforts violate (among other things) separation-of-powers provisions of the U.S. Constitution. JA 51-54.

In response to Appellees' Rule 12(b) motion to dismiss, the district court on February 2, 2024 dismissed Counts I, II, and III, together with much of the rest of the Amended Complaint. JA 147-182. The court began its analysis by determining whether those three counts should be classified as as-applied constitutional challenges or facial challenges. The court interpreted Counts II and III as as-applied challenges to Appellees' efforts to remove Judge Newman from office. It interpreted Count I as a facial challenge to a provision of the Disability Act, 28 U.S.C. § 354, which authorizes Judicial Councils to impose sanctions (including temporary no-case-assignment orders) on judges. JA 178.

The court held that the Disability Act's review provision, 28 U.S.C. § 357(c), deprives federal courts of jurisdiction over *as-applied* constitutional challenges to Judicial Council orders and, on that basis, it dismissed Counts II and III under Rule 12(b)(1). JA 168-69. The court stated that the review provision did not bar *facial* challenges to Judicial Council orders and thus held that it possessed subject matter jurisdiction over Count I. But it then dismissed Count I under Rule 12(b)(6), ruling that the facial challenge fails because § 354 has at least *some* constitutional applications—even if Judge Newman were correct that it was being

8

applied to her in an unconstitutional manner.  JA 178-80.  The court asserted that

both of its rulings were mandated by this Court's decision in *McBryde v.*

*Committee to Review Circuit Council Conduct and Disability Orders*, 264 F.3d 52

(D. C. Cir. 2001).  JA 168.[6]

## SUMMARY OF ARGUMENT

The federal courts have jurisdiction to hear Judge Newman's constitutional

challenge to the Judicial Council's alleged efforts to remove her from the federal

bench.  The district court's decision to the contrary fails to give effect to the

"strong presumption" in favor of judicial review of administrative action, "which

applies in a particularly rigorous fashion ... when constitutional claims are at

stake."  *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487,494 (D.C. Cir. 1988).

That presumption can be overcome only by "clear and convincing indications that

Congress meant to foreclose review."  *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 370

(2018).

As supposed evidence of congressional intent to foreclose judicial review of

Judge Newman's as-applied constitutional challenges, the district court pointed to

---

[6] On July 9, 2024, the district court granted Appellees' motion for judgment
on the pleadings on Judge Newman's remaining claims.  The court held that the
Disability Act is not void for vagueness, and it rejected Judge Newman's Fourth
Amendment facial challenge.  JA 201-215.

28 U.S.C. § 357(c), which imposes some limitations on judicial review of Judicial Council "orders and determinations." But § 357(c) makes no mention of constitutional claims. A statute cannot be deemed to provide the requisite "clear and convincing indications" of an intent to preclude constitutional challenges when it fails to address the issue directly. *Johnson v. Robison*, 415 U.S. 361, 366-67 (1974).

Indeed, the district court conceded that § 357(c) authorizes federal courts to exercise jurisdiction over at least some constitutional challenges to Judicial Council actions: challenges that raise facial claims. But given that § 357(c) makes no mention whatsoever of constitutional challenges, the statute provides no basis for the district court's purported jurisdictional distinction between facial and as-applied constitutional claims. Congress surely would have no less reason to provide Judge Newman with a judicial forum if she alone were suffering constitutional injury than if Judicial Councils were imposing the same constitutional injuries on others as well.

Denying a judicial forum to Judge Newman is particularly harsh because she has absolutely nowhere else to turn for redress. The Disability Act grants her a right to petition to the JC&D for review of Judicial Council decisions. 28 U.S.C. § 357(a). But the JC&D has consistently taken the position that it will not decide

constitutional challenges to Judicial Council actions, and it did not address any of Judge Newman's constitutional claims.

The district court held that its no-jurisdiction ruling was mandated by this Court's *McBryde* decision. The district court's reliance on *McBryde* was misplaced, for several reasons. First, the decision was narrow; it did not purport to rule out *all* as-applied constitutional challenges to Judicial Council rulings. In particular, *McBryde* clearly stated that claims of the type that Judge Newman is raising—that a Judicial Council is seeking to effectively remove an Article III judge from her position in violation of the Constitution—are not barred by § 357(c). *McBryde*, 264 F.3d at 65. Second, congressional legislation adopted after *McBryde* was decided strongly suggests that *McBryde*'s interpretation of § 357(c) as it existed in 2001 is no longer binding. Moreover, subsequent Supreme Court decisions call into question *McBryde*'s approach to construing jurisdiction-limiting statutes—and suggest that *McBryde*'s holding should be limited to its facts.

Turning to the merits, the Court should rule that Judge Newman's separation-of-powers allegations state a claim upon which relief can be granted. Judge Newman has pleaded facts rendering plausible her claim that Appellees are seeking to remove her from office. They have renewed the suspension of her

11

judicial powers for a second year and have made plain their intent to continue that suspension for as long as she continue to refuse their medical-examination demands. Such conduct amounts to a *de facto* removal from office, a power that is denied to the judiciary under the Constitution. Instead, the Impeachment Clause, Art. I, § 3 cl. 6, assigns that power "sole[ly]" to the U.S. Senate. The Special Committee asserts that Judge Newman's refusal to acquiesce to its medical demands constitutes "a serious form of continuing misconduct." If it considers the misconduct sufficiently serious to warrant removal from office, its proper course is to refer the matter to Congress for possible impeachment and trial, not to act unilaterally.

## ARGUMENT

### I. JUDGE NEWMAN IS ENTITLED TO BRING HER CONSTITUTIONAL CLAIMS BEFORE AN ARTICLE III COURT

#### A. Appellees Cannot Overcome the "Strong Presumption" in Favor of Judicial Review

Federal court jurisdiction has always served as a critical safeguard of individual liberties. That protection is a vital check against the modern administrative state. In their wisdom, the Framers recognized the importance of an independent judiciary to protect constitutional rights and prevent government abuse. Congress reinforced those protections by adopting a broad jurisdictional

12

statute, 28 U.S.C. § 1331, which grants federal district courts "original jurisdiction of all civil actions arising under the Constitution."  Included within this grant of jurisdiction is the power "to issue injunctions ... to protect rights safeguarded by the Constitution."  *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 461 U.S. 477, 491 n.2 (2010).

Congress is permitted to adopt legislation that imposes limits on federal district court jurisdiction, but courts have been very reluctant to interpret federal statutes as barring jurisdiction over constitutional claims because of the threat to liberty posed by any such interpretation.  *Robison*, 415 U.S. at 366 (construing a statute as barring challenges to the constitutionality of a federal law as applied "would, of course, raise serious questions concerning the constitutionality" of the statute).  Because of those concerns, the Supreme Court has created a "strong presumption" that district courts possess jurisdiction to hear such challenges and has stated that the presumption can be overcome only by "clear and convincing indications that Congress meant to foreclose review."  *SAS Inst.*, 584 U.S. at 370.

The district court held that the Disability Act's review provision, 28 U.S.C. § 357(c), clearly and convincingly indicates that Congress intended to preclude

judicial review of all of Judge Newman's as-applied constitutional claims.[7]  But

§ 357(c) says nothing about whether its limitations on judicial review of Judicial

Council actions apply to constitutional claims—whether facial or as-applied.

*Robison* held that the absence of explicit reference to "constitutional claims" in a

statute limiting review of Veterans Administration determinations indicated that

the statute failed to provide the requisite "clear and convincing evidence" that

Congress intended to bar the plaintiff from raising either facial or as-applied

challenges to a VA determination.  415 U.S. at 366-67.[8]

---

[7]  28 U.S.C. § 357(c) states: "Except as expressly provided in this section
and section 352(c), all orders and determinations, including denials of petitions for
review, shall be final and conclusive and shall not be judicially reviewable on
appeal or otherwise."

[8] The review provision at issue in *Robison*, 38 U.S.C. § 211(a), stated in
pertinent part:

> [T]he decisions of the Administrator on any question of law or fact
> under any law administered by the Veterans' Administration providing
> benefits for veterans and their dependents or survivors shall be final and
> conclusive and no other official or any court of the United States shall
> have power or jurisdiction to review any such decision by an action in
> the nature of mandamus or otherwise.

Like Judge Newman, the plaintiff in *Robison* raised both facial and as-applied
constitutional challenges to the statute that denied him veterans' educational benefits;
the VA denied benefits even though he (in his status as a conscientious objector to
military service) had completed "alternative civilian service."  He alleged that even
if the statute could constitutionally be applied to other civilians, it could not be
applied constitutionally to him because his religious beliefs compelled him not to join

The Supreme Court reached a nearly identical result in *Demore v. Kim*, 538 U.S. 510 (2003). That case involved a resident alien who filed a habeas corpus petition seeking review of the decision to deny him bail pending completion of removal proceedings. The relevant judicial review statute stated:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the revocation, or denial of bond or parole.

8 U.S.C. § 1226(e).

*Demore* held that § 1226(e) did not clearly and convincingly bar judicial review and thus held that federal courts possessed jurisdiction to hear the alien's facial and as-applied constitutional challenge to the detention statute. 538 U.S. at 517. The Court noted that "[s]ection 1226(e) contains no explicit provision barring habeas review," and added, "This Court has held that 'where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.'" *Ibid.* (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)).

---

the military—and thus to deny him veterans' benefits interfered with his rights under the Free Exercise Clause. *Robison* held that the plaintiff could seek review of all of his constitutional claims in federal court; it did not distinguish between facial and as-applied challenges.

Despite 28 U.S.C. § 357(c)'s omission of any reference to constitutional claims, the district court concluded that the statute barred Judge Newman's as-applied constitutional challenge because its "bar on judicial review does not contain ... limiting language." JA 167. That statutory analysis focuses on the wrong issue. The statutes at issue in *Robison*, *Webster*, and *Demore* that curtailed judicial review also did not contain "limiting language." But the Supreme Court held that the key to discerning congressional intent was not the absence of limiting language, but rather the absence of language expressly precluding constitutional challenges. In the absence of such language or other similar indications of congressional intent, Congress is presumed to have authorized district courts to hear constitutional challenges.

Moreover, the district court failed to address the serious constitutional dilemma arising from its construction of § 357(c). That construction deprives Judge Newman of any forum within which to seek redress for the constitutional injury inflicted on her by the manner in which Appellees are applying the Disability Act. The Disability Act grants her a right to petition to the JC&D for review of Judicial Council decisions. 28 U.S.C. § 357(a). But the JC&D has consistently taken the position that it will not decide constitutional challenges to Judicial Council actions, and it did not address any of Judge Newman's

constitutional claims. And even if the JC&D could be persuaded to change its position, Judge Newman would still be deprived of the right to seek vindication of constitutional rights in a court of law.[9]

Under the district court's rationale, Judicial Council/JC&D decisions are unreviewable regardless of how outrageous they may be. Even if a Judicial Council based its decisions on the flip of a coin or by subjecting Judge Newman to "trial by ordeal," she would have no right to challenge the constitutionality of such decisions in a court of law. Congress is highly unlikely to have countenanced such a result when it adopted § 357(c).

Given that § 357(c) is silent regarding constitutional claims, it is equally unlikely that Congress would have intended to bar all as-applied constitutional claims while simultaneously authorizing facial constitutional challenges. If (as

---

[9] That Article III judges sit on both the Judicial Council and the JC&D does not change the fact that those two groups are administrative bodies that do not exercise judicial powers—and thus Judge Newman's ability to raise her constitutional claims with those bodies does not mean that she is able to raise her claims before a court. This Court has recognized that Judicial Councils are administrative bodies. *Hastings v. Jud. Conf. of U.S.*, 770 F.2d 1093, 1102 (D.C. Cir. 1985). Similarly, the Rules implementing the Disability Act recognize that the Act "establishes an administrative, inquisitional process." *See Rules for Judicial-Conduct and Judicial-Disability Proceedings*, Commentary on Rule 3. The Supreme Court has recognized that Article III judges frequently perform roles of an administrative nature and that when they do so, they are not exercising their judicial powers. *See, e.g., Mistretta v. United States*, 488 U.S. 361, 384-85 (1989).

17

Judge Newman alleges) the Judicial Council is applying the Disability Act to her in an unconstitutional manner, there is no plausible reason why Congress would have chosen to deny judicial recourse to her for that constitutional violation if it had authorized district courts to hear her claims whenever those same constitutional injuries are being inflicted on all others. The district court pointed to no statutory language to support its decision to adopt that counter-intuitive construction of § 357(c).

### B.     *McBryde* Does Not Support the District Court's Dismissal of Judge Newman's Constitutional Claims

The district court stated that its principal holding—that § 357(c) prevented it from exercising jurisdiction over Judge Newman's as-applied constitutional challenge to her effective removal from office—was mandated by this Court's *McBryde* holding. The court's reliance on *McBryde* was misplaced, for several reasons.

*McBryde* arose in an entirely different factual context. The case involved John McBryde, a Texas district court judge who had been sanctioned following an investigation of an alleged pattern of "abusive behavior" that spanned his entire judicial career. The sanctions imposed by the Fifth Circuit Judicial Council included: (1) a public reprimand; (2) suspension of new case assignments for a

period of one year; and (3) a three-year disqualification from presiding over cases involving any of the 23 lawyers involved in the investigation. 264 F.3d at 54. By the time the case reached this Court, both the one-year suspension and the three-year disqualification had expired; thus, the Court dismissed challenges to those sanctions as moot without deciding whether § 357(c) would have barred consideration of McBryde's as-applied constitutional challenges to those sanctions. *Id.* at 55-56.

The Court held that McBryde's as-applied constitutional challenge to the public reprimand was not moot (because it had a continuing impact on McBryde's reputation), but it ruled that § 357(c)[10] deprived federal courts of jurisdiction to consider that challenge. *Id.* at 58-63. Conversely, the Court held that § 357(c) did not bar consideration of two other constitutional claims asserted by Judge McBryde: (1) the impeachment power in Congress is the only constitutionally permissible means of sanctioning an Article III judge, and the Disability Act is thus facially unconstitutional because it purports to authorize imposition of sanctions by Judicial Councils; and (2) the Disability Act is facially unconstitutional for the additional reason that "the principle of judicial

---

[10] When *McBryde* came before the Court in 2001, § 357(c) was codified as 28 U.S.C. § 372(c)(10).

independence implicit in Article III bars discipline of judges for actions *in any way* connected to his actions while on the bench." *Id.* at 649 (emphasis in original).[11]

In sum, *McBryde*'s holding was limited to the following holdings: (1) § 357(c) precludes judicial consideration of as-applied constitutional challenges to Judicial Council public reprimands; and (2) § 357(c) is not a bar to *all* consideration of constitutional challenges to Judicial Council orders—particularly facial challenges. Neither of those holdings has direct application to the issue presented here: whether Judge Newman may bring an as-applied challenge to Appellees' efforts to remove her from the federal bench. The district court's conclusion that its dismissal of Judge Newman's challenge was mandated by *McBryde* is without merit.

Indeed, several passages in *McBryde* strongly suggest that the Court did not believe that § 357(c) bars claims akin to Judge Newman's. For example, the Court took pains to distinguish McBryde's challenge to the public reprimand—which it

---

[11] The Court said that its holding that the two facial constitutional challenges were not precluded by § 357(c) was mandated by the Supreme Court's *Robison* decision. *Id.* at 58. But as noted above, *Robison* held that neither the as-applied nor the facial constitutional challenges at issue in that case were precluded by the applicable VA review statute. *Robison*, 415 U.S. at 366-67. This Court did not explain why it believed that *Robison*'s analysis applied to Judge McBryde's facial claims but not his as-applied claim.

deemed barred by § 357(c)—from challenges to more severe sanctions such as "removal and salary diminution," *McBryde*, 264 F.3d at 65, thereby suggesting that federal courts might be authorized to hear as-applied constitutional challenges to those more severe sanctions.

The Court's Footnote 5 makes a similar suggestion. After discussing the possibility that a Judicial Council's "removal or disqualification" of an Article III judge might violate the Constitution's Impeachment Clause and then opining that the reprimand sanction imposed on Judge McBryde "bears no resemblance to removal or disqualification," *id.* at 67, the Court observed in Footnote 5: "Obviously, we do not decide whether a long-term disqualification from cases could, by its practical effect, [e]ffect an unconstitutional removal." *Id.* at 67 n.5. Of course, Judge Newman's claim is precisely the one described by the Court. The Footnote suggests at the very least that *McBryde* is not foreclosing the possibility of exercising jurisdiction over as-applied challenges to long-term disqualifications, and it likely also suggests that exercise of such jurisdiction is permissible.[12]

_____

[12] The district court's February 12, 2024 decision takes note of Footnote 5 in connection with its discussion of Judge Newman's *facial* challenge to her long-term disqualification. While acknowledging that Footnote 5 left open the possibility that the Constitution bars Judicial Councils from imposing long-term disqualifications, the court said it did not need to address that issue because it

Moreover, *McBryde*'s holding that at least some constitutional challenges are not barred by § 357(c) indicates that the district court's heavy reliance on that decision was misplaced. *McBryde* held that as-applied constitutional challenges to public reprimands are barred while some other constitutional challenges are not barred. But the Court eschewed any effort to draw a bright line between those claims that are subject to §357(c) and those that are not. In the absence of such a bright line, the district court's conclusion that *McBryde* dictates dismissal of Judge Newman's as-applied constitutional challenge to her long-term disqualification is implausible.

Legislation adopted by Congress in 2002—one year after the Court released its *McBryde* decision—provides additional reason to question the district court's finding that *McBryde* is controlling and categorically prohibits as-applied challenges to Judicial Council actions. That legislation, the 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, Div. C, Title I, Subtitle C, § 11044, 116 Stat. 1758, 1856 (Nov. 2, 2002) (codified as Note to 28 U.S.C. § 351), adopted a provision that expressly acknowledged that

---

concluded that Judge Newman's facial challenge did not (for other reasons) state an actionable claim. JA 179. But the court completely failed to confront Footnote 5's significance to the § 357(c) preclusion issue.

the Disability Act is subject to as-applied constitutional challenges.[13]  By

amending the Disability Act in that manner, Congress expressed its understanding

that § 357(c) does not categorically preclude all federal-court as-applied

constitutional challenges to Judicial Council actions.

The district court's response to this argument is unpersuasive.  The court

acknowledged that the amendment recognizes that as-applied constitutional

challenges could result in action taken by a Judicial Council pursuant to the

Disability Act being found unconstitutional.  JA 163 n.6.  But the court suggested

that Congress might have contemplated that it was the JC&D, not a federal court,

that was authorized to issue such an order.  *Ibid.*  That suggestion is nonsensical.

First, the JC&D has never asserted the right to issue constitutional decisions.

Second, unlike decisions issued by an Article III court, JC&D decisions have no

binding effect beyond their effect on the parties to the misconduct/disability

proceeding.  Thus, a JC&D decision overturning a Judicial Council decision on

---

[13] The legislation added a "savings clause" to the Disability Act.  That clause provides that if any portion of the Disability Act "*or the application of such provision* … to any person or circumstance is held to be unconstitutional, the remainder of [the Disability Act] and the application of the provisions of such to any person or circumstance shall not be affected thereby."  28 U.S.C. § 351 Statutory Note (emphasis added).  The legislation thereby acknowledges that the application of a Disability Act provision to a judge could become the subject of an as-applied constitutional challenge and might be held to be unconstitutional as applied.

constitutional grounds could have no effect on operation of the Disability Act, and there would be no reason to adopt a "savings clause" to guard against potential effects of such decisions.

Finally, *McBryde*'s decision to distinguish between as-applied and facial claims (with respect to the scope of statutes that limit judicial review) has not stood the test of time. In the 23 years since that decision issued, the Supreme Court on a number of occasions has been asked to determine whether a judicial-review statute precludes judicial review of constitutional claims. In no instance has the Court suggested that the strength of the "strong presumption" of reviewability of constitutional claims varies based on whether the claim is facial or as-applied. For example, *Demore* held that an alien's constitutional challenge to detention-pending-removal could be heard in federal court despite a broadly worded statute that seemingly barred such challenges, and the Court made no effort to determine whether the challenge should be deemed facial or as-applied. *Demore*, 538 U.S. at 516-17. In sum, the district court's holding draws no support from *McBryde*; that case did not decide the issues presented here, and much of what the Court had to say in that decision has been overtaken by subsequent events.

## II.  THE JUDICIAL COUNCIL HAS VIOLATED SEPARATION-OF-POWERS PRINCIPLES BY REMOVING JUDGE NEWMAN'S JUDICIAL POWERS FOR AN INDEFINITE PERIOD OF TIME

Judge Newman alleges that Appellees are seeking to remove her from office.  The uncontested facts demonstrate that: (1) on September 20, 2023, the Judicial Council suspended her for one year from hearing any cases at the panel or en banc level, based on her refusal to cooperate with the Special Committee's investigation (*e.g.*, her refusal to submit to medical examination by doctors chosen by the Judicial Council); (2) on September 6, 2024, the Judicial Counsel renewed its suspension for a second year; (3) in recommending the September 2024 extension of Judge Newman's suspension, the Special Committee stated that the suspension is "subject to renewal if the refusal to cooperate here continues after" completion of the second year of suspension.

Those facts demonstrate Appellees' intent to deprive Judge Newman of her judicial authority for an indefinite period of time—at least until such time as she abandons her contention that it is they and not she who are engaging in misconduct.  Appellees' long-term deprivation of Judge Newman's judicial authority is impossible to distinguish from an outright removal from office given her advanced age.  At age 97, Judge Newman has a short life expectancy, and a

multi-year suspension can plausibly be interpreted as an effort to run out the clock on her life.

Based on the above, Judge Newman has stated a valid claim that Appellees have violated her rights under separation-of-powers provisions of the U.S. Constitution. Article III, Section 1 states that federal judges "shall hold their offices during good behavior," and they can be removed from office only through a vote of impeachment by the U.S. House of Representatives and a trial and conviction by the Senate. *See* Art. I, § 3, cl. 6 (stating that "The Senate shall have the *sole* power to try all Impeachments") (emphasis added). In other words, a Judicial Council effort to remove a judge from office violates the Constitution by impinging on powers delegated *solely* to the Senate.

At the very least, Judge Newman is entitled to reversal of the district court's dismissal of Counts II and III. Those counts plausibly allege that Appellees' actions have effected her *de facto* removal from the bench, and that the Constitution expressly prohibit anyone other than the U.S. Senate from taking those actions. And unless Appellees can supply the Court with substantial evidence that Judge Newman is not actually subject to an indefinite suspension, it should grant her motion for injunctive relief and enter judgment in her favor on Counts II and III.

The Special Committee asserts that Judge Newman's refusal to acquiesce to its medical demands constitutes "a serious form of continuing misconduct." But that assertion cannot justify Appellees' decision to suspend Judge Newman indefinitely—a suspension which currently stands at two years and which Appellees threaten to lengthen unless Judge Newman acquiesces to their demands. If Appellees consider the alleged misconduct sufficiently serious to warrant removal from office, their proper course is to refer the matter to Congress for possible impeachment and trial. What they may not do is take it upon themselves to effectively remove Judge Newman from office by suspending her indefinitely.

*McBryde* appears to agree with our contention that a Judicial Conference's indefinite suspension of an Article III judge runs afoul of the Impeachment Clause. Judge McBryde argued that the Framers' decision to place the impeachment power in Congress implies that no other branch of government is entitled to discipline judges in any manner. The Court rejected that argument as applied to the type of discipline at issue in the case (a public reprimand of Judge McBryde). But it stated in *dicta* that the Impeachment Clause bars anyone other than the Senate from removal or "disqualification" of a judge. *McBryde*, 264 F.3d

at 67 (stating that "the claim of implied negation from the impeachment power works well for removal or disqualification.").

*Amici* are particularly concerned by the threat to judicial independence posed by Appellees' alleged actions. Throughout her career, Judge Newman has demonstrated a willingness to express her views without regard to how those views will be perceived by her judicial colleagues. Her hundreds of dissenting opinions have no doubt exasperated some of those colleagues at times, but the law has benefitted from her willingness to express those dissenting views unabashedly. If the Federal Circuit Judicial Council succeeds in shutting down Judge Newman without going through the constitutionally prescribed process for removing Article III judges from office, other judges may conclude that they should hesitate to act boldly in defense of justice for fear of the adverse consequences of doing so.

As the Supreme Court eloquently explained more than 150 years ago:

> [I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequence to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful.

*Bradley v. Fisher*, 80 U.S. 335, 347 (1871). *See also Pierson v. Ray*, 386 U.S. 547, 554 (1967) (the public benefits when judges are "at liberty to exercise their functions with independence and without fear of consequences.").

Adherence to the constitutionally prescribed impeachment process ensures that Article III judges can feel confident that their rulings will not endanger their job security and that they cannot be removed from office except through a rigorous process that entitles them to raise all plausible defenses before an impartial Senate jury.

## CONCLUSION

The Court should reverse the judgment below and render judgment for Judge Newman.

Respectfully submitted,

/s/ Richard A. Samp
Richard A. Samp (D.C. Bar #367194)
3815 N. Ridgeview Road
Arlington, Virginia 22207
703-525-9357
December 12, 2024          rasamp@verizon.net

# CERTIFICATE OF COMPLIANCE

I am an attorney for the *amici curiae*.  Pursuant to Fed.R.App.P.

32(a)(7)(C), I hereby certify that the foregoing brief is in 14-point, proportionately

spaced Times New Roman type.  According to the word processing system used to

prepare this brief (WordPerfect X8), the word count of the brief is 6,363, not

including the certificate as to parties, Rule 29(d) certificate, table of contents, table

of authorities, glossary, certificate of service, and this certificate of compliance.


 /s/ Richard A. Samp
Richard A. Samp

December 12, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December, 2024, I electronically filed this *amicus curiae* brief with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/CF users and that service will be accomplished by the appellate CM/ECF system.


 /s/ Richard A. Samp
Richard A. Samp