**[ORAL ARGUMENT NOT SCHEDULED]**

**PUBLIC COPY—SEALED MATERIAL DELETED**

**No. 24-5173**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

HON. PAULINE NEWMAN,

Plaintiff-Appellant,

v.

HON. KIMBERLY A. MOORE, *in her official capacities as Chief Judge of the United States Court of Appeals for the Federal Circuit, Chair of the Judicial Council of the Federal Circuit, and Chair of the Special Committee of the Judicial Council of the Federal Circuit*, et al.

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**BRIEF FOR APPELLEES**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-0211*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**A.      Parties and Amici**

Plaintiff-appellant is Hon. Pauline Newman.

Defendants-appellees are Hon. Kimberly A. Moore, in her official capacities as Chief Judge of the U.S. Court of Appeals for the Federal Circuit, Chair of the Judicial Council of the Federal Circuit, and Chair of the Special Committee of the Judicial Council of the Federal Circuit; Hon. Sharon Prost, in her official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit; Hon. Richard G. Taranto, in his official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit; and the Judicial Council of the Federal Circuit.

No amici appeared in the district court. The following amici have filed briefs in this Court in support of Plaintiff: the Bar Association of the District of Columbia; the Buckeye Institute; the Manhattan Institute; and retired federal judges Hon. Susan G. Braden, Hon. Janice Rogers Brown, Hon. Paul G. Cassell, Hon. Paul R. Michel, Hon. Randall R. Rader, and Hon. Thomas I. Vanaskie.

## B.     Rulings Under Review

Plaintiff appeals from the memorandum opinion and order issued by the district court (Cooper, J.) on February 12, 2024, and from the memorandum opinion and order issued by the district court on July 9, 2024. The first memorandum opinion and order is published at 717 F. Supp. 3d 43; the second memorandum opinion has not yet been published but is available at 2024 WL 3338858.

## C.     Related Cases

This case has not previously been before this Court or any court other than the district court.  Counsel for defendants-appellees are unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

/s/ *Maxwell A. Baldi*
Maxwell A. Baldi

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................v

GLOSSARY ...................................................................... xi

INTRODUCTION ................................................................ 1

STATEMENT OF JURISDICTION .................................................. 3

STATEMENT OF THE ISSUES ................................................... 4

PERTINENT STATUTES AND RULES............................................... 4

STATEMENT OF THE CASE .................................................... 4

    A.    Statutory Background ................................................4

    B.    Factual Background ................................................10

    C.    Prior Proceedings ................................................24

SUMMARY OF ARGUMENT........................................................26

STANDARD OF REVIEW .......................................................30

ARGUMENT .................................................................30

I.    The Only Claim Properly Before This Court Is Plaintiff's Facial Unlawful-Removal Challenge, Which Is Meritless. ...............................30

    A.    Congress Validly Authorized Judicial Councils To Temporarily Suspend Judges From Hearing New Cases Due To Disability Or Misconduct....................................32

    B.    Binding Circuit Precedent Forecloses Plaintiff's Efforts To Bring As-Applied Challenges To Her Suspension.......................44

II.    In Any Event, Plaintiff's As-Applied Challenges Are Meritless. ..........52

A.    Plaintiff's Time-Limited Suspension From New Case Assignments Comports With The Act And The Constitution. ...................................................................53

B.    Plaintiff Received More Procedural Protections Than The Act Or The Due Process Clause Requires. ...................................57

CONCLUSION....................................................................64

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                **Page(s)**

*Al Bahlul v. United States,*
    767 F.3d 1 (D.C. Cir. 2014) ................................................................. 33

*Americans for Prosperity Found. v. Bonta,*
    594 U.S. 595 (2021) ................................................................... 32, 34

*Apprio, Inc. v. Zaccari,*
    104 F.4th 897 (D.C. Cir. 2024) ........................................................ 36

*Axon Enter., Inc. v. FTC,*
    598 U.S. 175 (2023) ................................................................... 47, 48

*Bahlul v. United States,*
    77 F.4th 918 (D.C. Cir. 2023), *cert. denied,*
    144 S. Ct. 2563 (2024) ........................................................... 46, 47, 48

*Bohon v. FERC,*
    92 F.4th 1121 (D.C. Cir.), *cert denied,*
    144 S. Ct. 2563 (2024) ................................................................... 47

*Chandler v. Judicial Council of the Tenth Circuit,*
    398 U.S. 74 (1970) ................................................................... 31, 32

*Deere v. Cullen,*
    718 F.3d 1124 (9th Cir. 2013) ........................................................ 43

*Dupree v. Jefferson,*
    666 F.2d 606 (D.C. Cir. 1981) ........................................................ 12

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
    544 U.S. 280 (2005) ................................................................... 31

*Gacho v. Wills,*
    986 F.3d 1067 (7th Cir. 2021) ........................................................ 42

*Government of Manitoba v. Bernhardt,*
    923 F.3d 173 (D.C. Cir. 2019) ........................................................36

*Hastings v. Judicial Conference,*
  770 F.2d 1093 (D.C. Cir. 1985) ................................................... 31, 32

*Hastings v. Judicial Conference,*
  829 F.2d 91 (D.C. Cir. 1987) ........................................................ 62

*Jordan v. Massachusetts,*
  225 U.S. 167 (1912) ...................................................................... 43

*LaShawn A. v. Barry,*
  87 F.3d 1389 (D.C. Cir. 1996) ...................................................... 46

*Maine Cmty. Health Options v. United States,*
  590 U.S. 296 (2020) ...................................................................... 51

*McBryde, In re,*
  117 F.3d 208 (5th Cir. 1997) ........................................................ 45

*McBryde v. Committee to Review,*
  264 F.3d 52 (D.C. Cir. 2001) ...................................... 3, 24, 27, 31, 33, 40, 44,
                                                                        45, 46, 48, 49, 50, 51

*Norris v. SEC,*
  675 F.3d 1349 (Fed. Cir. 2012) .................................................... 62

*Plaut v. Spendthrift Farm, Inc.,*
  514 U.S. 211 (1995) ...................................................................... 39

*Sessions v. Dimaya,*
  584 U.S. 148 (2018) ...................................................................... 41

*Statewide Bonding, Inc. v. DHS,*
  980 F.3d 109 (D.C. Cir. 2020) ...................................................... 30

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994) .......................................................................47

*Trump v. United States,*
  603 U.S. 593 (2024) ...................................................................... 33

*United States v. Hastings,*
  681 F.2d 706 (11th Cir. 1982) ...................................................... 33

*United States v. Nixon,*
    418 U.S. 683 (1974) ............................................................33

*United States v. Salerno,*
    481 U.S. 739 (1987) ...................................................... 32, 34

*United States v. Washington,*
    98 F.3d 1159 (9th Cir. 1996) ......................................... 43

*Washington State Grange v. Washington State Republican Party,*
    552 U.S. 442 (2008) .........................................................32

**U.S. Constitution:**

Art. I, § 3, cl. 7 ............................................................... 33

Amend. VI ..................................................................... 35

**Statutes:**

Judicial Conduct and Disability Act of 1980,
    Pub. L. No. 96-458, 94 Stat. 2035
    (now codified at 28 U.S.C. §§ 351-364) ....................................4, 50

Judicial Improvements Act of 2002,
    Pub. L. No. 107-273, div. C, tit. I, subtitle C, 116 Stat. 1848 ........................4
    28 U.S.C. § 351(a) ....................................................... 6
    28 U.S.C. § 351(b) ....................................................... 6
    28 U.S.C. § 351(c) ....................................................... 6
    28 U.S.C. § 352(a)-(b) ................................................... 6
    28 U.S.C. § 352(b)(1)(A)(ii) ........................................... 40
    28 U.S.C. § 352(c) ....................................................... 9
    28 U.S.C. § 353(a) ................................................... 6, 12
    28 U.S.C. § 353(a)(1) .................................................. 6
    28 U.S.C. § 353(c) ....................................................... 7
    28 U.S.C. § 354 .......................................................... 8
    28 U.S.C. § 354(a)(1) .................................................. 8
    28 U.S.C. § 354(a)(2)(A)(i) .............................. 8, 26, 28, 32, 38, 53
    28 U.S.C. § 354(a)(2)(A)(i)-(ii) ....................................... 8

28 U.S.C. § 354(a)(2)(B)(i)-(ii) ........................................................ 8

28 U.S.C. § 354(a)(3)(A) ........................................................ 9, 33, 38

28 U.S.C. § 354(b)(2)(B) ........................................................ 40

28 U.S.C. § 355(b)(1) ........................................................ 40

28 U.S.C. § 356(a) ........................................................ 50

28 U.S.C. § 357(a) ........................................................ 9, 19, 27, 30

28 U.S.C. § 357(b) ........................................................ 19, 30

28 U.S.C. § 357(c) ........................................................ 3, 10, 21, 31, 44

28 U.S.C. § 358(a) ........................................................ 4

28 U.S.C. § 358(b)(2) ........................................................ 7

28 U.S.C. § 363 ........................................................ 7

28 U.S.C. § 364(1) ........................................................ 43

18 U.S.C. § 3161 ........................................................ 35

28 U.S.C. ch. 3 ........................................................ 38

28 U.S.C. ch. 5 ........................................................ 38

28 U.S.C. § 46(b) ........................................................ 39

28 U.S.C. § 47 ........................................................ 39

28 U.S.C. § 331 ........................................................ 19

28 U.S.C. § 332(d)(1) ........................................................ 19

28 U.S.C. § 1291 ........................................................ 3

28 U.S.C. § 1331 ........................................................ 3

Act of Settlement, 1701,
  12 & 13 Will. 3, c. 2 ........................................................ 37

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ........................................................ 3

Rules for Judicial-Conduct and Judicial-Disability Proceedings
   (eff. Mar. 12, 2019), https://perma.cc/TBN3-LJP5 ...................................... 5
      JC&D Rule 1(a) ..............................................................................4
      JC&D Rule 4(a)(5) ..........................................................................8
      JC&D Rule 4(b)(1) ........................................................................40
      JC&D Rule 12(a) .............................................................................7
      JC&D Rule 13(a) .............................................................................7
      JC&D Rule 13, Commentary ........................................................13
      JC&D Rule 14(b) .............................................................................7
      JC&D Rule 15 ..................................................................................8
      JC&D Rule 20(a) .............................................................................9
      JC&D Rule 21 ................................................................................19
      JC&D Rule 21(a) ...........................................................................10
      JC&D Rule 21(g) ....................................................................10, 22
      JC&D Rule 26 ...........................................................9, 16, 29, 57
      JC&D Rule 26, Commentary .........................................................9

**Legislative Material:**

H.R. Rep. No. 111-427 (2010) .............................................................41

**Other Authorities:**

*Complaint of Judicial Misconduct, In re,*
   425 F.3d 1179 (9th Cir. Judicial Council 2005) ............................... 6

*Complaint of Judicial Misconduct, In re,* slip op., C.C.D. No. 17-01
      (Committee on Judicial Conduct and Disability Aug. 14, 2017)
      https://perma.cc/AKC7-UB4Z .............................................49, 50

Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and
   the Federal System* (7th ed. 2015) ..................................................38

Judicial Conduct & Disability Act Study Comm.,
   Implementation of the Judicial Conduct and
   Disability Act of 1980:  A Report to the Chief Justice,
   239 F.R.D. 116 (2006) ................................... 5, 6, 9, 16-17, 38, 54, 57, 58, 59, 60

Judicial Council Order (Sept. 6, 2024),
  https://perma.cc/D8WT-LWUN ...............................................................24, 53

Order, *In re Complaint of Judicial Misconduct*, No. 22-90121 (9th Cir. Jud.
  Council 2024), https://perma.cc/YUP6-Z5J6 ...............................................41

Order & Memorandum, *In re Complaint of Judicial Misconduct*,
  No. 06-13-90009 (6th Cir. Judicial Council Feb. 22, 2016),
  https://perma.cc/TSK4-SGRY ................................................................ 60-61

*Removal*, 2 Samuel Johnson,
  *A Dictionary of the English Language* (4th ed. 1773) .................................37

*Removal*, 13 *Oxford English Dictionary* (2d ed. 1989) ...................................37

*Removal*, 2 Noah Webster,
  *An American Dictionary of the English Language* (1828) .........................37

Report of the National Commission on Judicial
  Discipline and Removal,
  152 F.R.D. 265 (1993) ............................................................................... 37

*Francis X. Shen, Aging Judges*,
  81 Ohio St. L.J. 235 (2020) .........................................................................  42

Special Committee Report and recommendation with Attachments (July 31,
  2023), https://perma.cc/DM83-ANYX ..............................................11, 12, 13

Special Committee Report & Recommendation (July 24, 2024),
  https://perma.cc/8HGJ-CJRS ...............................................................23, 55

# GLOSSARY

| | |
|---|---|
| Act | Judicial Conduct and Disability Act |
| Dkt. | District court docket |
| JA | Joint Appendix |
| JC&D Committee | Judicial Conference's Committee on Judicial Conduct and Disability |
| JC&D Rules | Rules for Judicial-Conduct and Judicial-Disability Proceedings |

## INTRODUCTION

Plaintiff Pauline Newman's distinguished career as a Federal Circuit judge stretches back four decades.  Her contributions to the law earned the esteem of both bench and bar.  In recent years, however, Plaintiff had trouble completing her work in a timely fashion and began to show other signs of possible mental deterioration, including concerning behavior reported to the Chief Judge by court staff.  Her fellow judges tried to address these issues with their then-95-year-old colleague privately and informally.  Only after those efforts failed, and after Plaintiff's behavior began causing serious difficulties for the daily operation of the court, did they turn to the Judicial Conduct and Disability Act of 1980 (Act).

As the Act contemplates, a Special Committee of the Federal Circuit's Judicial Council investigated the possibility that Plaintiff suffers from a disability rendering her unable to discharge the duties of an active judge. The Special Committee compiled voluminous evidence tending to establish such a disability, including more than a dozen affidavits from Federal Circuit employees detailing serious concerns with Plaintiff's behavior.  Plaintiff made no serious effort to rebut this evidence or to offer an alternative explanation for it.  Instead, Plaintiff refused to cooperate with the

investigation, declining to comply with the Special Committee's orders to undergo medical (neuropsychological) testing and to provide medical information.

The investigation expanded to consider whether these actions, which stymied the Committee's disability investigation, amounted to misconduct. The Federal Circuit's Judicial Council—consisting of the other 11 active circuit judges—unanimously found that they did and suspended Plaintiff from hearing new cases for one year, subject to reconsideration upon Plaintiff's compliance with the requests for medical information and testing. Plaintiff sought review of that decision by the Judicial Conference of the United States. In addition to challenging her suspension, she urged, *inter alia*, that the Chief Judge or Judicial Council should have asked the Chief Justice to transfer her proceedings to another circuit for resolution. The seven Article III judges of the Judicial Conference's Committee on Judicial Conduct and Disability (JC&D Committee) unanimously affirmed in full, including the decision not to request a transfer to another circuit.

Plaintiff nonetheless continued refusing to cooperate with the Special Committee's investigation. In September 2024, after affording Plaintiff an opportunity to demonstrate any reason that her suspension should not be

renewed, the Judicial Council renewed it for another year, through September 2025. As before, Plaintiff's suspension is subject to reconsideration upon her compliance with the Special Committee's requests.

Meanwhile, Plaintiff filed this lawsuit in district court seeking to enjoin the ongoing proceedings under the Act. Citing the Act's judicial-review bar in 28 U.S.C. § 357(c) and this Court's decision in *McBryde v. Committee to Review*, 264 F.3d 52 (D.C. Cir. 2001), the district court dismissed Plaintiff's statutory and as-applied constitutional claims for lack of jurisdiction. The district court then considered and rejected on the merits Plaintiff's facial constitutional challenges to the Act. This Court should affirm.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331. First Am. Compl., JA32. The district court entered final judgment on July 9, 2024. Order, JA200. Plaintiff timely noticed this appeal on July 10, 2024. Notice of Appeal, JA216; *see* Fed. R. App. P. 4(a)(1)(B).

This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether the Judicial Conduct and Disability Act is facially constitutional.

2.      Whether the district court correctly rejected Plaintiff's as-applied challenges to her suspension under the Act.

## PERTINENT STATUTES AND RULES

Pertinent statutes and rules are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.      Statutory Background

1.  In 1980, Congress enacted the Act.  Pub. L. No. 96-458, 94 Stat. 2035 (now codified at 28 U.S.C. §§ 351-364).[1]  As the Judicial Conference explained, the Act authorizes proceedings "to determine whether a covered judge has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts or is unable to discharge the duties of office because of mental or physical disability."[2]  JC&D Rule 1(a).

---

[1] Congress recodified the Act in 2002.  Judicial Improvements Act of 2002, Pub. L. No. 107-273, div. C, tit. I, subtitle C, 116 Stat. 1848.

[2] As authorized by the Act, 28 U.S.C. § 358(a), the Judicial Conference has promulgated rules to govern judicial conduct and disability proceedings.

4

In the Act, Congress created a mechanism to surface "conduct reflecting a judge's inability to perform his or her duties because of mental or physical disability" and "sought to create a discipline system that would prove effective while taking proper account of" the "competing risks" posed by different possible schemes for "discovering (and assessing discipline for) the misconduct of federal judges." Judicial Conduct & Disability Act Study Comm., Implementation of the Judicial Conduct and Disability Act of 1980: A Report to the Chief Justice (Breyer Committee Report), 239 F.R.D. 116, 119 (2006). On one hand, permitting judges to be investigated by "persons or bodies other than judges" would risk "undue interference with the Constitution's insistence upon judicial independence"; on the other hand, "rel[ying] for investigation solely upon judges themselves" would risk "inappropriate sympathy with the judge's point of view or de-emphasis of the misconduct problem." *Id.* Balancing these concerns, Congress created a system that "relies upon internal judicial branch investigation of other judges, but … simultaneously insists upon consideration by the chief circuit judge and members of the circuit judicial council, using careful procedures

---

*See* Rules for Judicial-Conduct and Judicial-Disability Proceedings (eff. Mar. 12, 2019), https://perma.cc/TBN3-LJP5 (JC&D Rules).

and applying strict statutory standards." *Id.* The Act's purpose "is not to punish but to protect the judicial system and the public from further acts by a judicial officer that are detrimental to the fair administration of justice." *In re Complaint of Judicial Misconduct*, 425 F.3d 1179, 1182 (9th Cir. Judicial Council 2005).

2. The Act permits any person to file a complaint "alleging that [a] judge is unable to discharge all the duties of office by reason of mental or physical disability." 28 U.S.C. § 351(a). The Act also allows a circuit's chief judge "[i]n the interests of the effective and expeditious administration of the business of the courts and on the basis of information available to [her] … [to] identify a complaint" by written order. *Id.* § 351(b). A copy must be transmitted promptly to the subject judge. *Id.* § 351(c).

Once a complaint is filed or identified, "the chief judge may conduct a limited inquiry" and then must either (1) dismiss the complaint or (2) establish a special committee to investigate it. 28 U.S.C. §§ 352(a)-(b), 353(a). The special committee must include the chief judge as well as other judges from courts within the circuit.[3] *Id.* § 353(a)(1). The special committee "shall

---

[3] In most circuits, an equal number of district and circuit judges join the chief judge on the special committee. 28 U.S.C. § 353(a)(1). In the

conduct an investigation as extensive as it considers necessary[ ] and shall expeditiously file a comprehensive written report thereon with the judicial council … present[ing] both the findings of the investigation and the committee's recommendations for necessary and appropriate action by the judicial council." *Id.* § 353(c).

A special committee must "determine the appropriate extent and methods of its investigation" given the context of the complaint.  JC&D Rule 13(a).  It is expressly authorized to engage "appropriate experts or other professionals." *Id.*  The special committee "must obtain material, nonredundant evidence in the form it considers appropriate."  JC&D Rule 14(b).  The Act affords the subject judge the rights "[to] be afforded an opportunity to appear (in person or by counsel) at proceedings conducted by the investigating panel, to present oral and documentary evidence, to compel the attendance of witnesses or the production of documents, to cross-examine witnesses, and to present argument orally or in writing."  28 U.S.C. § 358(b)(2).  The JC&D Rules protect these rights and ensure that the

---

Federal Circuit, only circuit judges are available to serve on special committees.  JC&D Rule 12(a) (providing that for courts named in 28 U.S.C. § 363, "the special committee must be selected from the judges serving on the subject judge's court"); *see also* 28 U.S.C. § 363 (authorizing the Federal Circuit to adopt procedures for resolving complaints consistent with the Act).

subject judge receives notice of the scope of the special committee's investigation and of any hearings. *See* JC&D Rule 15. The Rules also require judges to cooperate with investigations and define the failure to do so without good cause as "[c]ognizable misconduct." JC&D Rule 4(a)(5).

After the special committee files its report and recommendation, proceedings shift to the judicial council. *See* 28 U.S.C. § 354. The judicial council may conduct additional investigation, may dismiss the complaint, or, "if the complaint is not dismissed, shall take such action as is appropriate to assure the effective and expeditious administration of the business of the courts within the circuit." *Id.* § 354(a)(1). For Article III judges, the Act authorizes the judicial council to censure the judge, *id.* § 354(a)(2)(A)(i)-(ii), and to certify that the judge is disabled or request that the judge voluntarily retire on full salary (regardless of age or length of service), *id.* § 354(a)(2)(B)(i)-(ii). The Act also expressly empowers a judicial council to "order[ ] that, on a temporary basis for a time certain, no further cases be assigned to the judge." *Id.* § 354(a)(2)(A)(i). Congress determined that such time-limited suspensions are compatible with the Act's specification that "[u]nder no circumstances may the judicial council order removal from office of any judge appointed to hold office during good behavior."

*Id.* § 354(a)(3)(A).  Before the judicial council renders a decision, the subject judge may submit a written response and must be given the opportunity to present argument.  JC&D Rule 20(a).

Although the Act contemplates that proceedings against a subject judge will occur within the judge's home judicial council, the JC&D Rules provide that "[i]n exceptional circumstances, a chief judge or a judicial council may ask the Chief Justice to transfer a proceeding … to the judicial council of another circuit."  JC&D Rule 26.  A "request for a transfer may be made at any stage of the proceeding" conducted by a chief judge, special committee, or judicial council.  *Id.*  The transfer procedures stemmed from recommendations from a committee appointed to study the Act's implementation and chaired by Justice Breyer.  *See* JC&D Rule 26, Commentary, at 61; *see also* Breyer Committee Report, 239 F.R.D. at 214-15.

3.  A judge "aggrieved" by the decision of the judicial council "may petition the Judicial Conference … for review."  28 U.S.C. § 357(a).  Except for review under this provision (and 28 U.S.C. § 352(c), which permits petitions to a judicial council for review of certain chief-judge orders), Congress specified that "all orders and determinations [made under the Act],

9

including denials of petitions for review, shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise." *Id.* § 357(c).

The Judicial Conference has delegated its responsibility for handling petitions for review of judicial-council decisions to its JC&D Committee. JC&D Rule 21(a). "Its review of judicial-council orders is for errors of law, clear errors of fact, or abuse of discretion." *Id.* The JC&D Committee's decision is final unless the Judicial Conference exercises its discretion to conduct further review. *Id.*; JC&D Rule 21(g).

### B.    Factual Background

1.   In early 2023, "mounting evidence raised increasing doubts about whether Judge Newman is still fit to perform the duties of her office." Judicial Council Order (Sept. 20, 2023), Dkt. 30-1, at 184.[4]  Plaintiff was then 95 years old and had "served with distinction" on the Federal Circuit for nearly four decades. *Id.* At that time, concerns were raised about "extensive delays" in Plaintiff's resolution of cases, Plaintiff's "inappropriate behavior in managing staff," and the possibility that Plaintiff "may suffer from

---

[4] Citations to Chief Judge Orders, Special Committee Orders, and Judicial Council Orders refer to public orders issued in the underlying proceeding, *In re Complaint No. 23-90015* (Fed. Cir. docketed Mar. 24, 2023). "Dkt. N at p" refers to entry N of the district court's docket at ECF page number p.

impairment of cognitive abilities (*i.e.*, attention, focus, confusion and memory)." Chief Judge Order (Mar. 24, 2023), Dkt. 15-1, at 3, 6. These concerns arose despite Plaintiff enjoying several substantial reductions in workload. *See id.* at 2-3 (explaining that Plaintiff first agreed "to being taken off motion panels, which are a routine responsibility of all active judges," and that she was subsequently afforded two reductions in sittings compared to her other active colleagues).

Several of Plaintiff's colleagues attempted to raise their concerns with her privately and informally. *See* Chief Judge Order (Mar. 24, 2023), Dkt. 15-1, at 3, 6-7 (noting efforts by half of the Federal Circuit's active judges). The Chief Judge also attempted to reach an informal resolution with Plaintiff. *Id.* at 6; Judicial Council Order (Sept. 20, 2023), Dkt. 30-1, at 246; Judicial Council Order with Attachments at 80-86 (Sept. 20, 2023), https://perma.cc/4KHL-2WT2; *see also* JC&D Rule 5(a) ("A chief judge who finds probable cause to believe that … a disability exists may seek an informal resolution that he or she finds satisfactory.").[5] Plaintiff rebuffed all such efforts. *See* Chief Judge Order (Mar. 24, 2023), Dkt. 15-1, at 3, 7.

---

[5] The attachments to the September 20, 2023 Order were not docketed in the district court but—like other documents from Judicial Council

Accordingly, in March 2023, the Chief Judge identified a complaint against Plaintiff and, as required by the Act, appointed a special committee consisting of the Chief Judge and two active circuit judges to conduct an investigation. *See* Chief Judge Order (Mar. 24, 2023), Dkt. 15-1, at 2 (finding "probable cause" to conclude that Plaintiff was unable to perform the work of an active judge); Special Committee Report & Recommendation (July 31, 2023) (July 2023 Report), Dkt. 25-1, at 16; *see also* 28 U.S.C. § 353(a).

2. The Special Committee investigated whether Plaintiff remained capable of discharging her duties, as well as allegations that Plaintiff had engaged in "retaliatory, unprofessional, and abusive behavior towards her own and other court staff," Chief Judge Order (Apr. 20, 2023), Dkt. 15-1, at 37, and that she had failed to cooperate with the investigation, Chief Judge Order (Apr. 13, 2023), Dkt. 15-1, at 22.

The Special Committee conducted as thorough an investigation as it could, despite a lack of cooperation from Plaintiff and some of her staff. *See, e.g.*, July 2023 Report with Attachments 120-59, https://perma.cc/DM83-ANYX (deposition transcript reflecting law clerk's invocation of her Fifth

---

proceedings not in the record below—are subject to judicial notice. *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981).

Amendment right to avoid self-incrimination more than 50 times in response to questions about her work for and interactions with Plaintiff).  It conducted more than 20 interviews with  court employees, a number of whom came unsolicited to the committee with concerns.  July 2023 Report, Dkt. 25-1, at 35, 92; *see, e.g.*, July 2023 Report with Attachments 166-68 (Plaintiff's chambers employee from December 2021 to April 2023 attesting that Plaintiff's "memory loss and confusion ha[d] increased significantly").  And it retained as an expert consultant a board-certified psychiatrist recommended by the Administrative Office of the U.S. Courts.  July 2023 Report, Dkt. 25-1, at 16.  The Special Committee did not interview any judges.  *Id.* at 20-21.

Most pertinently, as part of its investigation, the Special Committee—supported by a unanimous order of the entire Judicial Council—ordered Plaintiff to produce certain medical records to an independent neurologist for evaluation and to undergo neurological and neuropsychological examinations.  *See* Special Committee Order (May 16, 2023), Dkt. 15-1, at 77-78, 82, 98, 101; *see also* JC&D Rule 13, Commentary, at 31 (noting that a special committee may "request the judge to undergo a medical or psychological examination").  The testing ordered by the Committee was non-invasive and could be completed in a single day.  Special Committee Order (May 16, 2023), Dkt. 15-

1, at 98. The Special Committee concluded that these steps were necessary in light of so many staff reports of Plaintiff's "memory loss, confusion, and an increasing inability at times to perform simple, routine tasks," Plaintiff's "backlog and delays in the processing of cases compared to her colleagues," and the recommendation of the Special Committee's medical expert. *Id.* at 95; *see also id.* at 83-94 (cataloguing evidence on which that conclusion rested, including Plaintiff's "frequent[] claim[s]" that "hackers" were hiding her files, which persisted even after IT staff located the purportedly missing files; staff reports that Plaintiff "now gets easily confused, has trouble retaining information, and forgets how to perform basic tasks that used to be routine for her," "would ask the same questions over and over," and "at times seems lost and confused"; the resignation of some of Plaintiff's chambers employees and Plaintiff's threat to have an employee arrested in connection with his use of the court's employee dispute resolution program; and an analysis showing her decreased output and increased delay in issuing opinions).

Plaintiff did not comply with these orders, continuing her refusal to cooperate with the investigation. *See, e.g.*, July 2023 Report, Dkt. 25-1, at 18 (noting Plaintiff's refusal to accept service of Special Committee orders); *id.*

14

at 20 (observing that Plaintiff failed to engage with the Special Committee). Consequently, the Special Committee concluded it could not make a "fully informed assessment" regarding whether Plaintiff suffered from a disability, and the investigation expanded to focus on whether that refusal constituted misconduct.  Special Committee Order (June 1, 2023), Dkt. 15-1, at 115-16; *see* Chief Judge Order (May 26, 2023), Dkt. 15-1, at 111-12; *cf.* JC&D Rule 4(a)(5) ("Cognizable misconduct includes refusing, without good cause shown, to cooperate in the investigation of a complaint … .").

The Special Committee ensured that Plaintiff had an opportunity to be heard as part of its misconduct investigation.  It explained, "To the extent that Judge Newman may seek to argue that her conduct was justified because the Committee lacked a reasonable basis for ordering her to undergo examinations and to provide medical records, it may be relevant for Judge Newman to have access to the evidence on which the Committee based its determinations."  Special Committee Order (June 1, 2023), Dkt. 15-1, at 118.  It accordingly supplied Plaintiff with "all affidavits and deposition transcripts that the Committee has gathered"—that is, the materials that "provided the basis for the Committee's conclusion that Judge Newman should be ordered to undergo the examinations and to provide medical

15

records." *Id.* It invited Plaintiff to file a written brief and to present oral argument. *Id.* at 119. In her brief, Plaintiff declined to contest the sworn affidavits prepared by court staff members regarding their experiences working with Plaintiff. *See* Pl.'s Special Committee Br. 15 (July 5, 2023), https://perma.cc/ZRL2-NM86 (characterizing affidavits as documenting "petty grievances" but not contesting their factual accuracy); Pl.'s Letter 3 (June 15, 2023), https://perma.cc/3RN7-89CE (agreeing that the misconduct question before the Committee turned only on the "paper record" and legal arguments (quotation marks omitted)).

At several points, Plaintiff requested a transfer to another circuit's judicial council. *See, e.g.*, Special Committee Order (May 3, 2023), Dkt. 15-1, at 54; JC&D Rule 26. The Chief Judge and Special Committee rejected the request "without prejudice" to Plaintiff refiling it after she complied with the orders regarding testing and medical records, explaining that the factors identified in the Breyer Committee Report weighed against transfer at that juncture. Special Committee Order (May 3, 2023), Dkt. 15-1, at 54-56 & n.1; *see also* Judicial Council Order (May 3, 2023), Dkt. 15-1, at 61 (denying transfer request without prejudice); *accord* Special Committee Order (May 16, 2023), Dkt. 15-1, at 102. *See generally* Breyer Committee Report, 239

16

F.R.D. at 214-15 (enumerating factors weighing for transfer, like concerns that the home circuit would treat subject judge too leniently, and against transfer, such as increased time and expense). The Special Committee observed that the JC&D Rules provided that transfer was warranted only in "exceptional circumstances," and that "[n]one of [the] circumstances" the Rules commentary identified as supporting transfer applied. Special Committee Order (May 3, 2023), Dkt. 15-1, at 55 (quotation marks omitted). And a transfer would "undoubtedly 'increase time and expense' involved in resolving this matter" because the Special Committee "ha[d] already conducted more than a dozen interviews in this matter and worked extensively with its expert consultant." *Id.* at 55-56. The unanimous Judicial Council likewise later denied transfer without prejudice to refiling after Plaintiff complies with the order requiring medical testing and the production of medical records. *See* Judicial Council Order (May 3, 2023), Dkt. 15-1, at 61; Judicial Council Order (Sept. 20, 2023), Dkt. 30-1, at 197 n.8; *see also id.* at 188-90 (explaining the Judicial Council's conclusion "that no circumstances have warranted, or currently warrant" the "extraordinary" step of transfer).

17

3.  The Special Committee unanimously recommended to the Judicial Council that Plaintiff be suspended from hearing new cases "for the fixed period of one year or at least until she ceases her misconduct and cooperates such that the Committee can complete its investigation."  July 2023 Report, Dkt. 25-1, at 115.  Plaintiff responded by filing a 120-page brief and making an evidentiary submission.  Resp., Dkt. 30-1, at 4-179.  After considering Plaintiff's arguments and new evidence, the Judicial Council unanimously determined in a 73-page order that "[t]he evidence establishes reasonable concerns that Judge Newman suffers from a disability preventing her from effectively discharging the duties of her office."  *See* Judicial Council Order (Sept. 20, 2023), Dkt. 30-1, at 255-56.  It found that the Special Committee "had a reasonable basis" to require the specified testing and medical records, that Plaintiff's failure to cooperate had hindered the investigation, and that Plaintiff had not shown good cause for refusing to comply with the Special Committee's order.  *Id.* at 255.

The Judicial Council emphasized the seriousness of Plaintiff's refusal to comply with the investigation "without adequate justification," a choice that "brings the statutory mechanism for addressing disability to a grinding halt and thereby undermines the interests of litigants, employees, the public,

and the judiciary in having that mechanism work." Judicial Council Order (Sept. 20, 2023), Dkt. 30-1, at 251. Accordingly, the Judicial Council suspended Plaintiff from hearing cases for one year "subject to consideration of renewal if [her] refusal to cooperate continues after that time and to consideration of modification or rescission if justified by an end of the refusal to cooperate." *Id.* at 255-56.[6]

4. Plaintiff sought review of the Judicial Council's suspension order by the Judicial Conference's JC&D Committee, which comprises seven Article III judges from outside the Federal Circuit. *See* 28 U.S.C. §§ 331, 357(a), (b); JC&D Rule 21. As the JC&D Committee's publicly available opinion recounted, Plaintiff's petition for review raised three arguments: (1) that the investigation should have been transferred to another circuit, (2) that alleged violations of the Act, the JC&D Rules, and the Fifth Amendment gave Plaintiff good cause not to comply with the Special Committee's order, and (3) that her suspension violated the Act, the

---

[6] The Judicial Council had earlier suspended Plaintiff from hearing new cases due to a backlog of assigned opinions; that order was vacated as soon as Plaintiff cleared her backlog in November 2023. *See* Judicial Council Order (June 5, 2023), Dkt. 15-1, at 121, 126; Judicial Council Order (Nov. 9, 2023), Dkt. 32-1, at 3; *see also* 28 U.S.C. § 332(d)(1); Fed. Cir. Clerical Proc. #3, ¶ 15, Dkt. 15-1, at 156.

JC&D Rules, and the Constitution.  Memorandum of Decision, *In re Complaint No. 23-90015* (JC&D Committee Decision), C.C.D. No. 23-01 (Committee on Judicial Conduct and Disability Feb. 7, 2024), Dkt. 40-1, at 14. The JC&D Committee unanimously rejected all three arguments, "deny[ing] the petition for review and affirm[ing] the Judicial Council's order." *Id.*

The JC&D Committee held that Plaintiff's argument for requiring the recusal of the members of the Judicial Council "is without merit," JC&D Committee Decision, Dkt. 40-1, at 16, and that "[d]eclining to transfer the matter at this stage of the proceedings was within the discretion of the Chief Circuit Judge and the Judicial Council, was arrived at after thorough consideration, and should not be reversed," *id.* at 19.  *See id.* at 17-21 (noting the transfer was denied without prejudice, and that Plaintiff had agreed that the "narrow question" of misconduct should not involve an evidentiary hearing where judges might be called as witnesses).

The JC&D Committee further held that Plaintiff lacked good cause to refuse to cooperate with the investigation because she "Was Not Denied Due Process," having been "afforded all the process she was due under the [JC&D] Rules."  JC&D Committee Decision, Dkt. 40-1, at 21-22.  In rejecting her due-process argument, the JC&D Committee found "the Special

20

Committee afforded Judge Newman more process than she was due under the Rules." *Id.*  The JC&D Committee further rejected Plaintiff's arguments attacking the Special Committee's order, explaining that the Special Committee had a reasonable basis to order medical testing "based on the substantial evidence it had gathered that suggested that [Plaintiff] may suffer from a disability that prevents her from discharging the duties of office." *Id.* at 24; *see id.* at 22-25 (noting the "voluminous evidence" underlying the order, and Plaintiff's failure to "contest the basis upon which the Special Committee determined that a medical evaluation was necessary," despite "numerous opportunities" to do so).  And the JC&D Committee rejected Plaintiff's contention that she could avoid the investigation by submitting the results of tests she chose administered by doctors she chose, agreeing with the Special Committee that it was "settled precedent that a subject judge may not circumvent the investigation process" in such a manner and that the evaluations Plaintiff submitted "did not carry sufficient probative value to undermine the basis for the Special Committee's concerns" regarding Plaintiff's possible disability.  *Id.* at 25-26 (quotation marks omitted).

Finally, the JC&D Committee held that the Judicial Council had authority to suspend Plaintiff from hearing cases for one year and that such a suspension, "subject to renewal if the failure to cooperate persists or reconsideration if [Plaintiff] cooperates with the investigation," was "an appropriate sanction." JC&D Committee Decision, Dkt. 40-1, at 26-29. The JC&D Committee emphasized that "although the sanction is subject to renewal … Judge Newman has the power to trigger reconsideration or modification if she decides to cooperate." *Id.* at 28. The Judicial Conference as a whole did not exercise its authority under JC&D Rule 21(g) to review the JC&D Committee's denial of Plaintiff's petition.

5. Despite the JC&D Committee's rejection of her arguments and its affirmance of the Judicial Council's order, Plaintiff continued to refuse to cooperate with the investigation. *See* Special Committee Order 2 (May 29, 2024), https://perma.cc/VXA4-P5UH. Rather than mechanically recommending that the Judicial Council renew the one-year suspension in September 2024, the Special Committee gave Plaintiff an opportunity to demonstrate "why her continued refusal to cooperate with the Committee's order should not be met with a renewal of the one-year suspension from case assignments." *Id.* at 3-4 (inviting Plaintiff to file a brief and present oral

22

argument). But Plaintiff did not "present[ ] any information to undermine the voluminous record the Committee compiled … raising serious concerns about [her] cognitive state." Special Committee Report & Recommendation 2 (July 24, 2024), https://perma.cc/8HGJ-CJRS (July 2024 Report).

The Special Committee accordingly recommended that Plaintiff's suspension from hearing new cases be renewed for a second year. July 2024 Report at 36-38. The Committee concluded that Plaintiff's isolated public appearances did not dispel well-founded concerns about "fulfilling the particular duties of her office, which require abilities involving short-term memory, clarity about and concentration in working with numerous concrete facts, and stamina in doing so with multiple cases." *Id.* at 11. Given those continued concerns, the Special Committee concluded that Plaintiff's noncompliance continued to hamper its investigation. *See id.* at 20-21, 33-35. The Judicial Council unanimously adopted the Special Committee's recommendation, imposing another one-year suspension "subject to consideration of renewal if Judge Newman's refusal to cooperate continues after that time and to consideration of modification or rescission if justified by an end of the refusal to cooperate." Judicial Council Order 1-2 (Sept. 6, 2024), https://perma.cc/D8WT-LWUN.

23

C.     Prior Proceedings

In May 2023, Plaintiff sued the Judicial Council in district court. Her operative complaint alleged 11 claims. First Am. Compl., JA51-61. Broadly, she asserted that she had been improperly removed from office, *see id.*, JA51-54, that she had been deprived of due process because the judges on the Judicial Council were potential witnesses or had an interest in the proceedings, *id.*, JA54-55, that the Act is void for vagueness, *id.*, JA55-58, and that the Special Committee could not properly require her to submit medical records or take medical tests under the Fourth Amendment and the Act, *id.*, JA57-61. She sought a preliminary and permanent injunction and declaratory relief. *Id.*, JA61; Mot. for Prelim. Inj., Dkt. 12.

After hearing oral argument, the district court denied Plaintiff's request for a preliminary injunction and dismissed the majority of Plaintiff's claims. Mem. Op. (Feb. 12, 2024), JA147-82; *see* Arg. Tr., JA66-133. Invoking 28 U.S.C. § 357(c) and this Court's decision in *McBryde v. Committee to Review*, 264 F.3d 52, 62-63 (D.C. Cir. 2001), the district court explained that Congress precluded it from reviewing statutory and as-applied constitutional challenges to determinations made under the Act. *See* Mem. Op. (Feb. 12, 2024), JA162-68. The district court explained that many

24

of Plaintiff's claims were therefore barred, including her constitutional and statutory challenges to orders issued by the Judicial Council suspending her from new cases, *id.*, JA168-69; her due-process challenge to the Judicial Council's failure to request a transfer, *id.*, JA169; and her arguments that the Act does not authorize and that the Fourth Amendment prohibits an order requiring her to undergo medical tests, *id.*, JA169-70.

The district court considered and rejected on the merits Plaintiff's facial challenges contending that the Act unconstitutionally allows judges to exercise the power of impeachment and removal, Mem. Op. (Feb. 12, 2024), JA178-80, and that the Act affords the Special Committee too much discretion, *id.*, JA180-82. And after further briefing, the court granted judgment on the pleadings to defendants on Plaintiff's remaining claims, Mem. Op. (July 9, 2024), JA202-15. The district court held that the Act was not unconstitutionally vague, *id.*, JA207-15, and that it did not authorize unreasonable searches, *id.*, JA204-07.

Accordingly, the district court entered final judgment in favor of defendants. Order, JA200.

Plaintiff timely appealed.  Notice of Appeal, JA216.  On appeal, she raises only her unlawful-removal and transfer-related arguments.  *See* Br. 23-65.

## SUMMARY OF ARGUMENT

I.  The only question properly before this Court is whether the Judicial Conduct and Disability Act is facially constitutional.  Plaintiff's facial constitutional challenge to the Act is meritless.  Plaintiff contends that the Act violates Article III on its face because it authorizes the temporary suspension of a judge from hearing new cases, which Plaintiff contends is equivalent to an unlawful removal without impeachment.  Congress did not violate the separation of powers in permitting judicial councils to "order[ ] that, on a temporary basis for a time certain, no further cases be assigned to the judge whose conduct is the subject of a complaint."  28 U.S.C. § 354(a)(2)(A)(i).  Indeed, Plaintiff concedes (Br. 41-43) that, at minimum, that provision has some legitimate applications.  That concession forecloses her facial challenge.

In any event, a temporary suspension from hearing new cases is not equivalent to removal.  The Act itself makes clear that Congress considered such time-limited suspensions distinct from "removal" from office.  By

26

definition, a "temporary" diminution in duties is not a "removal." And since 1980, when Congress crafted § 354(a)(2)(A)(i), federal law has made clear that the judicial office Plaintiff holds (like all circuit and district court judges) includes the possibility of a time-limited suspension from hearing new cases. That this condition on Plaintiff's office has been triggered does not mean she no longer holds office at all.

As for Plaintiff's as-applied challenges, the district court correctly recognized that Congress provided that a judge aggrieved by a judicial council's action under the Act "may petition the Judicial Conference of the United States for review thereof." 28 U.S.C. § 357(a). Otherwise, "all orders and determinations, including denials of petitions for review, shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise." *Id.* § 357(c). As this Court has squarely held, that judicial-review bar precludes both statutory and as-applied constitutional challenges. *See McBryde v. Committee to Rev.*, 264 F.3d 52, 62-63 (D.C. Cir. 2001). *McBryde* remains the binding precedent of this Court, and it leaves no room for Plaintiff's challenges to the Special Committee's orders, the decisions of the Judicial Council, or any other consequence or remedy under the Act specific

27

to her circumstances.  All such questions are subject to review only by the Judicial Conference of the United States.

II.  Plaintiff's as-applied challenges, including her due-process challenge, are not properly before this Court.  But even if the Court were to reach them, they would fail.

Plaintiff has not been effectively removed from office.  The relevant judicial council orders could not be clearer that Plaintiff has been only temporarily suspended from new case assignments, subject to reconsideration if she ceases refusing to comply with the Special Committee's investigation.  The keys to the suspension are in her pocket. Even while her noncompliance continues, the suspension orders apply "on a temporary basis for a time certain."  28 U.S.C. § 354(a)(2)(A)(i).  As the JC&D Committee agreed, a one-year suspension, subject to renewal, is an appropriate sanction, entirely in keeping with other suspensions for other misconduct.  And the September 2024 renewal process made clear that renewals of Plaintiff's suspension are far from automatic or open-ended.  The Special Committee and Judicial Council carefully considered Plaintiff's arguments that renewal was unwarranted in light of any changed circumstances before imposing a new, temporary suspension.

28

Plaintiff's contention that due-process principles entitled her to a transfer to another circuit's judicial council fares no better. As with her challenge to her suspension, the JC&D Committee carefully considered—and rejected—Plaintiff's argument that the Judicial Council erred in not requesting a transfer. Nothing in the Act itself suggests that transfers are ever compulsory, and the Chief Judge and Judicial Council concluded properly—as affirmed by the JC&D Committee—that the type of "exceptional circumstances" that would justify a transfer under the Rules are not present here. JC&D Rule 26. That the subject judge is a circuit judge and thus a colleague of the chief judge's, for example, or that the subject judge is dissatisfied with the decisions of her home circuit's judicial council, cannot alone be sufficient. If that were the intention, Congress would have written a very different statute. Throughout these proceedings, which have featured multiple rounds of briefing and oral argument, Plaintiff has received far more process than the constitutional minimum guaranteed by the Fifth Amendment.

Plaintiff's due-process claim also ignores the narrow question underlying the challenged Judicial Council orders: whether she committed misconduct in refusing to comply with Judicial Council orders absent good

cause.  As the JC&D Committee explained, Plaintiff herself agreed that there need not be an evidentiary hearing, let alone any witnesses, to decide that question.  Her arguments based on the possibility that she might call Federal Circuit judges as witnesses in future Judicial Council proceedings about a different question thus miss the mark.  Plaintiff identifies no due-process problem in the proceedings underlying the only issue the Judicial Council has thus far resolved:  whether her failure to comply with its orders absent good cause constitutes misconduct.

## STANDARD OF REVIEW

This Court reviews de novo orders dismissing a complaint and orders granting judgment on the pleadings.  *Statewide Bonding, Inc. v. DHS*, 980 F.3d 109, 114 (D.C. Cir. 2020).

## ARGUMENT

## I.    The Only Claim Properly Before This Court Is Plaintiff's Facial Unlawful-Removal Challenge, Which Is Meritless.

Congress set out the exclusive avenue by which a subject judge may challenge a Judicial Council's misconduct or disability order:  a petition for review to the Judicial Conference, which is composed entirely of Article III judges.  28 U.S.C. § 357(a), (b).  Congress further specified that, "[e]xcept as expressly provided" through that route, "all orders and determinations,

30

including denials of petitions for review, shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise." *Id.* § 357(c). As this Court has held, this judicial-review bar encompasses not only statutory and evidentiary claims but also as-applied constitutional challenges. *McBryde v. Committee to Rev.*, 264 F.3d 52, 62-63 (D.C. Cir. 2001).

That bar leaves Plaintiff with only her facial Article III challenge.[7] *See McBryde*, 264 F.3d at 58. Plaintiff contends that the Act violates Article III on its face because it authorizes the temporary suspension of a judge from hearing new cases, which Plaintiff contends is equivalent to an unlawful removal without impeachment. To succeed in such a challenge, Plaintiff would have to "establish that no set of circumstances exists under which the

---

[7] Defendants recognize that this Court has previously treated judicial council proceedings as administrative rather than judicial proceedings and indicated that district courts may entertain facial challenges to the Act brought by judges aggrieved by judicial council orders. *See, e.g., McBryde*, 264 F.3d at 58, 62; *Hastings v. Judicial Conference* (*Hastings II*), 770 F.2d 1093, 1102-04 (D.C. Cir. 1985); *see also* Mem. Op. (Feb. 12, 2024), JA172-76. Defendants preserve for possible further review the argument that the district court lacked jurisdiction to review judicial actions taken by the Judicial Council. *See* Mot. to Dismiss Br., Dkt. 25, at 36-40; *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005) (district courts "are empowered to exercise original, not appellate, jurisdiction"); *Chandler v. Judicial Council of the Tenth Circuit*, 398 U.S. 74, 89 (1970) (declining to resolve whether challenged judicial council "action was administrative action not reviewable in this Court, or whether it is reviewable here"); *id.* at 93-94 (Harlan, J., concurring).

law would be valid, or show that the law lacks a plainly legitimate sweep."

*Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (cleaned

up) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987), and

*Washington State Grange v. Washington State Republican Party*, 552 U.S.

442, 449 (2008)).  Plaintiff cannot overcome that steep hurdle, as her own

concessions demonstrate.

> **A.    Congress Validly Authorized Judicial Councils To Temporarily Suspend Judges From Hearing New Cases Due To Disability Or Misconduct.**

1.  The judiciary must have "some means by which federal judges

might 'put their own house in order.'"  *Hastings II*, 770 F.2d at 1099 (quoting

*Chandler*, 398 U.S. at 85).  The means Congress chose is the Act, which

"vest[s] specific investigative and disciplinary powers in the judicial councils

and the Judicial Conference."  *Id.* at 1100.  As relevant here, Congress

permitted judicial councils to "order[ ] that, on a temporary basis for a time

certain, no further cases be assigned to the judge whose conduct is the

subject of a complaint."  28 U.S.C. § 354(a)(2)(A)(i).  That provision does not

violate the separation of powers.

"The Constitution limits judgments for impeachment to removal from

office and disqualification to hold office," but "[i]t makes no mention of

32

discipline generally." *McBryde*, 264 F.3d at 65 (citing U.S. Const. art. I, § 3, cl. 7). Indeed, it preserves other forms of discipline, such as criminal prosecution, *see* U.S. Const. art. I, § 3, cl. 7, which may precede impeachment, *see Trump v. United States,* 603 U.S. 593, 633 (2024); *United States v. Hastings* (*Hastings I*), 681 F.2d 706, 710-11 (11th Cir. 1982). Congress made clear that it did not consider the suspensions permitted by § 354(a)(2)(A)(i) a form of removal, providing later in the same subsection that with respect to "Article III judges," judicial councils may "[u]nder no circumstances … order removal from office of any judge appointed to hold office during good behavior." 28 U.S.C. § 354(a)(3)(A) (capitalization altered). That judgment, while not controlling of the constitutional question, is entitled to due respect. *See, e.g.*, *Al Bahlul v. United States*, 767 F.3d 1, 16 (D.C. Cir. 2014) (en banc) ("In the performance of assigned constitutional duties each branch of the Government must initially interpret the Constitution, and the interpretation of its powers by any branch is due great respect from the others." (quoting *United States v. Nixon*, 418 U.S. 683, 703 (1974))). That legislative judgment underscores that Congress carefully considered the Constitution's limits and properly exercised its power to

33

provide a mechanism for judicial discipline short of impeachment and removal when it enacted § 354(a)(2)(A)(i).

At minimum, § 354(a)(2)(A)(i) is not *facially* invalid, as even Plaintiff concedes that it has legitimate applications. *See Americans for Prosperity Found.*, 594 U.S. at 615. Plaintiff acknowledges that a Judicial Council may cut off further case assignments as long as the judge still has cases pending before her. *See* Br. 41-43. Under Plaintiff's theory, the Judicial Council's order suspending case assignments to her was valid between its entry on September 20, 2023, and November 8, 2023, when Plaintiff cleared her final backlogged opinion—and would have been valid even longer had Plaintiff not enjoyed a reduced workload and therefore had more existing cases to continue working on. *See* Br. 39 & n.11 (noting that another judge suspended from new case assignments for a year issued "at least seventy-three separate opinions"); July 2023 Report, Dkt. 25-1, at 57-58, 58 (noting that Plaintiff assigned herself a disproportionately small share of cases and that as of 2022 was assigned a reduced sitting schedule). That concession alone dooms her facial challenge because it establishes  a "set of circumstances … under which the Act would be valid." *Salerno*, 481 U.S. at 745.

Other applications of the statute would plainly be legitimate. A Judicial Council could use § 354(a)(2)(A)(i) to stop case assignments while a judge was unable to attend court because she was hospitalized or jailed, for example. Not only would such a step not violate the Constitution, it might in some circumstances be required. *See* U.S. Const. amend. VI; 18 U.S.C. § 3161 (Speedy Trial Act).

2. Plaintiff's argument (Br. 41-43) for a limiting construction of the Act is unavailing.

a. Two initial matters warrant consideration. First, despite Plaintiff's framing (Br. 41-43, 43 n.12), she appears to urge a narrow construction of the Act not as part of a facial challenge to the statute itself, but rather as an as-applied challenge; she points to the length, scope, and effects of her own suspension as the basis of that narrowing construction, *see* Br. 27-28, 55. Her arguments do not turn on the face of § 354(a)(2)(A)(i), which authorizes the suspension of new case assignments, but on its application in a circumstance like hers, where such a suspension leaves the subject judge without cases. *See* Br. 41-42 (arguing that "§ 354(a)(2)(A)(i) does not extend to suspensions" that effect what she terms a cessation of "all … judicial functions"). The Court could decline to entertain her argument on that ground alone. Second,

35

Plaintiff never raised her argument for a limiting construction in her district court filings.  *Cf.* Mem. in Supp. of Mot. for Prelim. Inj., Dkt. 13-1; Mem. in Resp. to Mot. to Dismiss and Prelim. Inj. Reply, Dkt. 30; Mem. in Opp'n to Mot. for J. on the Pleadings, Dkt. 47.  She may not first raise it on appeal.  *See Apprio, Inc. v. Zaccari*, 104 F.4th 897, 910 (D.C. Cir. 2024) ("[A]bsent exceptional circumstances, a party forfeits an argument by failing to press it in district court." (quoting *Government of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019)).

b.  Even if Plaintiff's argument for a saving construction constituted a facial challenge and was preserved, it would fail.

Plaintiff acknowledges that some means of intrabranch judicial discipline pass constitutional muster, but she argues that any disciplinary measures "cannot have the same practical consequences as impeachment" and thus "wholly and involuntarily withdraw from Article III judges the 'power to hear and determine judicially questions submitted,'" even temporarily.  Br. 44.  But temporarily suspending a judge from hearing new cases does not effect a removal of the judge from office.

To begin, in the context of public offices, "removal" refers to involuntarily and permanently depriving an officeholder of her office.  Its

36

meaning at the founding was "[t]he act of displacing from an office or post."
*Removal*, 2 Noah Webster, *An American Dictionary of the English Language* (1828); *see also Removal*, 2 Samuel Johnson, *A Dictionary of the English Language* (4th ed. 1773) (unpaginated) ("Dismission from a post."). When Parliament created a procedure to terminate an English judge from his post, it used the word "remove." *See* Act of Settlement, 1701, 12 & 13 Will. 3, c. 2 (establishing procedure for removal by action of both Houses of Parliament). "Removal" continues to hold this meaning. *See Removal*, 13 *Oxford English Dictionary* 601 (2d ed. 1989) (defining removal as "[d]ismissal from an office or post" and documenting consistent historical usage since 1647).

A person subject to a temporary suspension who still holds her commission and is still entitled to draw her salary has not been dismissed from her office, and, thus, has not been removed. *See* Report of the National Commission on Judicial Discipline and Removal, 152 F.R.D. 265, 285-87 (1993) (explaining that a judicial council's decision to reassign an indicted or imprisoned judge's cases "would not effect a removal," where "[t]he judge would continue to receive salary and would continue to hold office, because he or she would still be eligible to exercise judicial authority"). Temporarily

37

preventing a judge from hearing new cases is not the same thing as depriving her of her office.  For example, if a judge fell into a medical coma, her judicial council could quite reasonably reassign *all* her cases and discontinue further case assignments.  If the judge later recovered, the judicial council could then restore her to her role in hearing cases.  No one would say that the judge was entirely removed from office while incapacitated.  Indeed, had the judge actually been removed from office, restoration to service after her recovery would require another nomination, confirmation, and appointment.

Congress's considered choices in the Act—made after extensive study and consultations with the Judicial Branch—highlight the difference between removal and suspension.  *Compare* 28 U.S.C. § 354(a)(2)(A)(i), *with id.* § 354(a)(3)(A) (distinguishing temporary suspension from removal); *see* Breyer Committee Report, 239 F.R.D. at 129 & n.11 (noting the decade of debate about the propriety and constitutionality of measures to address judicial misconduct and disability).  Judgeships on the courts of appeals and district courts are creatures of statute.  28 U.S.C. chs. 3, 5.  *See generally* Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and the Federal System* 7-9 (7th ed. 2015) (describing the origins of the Madisonian Compromise).  Article III of course imposes certain fundamental

constraints on Congress's control over the Judiciary. *See, e.g.*, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 227 (1995) (Congress may not retroactively revise a final judgment). But Congress can and does impose limitations on the circumstances in which district and circuit court judges exercise judicial power. *See, e.g.*, 28 U.S.C. § 46(b) (requiring the Federal Circuit to sit in panels of "not less than three"); *id.* § 47 (precluding a judge from hearing an appeal "from the decision of a case or issue tried by him").

Congress's decision to use that authority to include the possibility of temporary suspension (but not removal) by other Article III judges as a feature of the office Plaintiff holds does not run afoul of the "constitutionally prescribed impeachment process" reserved to Congress. Br. 43-44. It is unclear whether Plaintiff believes that Congress has impermissibly diminished or impermissibly aggrandized the Judiciary by permitting it to issue temporary suspensions within its own ranks. Either suggestion, however, is misplaced.

Like quorum or disqualification provisions, the challenged intrabranch suspension authority poses no threat to Article III independence. On the contrary, Congress carefully preserved such independence by vesting authority over Article III judges only in other Article III judges, as well as

39

specifically providing that complaints "directly related to the merits of a

decision or procedural ruling" are subject to dismissal.  28 U.S.C.

§ 352(b)(1)(A)(ii); *see also* JC&D Rule 4(b)(1) (providing that complaints

about correctness of rulings do not identify cognizable misconduct);

*McBryde*, 264 F.3d at 65 (explaining that the "primary value" the Supreme

Court has identified regarding tenure and salary protection is "ensur[ing]

the independence of the Judiciary from the control of the Executive and

Legislative Branches of government" (quotation marks omitted)).  And far

from infringing on Congress's own impeachment-and-removal powers, the

Act serves as an important auxiliary to that authority, enabling the Judiciary

to investigate and take immediate measures to protect judicial processes

itself, in advance of any action Congress might choose to take based on

materials generated through the Act's processes.  *See, e.g.*, 28 U.S.C.

§§ 354(b)(2)(B), 355(b)(1) (permitting judicial councils to certify

determinations regarding possible grounds for impeachment "together with

any complaint and a record of any associated proceedings" to the Judicial

Conference, which may transmit such determinations and records to the

House).  While Plaintiff is plainly dissatisfied with Congress's decision to

include the possibility of temporary suspension within the fabric of the office she holds, nothing about that decision violates the separation of powers.

c.  The breadth of Plaintiff's constitutional-avoidance argument—that courts must in all circumstances continue to assign some cases to judges—runs into constitutional problems of its own.  The avoidance canon does no work when applying it "would merely ping-pong [the court] from one constitutional issue to another." *Sessions v. Dimaya*, 584 U.S. 148, 164 (2018) (plurality opinion).

Plaintiff argues for an all-or-nothing proposition.  To accept her argument means that a judicial council may never stop a judge from hearing cases, no matter how egregious his misconduct or what constitutional defects his uninterrupted exercise of powers creates.  Under Plaintiff's theory, a judge found to be taking bribes could keep hearing new cases.  *Cf.* H.R. Rep. No. 111-427 (2010) (describing allegations of bribery and perjury).  A judge found to be using the powers of his office to engage in the serial sexual abuse of his law clerks could keep hearing new cases.  *Cf.* Order at 4-8, *In re Complaint of Judicial Misconduct*, No. 22-90121 (9th Cir. Jud. Council 2024), https://perma.cc/YUP6-Z5J6 (describing sexual misconduct).  A judge found to have an undisclosed sexual relationship with an attorney who

regularly appeared before his court could keep hearing new cases. *Cf.*
Complaint Identified by Chief Judge, *In re Complaint No. 05-24-90002* (5th
Cir. Oct. 23, 2023), https://perma.cc/MXK2-NN3S (describing relationship
between a bankruptcy judge and a practitioner).

Simply to spell out the consequences of Plaintiff's theory is to refute it.
A judicial council must be able to protect the integrity of judicial
proceedings. To construe the Act as Plaintiff suggests would mean Congress
intended and the Constitution requires a subject judge to be permitted to
continue hearing and deciding cases without pause until and unless the judge
is impeached and convicted, even if allowing the impaired judge to continue
to try a case would violate litigants' constitutional rights. *See, e.g.*, *Gacho v.
Wills*, 986 F.3d 1067, 1068 (7th Cir. 2021) (proceeding before bribed judge
deprived litigant of due process).

Similarly, to accept Plaintiff's argument would mean that a judicial
council could never stop a disabled judge from continuing to hear cases, no
matter how serious his disability. *See* Francis X. Shen, *Aging Judges*,
81 Ohio St. L.J. 235, 269-72 (2020) (collecting examples of judges remaining
on the bench despite significant mental impairments). A judge suffering
from significant memory loss could still rule on motions, even if unable to

42

remember critical evidentiary details. A judge suffering from severe cognitive impairment could still impose criminal sentences. Indeed, even if a judge were deemed legally incompetent by a state court and lost the power to execute legal documents on his own behalf, he would still be able to issue judicial orders binding on others. These exercises of judicial power too would deprive litigants of due process. *See Jordan v. Massachusetts*, 225 U.S. 167, 176 (1912) ("Due process implies a tribunal both impartial and mentally competent to afford a hearing."). Furthermore, federal law discourages parties from mounting collateral challenges to judgments based on allegations of impairment. *See, e.g.*, *Deere v. Cullen*, 718 F.3d 1124, 1151 (9th Cir. 2013) (rejecting claim that judge who imposed capital sentence was suffering from dementia); *United States v. Washington*, 98 F.3d 1159, 1163 (9th Cir. 1996) (affirming denial of Rule 60(b)(6) motion to reopen judgment rendered by judge diagnosed with Alzheimer's at the time of his ruling). Judicial conduct and disability proceedings thus provide a crucial safety valve to protect litigants' rights.

Plaintiff's interpretation of the Act would even call into question the constitutionality of 28 U.S.C. § 364(1), which provides that a judge convicted of a felony "shall not hear or decide cases unless the judicial council …

43

determines otherwise." Plaintiff's theory leaves no room for suspension of a judge by operation of law based on criminal convictions. Taken to its logical conclusion, Plaintiff's theory would require that an incarcerated judge be able to continue to hear cases from behind bars. The Constitution does not demand that absurd result, and Plaintiff cannot rely on constitutional avoidance to "save" one provision while invalidating another.

### B. Binding Circuit Precedent Forecloses Plaintiff's Efforts To Bring As-Applied Challenges To Her Suspension.

1. As this Court has held, 28 U.S.C. § 357(c) bars all statutory and as-applied constitutional challenges to orders and determinations made under the Act. In *McBryde*, a judge disciplined under the Act brought facial constitutional challenges to the Act as well as statutory and as-applied constitutional challenges to the orders sanctioning him. 264 F.3d at 58-59.[8] This Court held that the facial challenges could proceed because the judicial-review bar "does not withhold jurisdiction over Judge McBryde's claims that the *Act* unconstitutionally impairs judicial independence and violates [the] separation of powers." *Id.* at 58. But it concluded that the Act deprived it of

---

[8] *McBryde* was decided before the Act's 2002 recodification, *see supra* n.1, and the statutory language now at 28 U.S.C. § 357(c) was then at § 372(c)(10).

jurisdiction to entertain Judge McBryde's remaining claims. *See id.* at 58-64.

Acknowledging the "high hurdle" to finding that Congress intended to

preclude judicial review of constitutional claims, this Court nonetheless held

that the Act clearly precluded review not only of Judge McBryde's statutory

arguments, but also of his as-applied constitutional claims. *Id.* at 59; *see also*

*In re McBryde*, 117 F.3d 208, 220 n.7 (5th Cir. 1997) ("Congress has made

crystal clear its intent that the federal courts as such exercise no appellate

jurisdiction" over judicial-conduct-and-disability proceedings.).

This Court based that conclusion on the unambiguous language of

§ 357, which "vest[s] the authority for implementing the Act exclusively in

the hands of Article III judges, providing for initial action by one group of

such judges and for review by another group." *McBryde*, 264 F.3d at 60.

"Having done so, Congress clearly meant to be understood quite literally

when it said in [the judicial-review bar] that orders of the Judicial

Conference or relevant standing committee 'shall not be judicially reviewable

on appeal.'" *Id.* (quoting now-§ 357(c)). The Court drew additional support

from Congress's intent to channel as-applied challenges to the Article III

judges of the "Judicial Conference (or a standing committee thereof)." *Id.* at

59-63 (observing that "it is not clear whether there is any material difference

45

between" review by a "Court" and review by the Judicial Conference, noting that "[i]n both cases, of course, the persons conducting the review are exclusively Article III judges"). As this Court explained, "reserving to the Judicial Conference committee *exclusive* authority over as applied constitutional challenges" satisfied "the presumption in favor of access to Article III review of constitutional claims," while "at the same time … prevent[ing] undue prolongation of the disciplinary process." *Id.* at 63. Thus, based on the Act's text and history, this Court held that "Congress clearly and convincingly barred" judicial review of as-applied constitutional challenges. *Id.*

*McBryde* remains good law, and Plaintiff errs in suggesting (Br. 60-65) otherwise. A decision by a three-judge panel binds all other panels unless overturned by the en banc court or the Supreme Court. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc). This Court does not lightly infer that one of its precedents has been abrogated. Rather, absent en banc action, an intervening Supreme Court "decision must effectively overrule, *i.e.*, eviscerate the law of [this] circuit." *Bahlul v. United States*, 77 F.4th 918, 925 (D.C. Cir. 2023) (cleaned up). "In other words, the intervening Supreme Court precedent must clearly dictate a departure

from circuit law." *Id.* at 926 (quotation marks omitted). If an interpretation of an intervening decision is "merely arguable," it does not meet that standard. *Id.*

Far from meeting this high standard, no decision of the Supreme Court casts meaningful doubt on the reasoning or holding of *McBryde*. Plaintiff points (Br. 61-63) to *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), but that case dealt with the circumstances in which a statute "implicitly" precludes district-court jurisdiction, not an express statutory judicial-review bar. *Id.* at 185. In *Axon*, the Supreme Court clarified the scope of the *Thunder Basin* doctrine, which provides that some "special statutory review scheme[s] … may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Id.* (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)). That doctrine looks to various factors "to determine when a statutory scheme *implicitly* strips a district court of jurisdiction," *Bohon v. FERC*, 92 F.4th 1121, 1123 (D.C. Cir.) (emphasis added) (discussing *Axon*), *cert. denied*, 144 S. Ct. 2563 (2024). Where as here, however, "Congress explicitly exercised its constitutional power to define the jurisdiction of federal courts," *Axon* does not permit a court to "displace" the statutory text. *Id.* at 1124.

47

Even if it held any relevance to the Act, moreover, *Axon* would be of little help to Plaintiff. The Supreme Court's central concern in *Axon* was that a regulated party should normally have an opportunity to obtain judicial review before being subjected to an unconstitutional proceeding. *See* 598 U.S. at 191-93. That concern is not present under the Act, which this Court has concluded allows facial challenges to proceed in court. *See McBryde*, 264 F.3d at 58. Unlike the plaintiffs in *Axon*, moreover, Plaintiff here seeks to challenge "actions taken in the … proceedings," not the Judicial Council's "power to proceed at all," *Axon*, 598 U.S. at 192. And there is no question that the Article III judges on the Judicial Council and the JC&D Committee have the relevant "expertise" in adjudicating constitutional and statutory issues. *Id.* at 195. In short, Plaintiff cannot show even an "arguable" basis to conclude that *Axon* abrogated *McBryde*, much less show that *Axon* "clearly dictate[s]" departure. *Bahlul*, 77 F.4th at 926.

Plaintiff's argument that the JC&D Committee cannot decide constitutional questions rests on a false premise and is, in any event, irrelevant. While the JC&D Committee previously disclaimed the authority to adjudicate as-applied constitutional challenges, this Court expressly

concluded otherwise. *See McBryde*, 264 F.3d at 62. Consistent with that holding, the JC&D Committee has since exercised such authority, including in Plaintiff's own case. *See In re Complaint of Judicial Misconduct*, slip op. at 30-34, C.C.D. No. 17-01 (Committee on Judicial Conduct and Disability Aug. 14, 2017) https://perma.cc/AKC7-UB4Z (Adams JC&D Committee Decision) (explaining that a judicial council order "did not violate the Fourth Amendment"); JC&D Committee Decision, Dkt. 40-1, at 14-15 (noting Plaintiff's constitutional challenges to the Judicial Council order but nonetheless affirming); *id.* at 28 (citing *McBryde*). Plaintiff and amici are thus incorrect (Br. 23, 64-65; Retired Judges' Amicus Br. 6-7, 16-17, 23) that the Act's specified route for Article III judges to review Judicial Council orders cannot afford consideration of as-applied constitutional claims. And in any event, even if the JC&D Committee had refused to consider Plaintiff's as-applied constitutional challenges, *McBryde* recognized that the Act's judicial-review bar would nonetheless preclude district-court review of orders and determinations made under the Act. *See* 264 F.3d at 62, 68. Plaintiff disagrees with that reasoning, but it remains binding precedent.

2. Nor has Congress implicitly repealed the judicial-review bar. Plaintiff and amici assert (Br. 60-61; Retired Judges' Amicus Br. 22-23) that

in 2002 Congress amended the Act to permit as-applied challenges by including a savings clause in a law reorganizing the Act.  *See* Pub. L. No. 107-273, 116 Stat. at 1856 (providing that "[i]f any provision of this subtitle, an amendment made by this subtitle, or the application of such provision or amendment to any person or circumstance is held to be unconstitutional," the remainder of the statute or "the application of the provisions … to any person or circumstance shall not be affected thereby").  But this amendment's reference to the possibility that an "application" of the Act could "[be] held to be unconstitutional" does not suggest Congress intended to alter the contours of the judicial-review bar as set out in *McBryde*. Plaintiff ignores that the JC&D Committee could, consistent with *McBryde*, hold that particular applications of the Act are unconstitutional. *See McBryde*, 264 F.3d at 62; Mem. Op. (Feb. 12, 2024), JA163 n.6; *see also* Adams JC&D Committee Decision 38-39 (rejecting as-applied constitutional challenge).  Moreover, the 2002 savings clause also applies to 28 U.S.C. § 356(a), which affords judicial councils subpoena powers in their investigations in accordance with 28 U.S.C. § 332(d), which permits district-court enforcement of such subpoenas through contempt proceedings.  The reference to holding "applications" of the Act unconstitutional could also

50

reflect the ability of district courts to opine on the propriety of judicial-council subpoenas.  Thus, the 2002 amendments in no way suggest an implicit repeal of or alteration to the plain language of § 357(c)'s judicial-review bar. *See, e.g.*, *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 315 (2020) (emphasizing that "repeals by implication are not favored" and that courts must give effect to both relevant provisions unless "irreconcilable").

3.  Finally, Plaintiff overreads *McBryde* in arguing (Br. 55-60) that this Court reserved the question whether the judicial-review bar prevents as-applied challenges to long-term suspensions.  In its analysis rejecting a facial challenge to the Act, the Court included a footnote reading:  "Obviously, we do not decide whether a long-term disqualification from cases could, by its practical effect, affect an unconstitutional 'removal.'"  *McBryde*, 264 F.3d at 67 n.5.  Given the Court's interpretation of § 357(c)'s language, its facial analysis necessarily could not reach the question of the constitutionality of any particular application of the Act to effect a disqualification of any variety, a task that the Court left to the Judicial Conference.  But explaining that a decision does not resolve the merits of a question is not the same thing as holding open jurisdiction to reach that question.  Plaintiff's interpretation of

the footnote is incompatible with *McBryde*'s actual holding barring as-applied challenges.

In any event, Plaintiff's temporary suspension from hearing new cases is set to expire on a date certain; will not be renewed absent a new finding that renewal is warranted based on the circumstances then presented to the Judicial Council; and is subject to reconsideration at any time by the simple expedient of Plaintiff's complying with the Judicial Council's now-affirmed medical-testing-and-records requirements. *See infra* pp. 52-63 (discussing Plaintiff's as-applied challenges). Thus, even if Plaintiff's reading of *McBryde* were correct, her case still would not present a plausible example of constructive removal.

## II.    In Any Event, Plaintiff's As-Applied Challenges Are Meritless.

As explained, Plaintiff's as-applied constitutional challenges are not properly before this Court. Her attempts (*e.g.*, Br. 43 n.12, 50-55) to reframe her case-specific disagreements with the ways the Judicial Council employed its statutory authority as facial challenges to the Act itself are unpersuasive. But even if the Court had jurisdiction to consider them, Plaintiff's as-applied challenges would fail.

A.   **Plaintiff's Time-Limited Suspension From New Case Assignments Comports With The Act And The Constitution.**

Plaintiff's assertion (Br. 57) that she has been suspended from hearing new cases "indefinitely" and "permanently" is without merit.

As already explained, the relevant judicial council orders could not be clearer that Plaintiff has been only temporarily suspended from new case assignments in compliance with the Act.  The Judicial Council ordered that Plaintiff "shall not be permitted to hear any cases, at the panel or en banc level, for a period of one year beginning with the issuance of this Order, subject to consideration of renewal if [Plaintiff's] refusal to cooperate continues after that time and to consideration of modification or rescission if justified by an end of the refusal to cooperate."  Judicial Council Order (Sept. 20, 2023), Dkt. 30-1, at 255-56 (footnote omitted); *accord* Judicial Council Order 2 (Sept. 6, 2024), https://perma.cc/D8WT-LWUN.  By their terms, the orders apply "on a temporary basis for a time certain."  28 U.S.C. § 354(a)(2)(A)(i).

Plaintiff's suspension is also time-limited in the important sense that she has the power to end it any time she wishes by simply cooperating with the Judicial Council's orders.  As the JC&D Committee emphasized, unlike

many other suspension orders of similar length, Plaintiff "has the power to trigger reconsideration or modification if she decides to cooperate." JC&D Committee Decision, Dkt. 40-1, at 28 (citing other suspension orders).[9] The keys to ending Plaintiff's current suspension are thus in her own pocket.

Plaintiff asserts (Br. 57-58) that her suspension is effectively permanent because she will never agree to submit her medical records to an independent neurologist or to take the tests recommended by the Special Committee's medical expert. She foresees that, on that basis alone, the Judicial Council will "string[] together and indefinitely extend[] numerous suspensions," Br. 58, and that the result will be a permanent removal from office. This contention is doubly flawed.

---

[9] Plaintiff errs in asserting (Br. 27-41) that her suspension is unprecedented. *See* JC&D Committee Decision, Dkt. 40-1, at 27-28 (discussing the "numerous examples of suspensions of similar length" in upholding Plaintiff's one-year suspension, subject to renewal); *In re Complaint of Judicial Misconduct*, Nos. 99-6-372-48, 00-6-372-66 (6th Cir. Jud. Council Nov. 2, 2001) (cited in JC&D Committee Decision, Dkt. 40-1, at 28), Dkt. 24-4 (six-month suspension from all judicial duties). Plaintiff's suggestion that the Breyer Committee Report found "no instances" of suspensions under the Act "in twenty-six years" is also mistaken, Br. 31-32 (emphasis and quotation marks omitted); the cited portion of the report discussed only "circuit-submitted data" involving cases from 2001 to 2005, 239 F.R.D. at 142; *see also id.* at 121, 133 (discussing the "samples" studied).

First, as already explained, Plaintiff is wrong that any future renewals will automatically follow from the bare fact of her noncompliance with the Judicial Council's May 2023 order.  In recommending the 2024 renewal, the Special Committee carefully reexamined the propriety of continuing to require Plaintiff to provide the requested medical information.  The Special Committee afforded Plaintiff the opportunity to "establish changed circumstances" or otherwise offer information to "undermine the voluminous record" the Special Committee had earlier compiled regarding "serious concerns about [Plaintiff's] cognitive state."  July 2024 Report 2; *see id.* at 8-14 (weighing Plaintiff's assertions that new evidence established good cause for noncompliance).  Any future renewal proceedings will involve similarly careful safeguards and consideration of any changed circumstances or new information.[10]

---

[10] Neither the Judicial Council's September 2024 renewal nor more recent developments were before the district court at the time it rendered the judgment on appeal; this Court thus need not examine them.  Should it choose to do so, however, they demonstrate the error of Plaintiff's contention (Br. 21) that the Judicial Council has decided upon "in substance, an open-ended suspension." ████████████████████████████████████████

Second, and more fundamentally, Plaintiff cannot attack her time-limited suspension order as permanent by simply declaring in advance that she will never comply with the Judicial Council's investigative order—that is, by declaring that her ongoing misconduct will have no end.  The Judicial Council is not required to accept such preemptive declarations at face value. The Act authorizes the Judicial Council to impose time-limited suspensions to a date certain and to evaluate again after each such period whether a further suspension is necessary and appropriate to induce compliance. Plaintiff cannot fairly characterize such an order as indefinite, especially when she can bring her suspension to an end at any time by supplying the requested records and submitting to a panel of standard, non-invasive tests.

Plaintiff also asserts that she has been deprived of her office because the suspension from being assigned *new* cases suspended her from all judicial functions.  But her suspension from hearing new cases did not deprive her of the power to hear all cases; Plaintiff was permitted (indeed encouraged) to issue opinions in her outstanding cases.  *See* Judicial Council Order (Nov. 9, 2023), Dkt. 32-1, at 3.  That she had so few existing cases resulted from her own previous choices regarding her workload.  *See supra* p. 34.

**B.    Plaintiff Received More Procedural Protections Than The Act Or The Due Process Clause Requires.**

Plaintiff's assertion (Br. 59-60, 63) that the Judicial Council was required to ask the Chief Justice to transfer her investigation to another Circuit fails under both the Act and JC&D Rules and the Due Process Clause.

1.  The Act is entirely silent regarding transfers:  it does not acknowledge the possibility of transferring a judicial misconduct or disability proceeding to another circuit, let alone identify circumstances in which such transfers are authorized or required.  Adopting the Breyer Committee's recommendation, however, the Judicial Conference created by rule a transfer procedure for "exceptional circumstances."  JC&D Rule 26; *see also* Breyer Committee Report, 239 F.R.D. at 214.  Nothing in the Rule or its history indicates that this case presents the type of exceptional circumstances the Rule's creators contemplated would underlie transfer.

The Breyer Committee explained that "[t]ransfer should not be a regular occurrence, but some complaints might be better handled by judges outside the circuit."  Breyer Committee Report, 239 F.R.D. at 214.  It suggested that transfer may be appropriate when "no appellate judge would be available to perform the chief judge's duties under the Act," when "local

57

disposition might create a threat to public confidence in the process" because of the perception that "judges will go easy on colleagues with whom they dine or socialize," when the circuit is "beset by internal tension tied to the alleged conduct that prompted the complaint," or when "a complaint that challenges the conduct of a judge but also calls into question the policies or governance of the entire court of appeals." *Id.* at 214-15.  The Breyer Committee suggested that transfer would be inappropriate where "outside judges' relative ignorance of local circumstances and personalities might make them less able to gauge what corrective action would be effective and appropriate," where "judges in other circuits may be in a poor position to persuade a judge whom they do not know well to take the action they believe is necessary and will be less able … to monitor a resolution," where judges in another circuit "may be disinclined to go through the emotionally draining work of imposing tough sanctions on judges not of their own circuit," and where "transfers may increase time and expense." *Id.* at 215.

Here, the Special Committee expressly considered these factors. Factors militating in favor of transfer were absent and the factors militating against transfer were predominant.  *See* Breyer Committee Report, 239 F.R.D. at 214.  The proceedings against Plaintiff do not involve a

complaint filed or identified against all active Federal Circuit judges; do not entail "internal tension" within the Federal Circuit "tied to the alleged conduct that prompted the complaint"; and do not "call[ ] into question the policies or governance of the entire court of appeals."[11]  *See id.* at 214-15. Weighing against transfer, on the other hand, this case highlights the risks of "outside judges' relative ignorance of local circumstances and personalities" and potential "disinclin[ation] to go through the emotionally draining work of imposing tough sanctions on judges not of their own circuit."  *Id.* Transferring the case would also increase time and expense.  *See id.*; July 2023 Report, Dkt. 25-1, at 95 (noting that transfer would be "enormously wasteful" after conducting 20 interviews, entertaining briefing, hearing argument, and issuing multiple orders).  Finally, the fairness concerns that Plaintiff highlights cut the other way here.  As the Breyer Committee explained, the risk of home-circuit adjudication is not that judges will be too

---

[11] Contrary to amicus's suggestion, *see* Manhattan Institute's Amicus Br. 12-13, transfer is not warranted simply because Plaintiff sits on the Federal Circuit.  Such a transfer would be required in every case involving a circuit judge—the opposite of an "extraordinary circumstance."  Nor does Plaintiff's conduct prompting the complaint against her relate to any "internal tension" that has "beset" the Federal Circuit; while Plaintiff is in disagreement with her colleagues' actions, those colleagues have proceeded unanimously in investigating both her possible disability and her established misconduct.  *See* Breyer Committee Report, 239 F.R.D. at 215.

hard on their colleagues, but rather that "judges will go easy on" them.  239 F.R.D. at 215; *cf.* Former Judges' Amicus Br.  As the JC&D Committee affirmed, the Chief Judge and the Judicial Council appropriately considered these factors and exercised their discretion not to request a transfer.

Plaintiff's suggestion (Br. 59) that it is "not clear that the Judicial Conference (or its JC&D Committee)" can review the Judicial Council's transfer-related decisions is puzzling.  The seven Article III judges of the Judicial Conference's JC&D Committee thoroughly evaluated Plaintiff's arguments in favor of a transfer and found them "without merit." JC&D Committee Decision, Dkt. 40-1, at 16; *see id.* at 17-21.  And Plaintiff's continued assertion (Br. 10-11) that keeping the investigation in the Federal Circuit is unprecedented is incorrect.  *See* July 2023 Report, Dkt. 25-1, at 94-95, 94 nn.27, 28.  Statistics from the Administrative Office of the U.S. Courts indicate that transfers are rare.  *See id.* at 94 n.27.  Of particular note, in proceedings against District Judge John R. Adams, which investigated whether he suffered from a mental or emotional disability, the Sixth Circuit twice denied motions seeking transfer to another circuit.  *See* Order & Memorandum at 4, *In re Complaint of Judicial Misconduct*, No. 06-13-90009

(6th Cir. Judicial Council Feb. 22, 2016), https://perma.cc/TSK4-SGRY (motions denied because matter "presented no 'exceptional circumstances'").

2.  Nor does the Due Process Clause mandate transfer to another circuit's judicial council.

Plaintiff's due-process claims rest on the false premise that in the proceedings before the Special Committee and the Judicial Council "the same individuals act as both witnesses and adjudicators."  Br. 56.  As the JC&D Committee explained in affirming the Judicial Council's decision not to request a transfer, that is incorrect.  The record is clear that no Federal Circuit judges were interviewed by or gave evidence to either the Special Committee or the Judicial Council.  July 2023 Report, Dkt. 25-1, at 35, 77; Judicial Council Order (Aug. 7, 2023), Dkt. 30-1, at 226.  Indeed, given the narrow focus of the misconduct investigation, "[t]here were no personal interactions between Judge Newman and other judges that would come up as disputed facts."  July 2023 Report, Dkt. 25-1, at 77.  Plaintiff herself thus agreed "through counsel … that no evidentiary hearing … [was] necessary to decide" whether she failed to comply with the Judicial Council's order, "precisely because no witness testimony was necessary to the misconduct determination."  JC&D Committee Decision, Dkt. 40-1, at 17.

61

Nor may Plaintiff locate a due-process problem in the fact that the members of the Judicial Council have years of experience working with her. *See Norris v. SEC*, 675 F.3d 1349, 1354 (Fed. Cir. 2012) ("There is nothing inherently wrong with a deciding official's having background knowledge …."); *see also* JC&D Committee Decision, Dkt. 40-1, at 17 (explaining that "members of the Judicial Council were not required to recuse themselves … because they may have 'personal knowledge' of disputed facts"). Federal judges "are called upon every day to put aside considerations not legally relevant to their decisions." *Hastings v. Judicial Conference* (*Hastings III*), 829 F.2d 91, 105 (D.C. Cir. 1987). As this Court explained, "[a] judge who can decide a case one way, notwithstanding inadmissible evidence of which he is aware indicating a different result, is not likely to prejudge a fellow judge's cause." *Id.* Indeed, if there is any risk of bias, "it is the risk that an empathetic decision-maker poses to the public, not a risk of bias toward the judge against whom a complaint has been lodged." *Id.*

That the Special Committee and Judicial Council denied Plaintiff's motions to request a transfer without prejudice to refiling if circumstances changed underscores the lack of a due-process violation. *See* Judicial Council

62

Order (May 3, 2023), Dkt. 15-1, at 61; *accord* Special Committee Order (May 3, 2023), Dkt. 15-1, at 59; Special Committee Order (May 16, 2023), Dkt. 15-1, at 102.  Defendants kept open the possibility that if the investigation necessitates testimony from other judges, then transfer at that point may be appropriate.  *See* JC&D Committee Decision, Dkt. 40-1, at 20-21 (observing that "the Judicial Council's order acknowledges that the transfer request can be renewed" and that the transfer calculus could change "at a later stage of the proceedings" when Plaintiff would have the right to call witnesses).  But the investigation never reached that juncture because Plaintiff refused to cooperate with it.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON

 */s/ Maxwell A. Baldi*
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-0211*
  *maxwell.baldi@usdoj.gov*

January 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,915 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century BT 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
Maxwell A. Baldi

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2025, I electronically filed the public, redacted version of the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service of the public, redacted version of the foregoing brief will be accomplished by the appellate CM/ECF system.

I further certify that on January 16, 2025, I caused to be filed the under-seal version of the foregoing brief with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by electronic drop box and courier delivery. Service of the under-seal version of the foregoing brief will be accomplished by mail upon:

> Gregory Dolin
> John J. Vecchione
> Andrew Morris
> Mark Chenoweth
> NEW CIVIL LIBERTIES ALLIANCE
> 4250 N. Fairfax Drive, Suite 300
> Arlington, VA 22203.

 */s/ Maxwell A. Baldi*
Maxwell A. Baldi

**ADDENDUM**

# TABLE OF CONTENTS

## Statutes

28 U.S.C. § 331 ....................................................................................A1

28 U.S.C. § 332 ....................................................................................A4

28 U.S.C. § 351 ....................................................................................A5

28 U.S.C. § 352 ....................................................................................A6

28 U.S.C. § 353 ....................................................................................A8

28 U.S.C. § 354 ....................................................................................A9

28 U.S.C. § 355 ..................................................................................A11

28 U.S.C. § 356 ..................................................................................A12

28 U.S.C. § 357 ..................................................................................A13

28 U.S.C. § 358 ..................................................................................A14

28 U.S.C. § 359 ..................................................................................A15

28 U.S.C. § 360 ..................................................................................A16

28 U.S.C. § 363 ..................................................................................A17

28 U.S.C. § 364 ..................................................................................A18

## Rules for Judicial-Conduct and Judicial-Disability Proceedings

Rule 1...................................................................................................A19

Rule 4...................................................................................................A20

Rule 13.................................................................................................A21

Rule 15.................................................................................................A22

Rule 26.................................................................................................A23

28 U.S.C. § 331

### § 331. Judicial Conference of the United States

The Chief Justice of the United States shall summon annually the chief judge of each judicial circuit, the chief judge of the Court of International Trade, and a district judge from each judicial circuit to a conference at such time and place in the United States as he may designate.  He shall preside at such conference which shall be known as the Judicial Conference of the United States. Special sessions of the Conference may be called by the Chief Justice at such times and places as he may designate.

The district judge to be summoned from each judicial circuit shall be chosen by the circuit and district judges of the circuit and shall serve as a member of the Judicial Conference of the United States for a term of not less than 3 successive years nor more than 5 successive years, as established by majority vote of all circuit and district judges of the circuit.  A district judge serving as a member of the Judicial Conference may be either a judge in regular active service or a judge retired from regular active service under section 371(b) of this title.

If the chief judge of any circuit, the chief judge of the Court of International Trade, or the district judge chosen by the judges of the circuit is unable to attend, the Chief Justice may summon any other circuit or district judge from such circuit or any other judge of the Court of International Trade, as the case may be.  Every judge summoned shall attend and, unless excused by the Chief Justice, shall remain throughout the sessions of the conference and advise as to the needs of his circuit or court and as to any matters in respect of which the administration of justice in the courts of the United States may be improved.

The Conference shall make a comprehensive survey of the condition of business in the courts of the United States and prepare plans for assignment of judges to or from circuits or districts where necessary.  It shall also submit suggestions and recommendations to the various courts to promote uniformity of management procedures and the expeditious conduct of court business.  The Conference is authorized to exercise the authority provided in chapter 16 of this title as the Conference, or through a standing committee. If the Conference elects to establish a standing committee, it shall be appointed by the Chief Justice and all petitions for review shall be reviewed by that committee.  The Conference or the standing committee may hold

hearings, take sworn testimony, issue subpoenas and subpoenas duces tecum, and make necessary and appropriate orders in the exercise of its authority.  Subpoenas and subpoenas duces tecum shall be issued by the clerk of the Supreme Court or by the clerk of any court of appeals, at the direction of the Chief Justice or his designee and under the seal of the court, and shall be served in the manner provided in rule 45(c) of the Federal Rules of Civil Procedure for subpoenas and subpoenas duces tecum issued on behalf of the United States or an officer or any agency thereof.  The Conference may also prescribe and modify rules for the exercise of the authority provided in chapter 16 of this title.  All judicial officers and employees of the United States shall promptly carry into effect all orders of the Judicial Conference or the standing committee established pursuant to this section.

The Conference shall also carry on a continuous study of the operation and effect of the general rules of practice and procedure now or hereafter in use as prescribed by the Supreme Court for the other courts of the United States pursuant to law.  Such changes in and additions to those rules as the Conference may deem desirable to promote simplicity in procedure, fairness in administration, the just determination of litigation, and the elimination of unjustifiable expense and delay shall be recommended by the Conference from time to time to the Supreme Court for its consideration and adoption, modification or rejection, in accordance with law.

The Judicial Conference shall review rules prescribed under section 2071 of this title by the courts, other than the Supreme Court and the district courts, for consistency with Federal law.  The Judicial Conference may modify or abrogate any such rule so reviewed found inconsistent in the course of such a review.

The Attorney General shall, upon request of the Chief Justice, report to such Conference on matters relating to the business of the several courts of the United States, with particular reference to cases to which the United States is a party.

The Chief Justice shall submit to Congress an annual report of the proceedings of the Judicial Conference and its recommendations for legislation.

The Judicial Conference shall consult with the Director of[*] United States Marshals Service on a continuing basis regarding the security requirements for the judicial branch of the United States Government, to ensure that the views of the Judicial Conference regarding the security requirements for the judicial branch of the Federal Government are taken into account when determining staffing levels, setting priorities for programs regarding judicial security, and allocating judicial security resources. In this paragraph, the term "judicial security" includes the security of buildings housing the judiciary, the personal security of judicial officers, the assessment of threats made to judicial officers, and the protection of all other judicial personnel. The United States Marshals Service retains final authority regarding security requirements for the judicial branch of the Federal Government.

---

[*] So in original.  The word "the" probably should appear.

**28 U.S.C. § 332**

**§ 332. Judicial councils of circuits.**

\*\*\*

**(d)**

**(1)**  Each judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit. Any general order relating to practice and procedure shall be made or amended only after giving appropriate public notice and an opportunity for comment. Any such order so relating shall take effect upon the date specified by such judicial council. Copies of such orders so relating shall be furnished to the Judicial Conference and the Administrative Office of the United States Courts and be made available to the public. Each council is authorized to hold hearings, to take sworn testimony, and to issue subpoenas and subpoenas duces tecum. Subpoenas and subpoenas duces tecum shall be issued by the clerk of the court of appeals, at the direction of the chief judge of the circuit or his designee and under the seal of the court, and shall be served in the manner provided in rule 45(c) of the Federal Rules of Civil Procedure for subpoenas and subpoenas duces tecum issued on behalf of the United States or an officer or agency thereof.

**(2)**  All judicial officers and employees of the circuit shall promptly carry into effect all orders of the judicial council. In the case of failure to comply with an order made under this subsection or a subpoena issued under chapter 16 of this title, a judicial council or a special committee appointed under section 353 of this title may institute a contempt proceeding in any district court in which the judicial officer or employee of the circuit who fails to comply with the order made under this subsection shall be ordered to show cause before the court why he or she should not be held in contempt of court.

**28 U.S.C. § 351**

**§ 351. Complaints; judge defined.**

**(a)  Filing of Complaint by Any Person.**—Any person alleging that a judge has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts, or alleging that such judge is unable to discharge all the duties of office by reason of mental or physical disability, may file with the clerk of the court of appeals for the circuit a written complaint containing a brief statement of the facts constituting such conduct.

**(b)  Identifying Complaint by Chief Judge.**—In the interests of the effective and expeditious administration of the business of the courts and on the basis of information available to the chief judge of the circuit, the chief judge may, by written order stating reasons therefor, identify a complaint for purposes of this chapter and thereby dispense with filing of a written complaint.

**(c)  Transmittal of Complaint.**—Upon receipt of a complaint filed under subsection (a), the clerk shall promptly transmit the complaint to the chief judge of the circuit, or, if the conduct complained of is that of the chief judge, to that circuit judge in regular active service next senior in date of commission (hereafter, for purposes of this chapter only, included in the term "chief judge").  The clerk shall simultaneously transmit a copy of the complaint to the judge whose conduct is the subject of the complaint.  The clerk shall also transmit a copy of any complaint identified under subsection (b) to the judge whose conduct is the subject of the complaint.

**(d)  Definitions.**—In this chapter—

> **(1)**  the term "judge" means a circuit judge, district judge, bankruptcy judge, or magistrate judge; and

> **(2)**  the term "complainant" means the person filing a complaint under subsection (a) of this section.

**28 U.S.C. § 352**

**§ 352. Review of complaint by chief judge.**

**(a) Expeditious Review; Limited Inquiry.**—The chief judge shall expeditiously review any complaint received under section 351(a) or identified under section 351(b). In determining what action to take, the chief judge may conduct a limited inquiry for the purpose of determining—

    **(1)** whether appropriate corrective action has been or can be taken without the necessity for a formal investigation; and

    **(2)** whether the facts stated in the complaint are either plainly untrue or are incapable of being established through investigation.

For this purpose, the chief judge may request the judge whose conduct is complained of to file a written response to the complaint. Such response shall not be made available to the complainant unless authorized by the judge filing the response. The chief judge or his or her designee may also communicate orally or in writing with the complainant, the judge whose conduct is complained of, and any other person who may have knowledge of the matter, and may review any transcripts or other relevant documents. The chief judge shall not undertake to make findings of fact about any matter that is reasonably in dispute.

**(b) Action by Chief Judge Following Review.**—After expeditiously reviewing a complaint under subsection (a), the chief judge, by written order stating his or her reasons, may—

    **(1)** dismiss the complaint—

        **(A)** if the chief judge finds the complaint to be—

            **(i)** not in conformity with section 351(a);

            **(ii)** directly related to the merits of a decision or procedural ruling; or

            **(iii)** frivolous, lacking sufficient evidence to raise an inference that misconduct has occurred, or containing allegations which are incapable of being established through investigation; or

        **(B)** when a limited inquiry conducted under subsection (a) demonstrates that the allegations in the complaint lack any factual foundation or are conclusively refuted by objective evidence; or

A6

**(2)** conclude the proceeding if the chief judge finds that appropriate corrective action has been taken or that action on the complaint is no longer necessary because of intervening events.

The chief judge shall transmit copies of the written order to the complainant and to the judge whose conduct is the subject of the complaint.

**(c)  Review of Orders of Chief Judge.**—A complainant or judge aggrieved by a final order of the chief judge under this section may petition the judicial council of the circuit for review thereof. The denial of a petition for review of the chief judge's order shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise.

\*\*\*

A7

**28 U.S.C. § 353**

**§ 353. Special committee.**

**(a) Appointment.**—If the chief judge does not enter an order under section 352(b), the chief judge shall promptly—

    **(1)** appoint himself or herself and equal numbers of circuit and district judges of the circuit to a special committee to investigate the facts and allegations contained in the complaint;

    **(2)** certify the complaint and any other documents pertaining thereto to each member of such committee; and

    **(3)** provide written notice to the complainant and the judge whose conduct is the subject of the complaint of the action taken under this subsection.

\*\*\*

**(c) Investigation by Special Committee.**—Each committee appointed under subsection (a) shall conduct an investigation as extensive as it considers necessary, and shall expeditiously file a comprehensive written report thereon with the judicial council of the circuit. Such report shall present both the findings of the investigation and the committee's recommendations for necessary and appropriate action by the judicial council of the circuit.

A8

**28 U.S.C. § 354**

**§ 354. Action by judicial council.**

**(a)  Actions Upon Receipt of Report.—**

**(1)  Actions.—**The judicial council of a circuit, upon receipt of a report filed under section 353(c)—

**(A)**  may conduct any additional investigation which it considers to be necessary;

**(B)**  may dismiss the complaint; and

**(C)**  if the complaint is not dismissed, shall take such action as is appropriate to assure the effective and expeditious administration of the business of the courts within the circuit.

**(2)  Description of possible actions if complaint not dismissed.—**

**(A)  In general.—**Action by the judicial council under paragraph (1)(C) may include—

**(i)**  ordering that, on a temporary basis for a time certain, no further cases be assigned to the judge whose conduct is the subject of a complaint;

**(ii)**  censuring or reprimanding such judge by means of private communication; and

**(iii)**  censuring or reprimanding such judge by means of public announcement.

**(B)  For article iii judges.—**If the conduct of a judge appointed to hold office during good behavior is the subject of the complaint, action by the judicial council under paragraph (1)(C) may include—

**(i)**  certifying disability of the judge pursuant to the procedures and standards provided under section 372(b); and

**(ii)**  requesting that the judge voluntarily retire, with the provision that the length of service requirements under section 371 of this title shall not apply.

\*\*\*

(3)  **Limitations on judicial council regarding removals.—**

    **(A)  Article iii judges.—**Under no circumstances may the judicial council order removal from office of any judge appointed to hold office during good behavior.

    \*\*\*

(4)  **Notice of action to judge.—**The judicial council shall immediately provide written notice to the complainant and to the judge whose conduct is the subject of the complaint of the action taken under this subsection.

**(b) Referral to Judicial Conference.—**

(1) **In general.—**In addition to the authority granted under subsection (a), the judicial council may, in its discretion, refer any complaint under section 351, together with the record of any associated proceedings and its recommendations for appropriate action, to the Judicial Conference of the United States.

(2) **Special circumstances.—**In any case in which the judicial council determines, on the basis of a complaint and an investigation under this chapter, or on the basis of information otherwise available to the judicial council, that a judge appointed to hold office during good behavior may have engaged in conduct—

    **(A)** which might constitute one or more grounds for impeachment under article II of the Constitution, or

    **(B)** which, in the interest of justice, is not amenable to resolution by the judicial council,

the judicial council shall promptly certify such determination, together with any complaint and a record of any associated proceedings, to the Judicial Conference of the United States.

\*\*\*

**28 U.S.C. § 355**

**§ 355. Action by Judicial Conference.**

**(a)  In General.**—Upon referral or certification of any matter under section 354(b), the Judicial Conference, after consideration of the prior proceedings and such additional investigation as it considers appropriate, shall by majority vote take such action, as described in section 354(a)(1)(C) and (2), as it considers appropriate.

**(b)  If Impeachment Warranted.**—

**(1)  In general.**—If the Judicial Conference concurs in the determination of the judicial council, or makes its own determination, that consideration of impeachment may be warranted, it shall so certify and transmit the determination and the record of proceedings to the House of Representatives for whatever action the House of Representatives considers to be necessary.  Upon receipt of the determination and record of proceedings in the House of Representatives, the Clerk of the House of Representatives shall make available to the public the determination and any reasons for the determination.

**(2)  In case of felony conviction.**—If a judge has been convicted of a felony under State or Federal law and has exhausted all means of obtaining direct review of the conviction, or the time for seeking further direct review of the conviction has passed and no such review has been sought, the Judicial Conference may, by majority vote and without referral or certification under section 354(b), transmit to the House of Representatives a determination that consideration of impeachment may be warranted, together with appropriate court records, for whatever action the House of Representatives considers to be necessary.

**28 U.S.C. § 356**

**§ 356. Subpoena power.**

**(a) Judicial Councils and Special Committees.**—In conducting any investigation under this chapter, the judicial council, or a special committee appointed under section 353, shall have full subpoena powers as provided in section 332(d).

\*\*\*

**28 U.S.C. § 357**

**§ 357.  Review of orders and actions.**

**(a)  Review of Action of Judicial Council.**— A complainant or judge aggrieved by an action of the judicial council under section 354 may petition the Judicial Conference of the United States for review thereof.

**(b)  Action of Judicial Conference.**—The Judicial Conference, or the standing committee established under section 331, may grant a petition filed by a complainant or judge under subsection (a).

**(c)  No Judicial Review.**—Except as expressly provided in this section and section 352(c), all orders and determinations, including denials of petitions for review, shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise.

**28 U.S.C. § 358**

**§ 358.  Rules.**

**(a)  In General.**—Each judicial council and the Judicial Conference may prescribe such rules for the conduct of proceedings under this chapter, including the processing of petitions for review, as each considers to be appropriate.

**(b)  Required Provisions.**—Rules prescribed under subsection (a) shall contain provisions requiring that—

  **(1)**  adequate prior notice of any investigation be given in writing to the judge whose conduct is the subject of a complaint under this chapter;

  **(2)**  the judge whose conduct is the subject of a complaint under this chapter be afforded an opportunity to appear (in person or by counsel) at proceedings conducted by the investigating panel, to present oral and documentary evidence, to compel the attendance of witnesses or the production of documents, to cross-examine witnesses, and to present argument orally or in writing; and

  **(3)**  the complainant be afforded an opportunity to appear at proceedings conducted by the investigating panel, if the panel concludes that the complainant could offer substantial information.

**(c)  Procedures.**—Any rule prescribed under this section shall be made or amended only after giving appropriate public notice and an opportunity for comment. Any such rule shall be a matter of public record, and any such rule promulgated by a judicial council may be modified by the Judicial Conference. No rule promulgated under this section may limit the period of time within which a person may file a complaint under this chapter.

A14

**28 U.S.C. § 359**

**§ 359. Restrictions.**

**(a)  Restriction on Individuals Who Are Subject of Investigation.**—No judge whose conduct is the subject of an investigation under this chapter shall serve upon a special committee appointed under section 353, upon a judicial council, upon the Judicial Conference, or upon the standing committee established under section 331, until all proceedings under this chapter relating to such investigation have been finally terminated.

**(b) Amicus Curiae.**—No person shall be granted the right to intervene or to appear as amicus curiae in any proceeding before a judicial council or the Judicial Conference under this chapter.

**28 U.S.C. § 360**

**§ 360.  Disclosure of Information.**

**(a)**  Confidentiality of Proceedings.—Except as provided in section 355, all papers, documents, and records of proceedings related to investigations conducted under this chapter shall be confidential and shall not be disclosed by any person in any proceeding except to the extent that—

  **(1)**  the judicial council of the circuit in its discretion releases a copy of a report of a special committee under section 353(c) to the complainant whose complaint initiated the investigation by that special committee and to the judge whose conduct is the subject of the complaint;

  **(2)**  the judicial council of the circuit, the Judicial Conference of the United States, or the Senate or the House of Representatives by resolution, releases any such material which is believed necessary to an impeachment investigation or trial of a judge under article I of the Constitution; or

  **(3)**  such disclosure is authorized in writing by the judge who is the subject of the complaint and by the chief judge of the circuit, the Chief Justice, or the chairman of the standing committee established under section 331.

**(b)  Public Availability of Written Orders.**—Each written order to implement any action under section 354(a)(1)(C), which is issued by a judicial council, the Judicial Conference, or the standing committee established under section 331, shall be made available to the public through the appropriate clerk's office of the court of appeals for the circuit. Unless contrary to the interests of justice, each such order shall be accompanied by written reasons therefor.

A16

**28 U.S.C. § 363**

**§ 363.  Court of Federal Claims, Court of International Trade, Court of Appeals for the Federal Circuit.**

The United States Court of Federal Claims, the Court of International Trade, and the Court of Appeals for the Federal Circuit shall each prescribe rules, consistent with the provisions of this chapter, establishing procedures for the filing of complaints with respect to the conduct of any judge of such court and for the investigation and resolution of such complaints. In investigating and taking action with respect to any such complaint, each such court shall have the powers granted to a judicial council under this chapter.

**28 U.S.C. § 364**

## § 364. Effect of felony conviction

In the case of any judge or judge of a court referred to in section 363 who is convicted of a felony under State or Federal law and has exhausted all means of obtaining direct review of the conviction, or the time for seeking further direct review of the conviction has passed and no such review has been sought, the following shall apply:

**(1)** The judge shall not hear or decide cases unless the judicial council of the circuit (or, in the case of a judge of a court referred to in section 363, that court) determines otherwise.

**(2)** Any service as such judge or judge of a court referred to in section 363, after the conviction is final and all time for filing appeals thereof has expired, shall not be included for purposes of determining years of service under section 371(c), 377, or 178 of this title or creditable service under subchapter III of chapter 83, or chapter 84, of title 5.

**Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 1.**

**Rule 1.  Scope and Covered Judges.**

**(a) Scope.**  These Rules govern proceedings under the Judicial Conduct and Disability Act (Act), 28 U.S.C. §§ 351-364, to determine whether a covered judge has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts or is unable to discharge the duties of office because of mental or physical disability.

**(b) Covered Judge.**  A covered judge is defined under the Act and is limited to judges of United States courts of appeals, judges of United States district courts, judges of United States bankruptcy courts, United States magistrate judges, and judges of the courts specified in 28 U.S.C. § 363.

A19

**Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 4.**

**Rule 4.  Misconduct and Disability Definitions.**

**(a) Misconduct Generally.**  Cognizable Misconduct is conduct prejudicial to the effective and expeditious administration of the business of the courts. Cognizable misconduct includes, but is not limited to, the following:

\*\*\*

> **(5)  Interference or Failure to Comply with the Complaint Process.** Cognizable misconduct includes refusing, without good cause shown, to cooperate in the investigation of a complaint or enforcement of a decision rendered under these Rules; or

\*\*\*

**(b) Conduct Not Constituting Cognizable Misconduct.**

> **(1) Allegations Related to the Merits of a Decision or Procedural Ruling.**  Cognizable misconduct does not include an allegation that calls into question the correctness of a judge's ruling, including a failure to recuse. If the decision or ruling is alleged to be the result of an improper motive, e.g., a bribe, ex parte contact, racial or ethnic bias, or improper conduct in rendering a decision or ruling, such as personally derogatory remarks irrelevant to the issues, the complaint is not cognizable to the extent that it calls into question the merits of the decision.

> **(2) Allegations About Delay.**  Cognizable misconduct does not include an allegation about delay in rendering a decision or ruling, unless the allegation concerns an improper motive in delaying a particular decision or habitual delay in a significant number of unrelated cases.

**(c) Disability.**  Disability is a temporary or permanent impairment, physical or mental, rendering a judge unable to discharge the duties of the particular judicial office.  Examples of disability include substance abuse, the inability to stay awake during court proceedings, or impairment of cognitive abilities that renders the judge unable to function effectively.

**Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 13.**

**Rule 13.  Conduct of Special-Committee Investigation.**

**(a)  Extent and Methods of Special-Committee Investigation.**  A special committee should determine the appropriate extent and methods of its investigation in light of the allegations in the complaint and the committee's preliminary inquiry. In investigating the alleged misconduct or disability, the special committee should take steps to determine the full scope of the potential misconduct or disability, including whether a pattern of misconduct or a broader disability exists. The investigation may include use of appropriate experts or other professionals.  If, in the course of the investigation, the special committee has cause to believe that the subject judge may have engaged in misconduct or has a disability that is beyond the specific pending complaint, the committee must refer the new matter to the chief judge for a determination of whether action under Rule 5 or Rule 11 is necessary before the committee's investigation is expanded to include the new matter.

\*\*\*

**(c) Staff.**  The special committee may arrange for staff assistance to conduct the investigation.  It may use existing staff of the judiciary or may hire special staff through the Director of the Administrative Office of the United States Courts.

**(d) Delegation of Subpoena Power; Contempt.**  The chief judge may delegate the authority to exercise the subpoena powers of the special committee.  The judicial council or special committee may institute a contempt proceeding under 28 U.S.C. § 332(d) against anyone who fails to comply with a subpoena.

**Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 15.**

**Rule 15.  Subject Judge's Rights.**

**(a)  Notice.**

> **(1)  Generally.**  The subject judge must receive written notice of:

>> **(A)** the appointment of a special committee under Rule 11(f);

>> **(B)** the expansion of the scope of an investigation under Rule 13(a);

>> **(C)** any hearing under Rule 14, including its purposes, the names of any witnesses the special committee intends to call, and the text of any statements that have been taken from those witnesses.

> **(2)  Suggestion of additional witnesses.**  The subject judge may suggest additional witnesses to the special committee.

**(b)  Special-Committee Report.**  The subject judge must be sent a copy of the special committee's report when it is filed with the judicial council.

**(c)  Presentation of Evidence.**  At any hearing held under Rule 14, the subject judge has the right to present evidence, to compel the attendance of witnesses, and to compel the production of documents.  At the request of the subject judge, the chief judge or the judge's designee must direct the circuit clerk to issue a subpoena to a witness under 28 U.S.C. § 332(d)(1).  The subject judge must be given the opportunity to cross-examine special-committee witnesses, in person or by counsel.

**(d)  Presentation of Argument.**  The subject judge may submit written argument to the special committee and must be given a reasonable opportunity to present oral argument at an appropriate stage of the investigation.

**(e)  Attendance at Hearings.**  The subject judge has the right to attend any hearing held under Rule 14 and to receive copies of the transcript, of any documents introduced, and of any written arguments submitted by the complainant to the special committee.

**(f)  Representation by Counsel.**  The subject judge may choose to be represented by counsel in the exercise of any right enumerated in this Rule. As provided in Rule 20(e), the United States may bear the costs of the representation.

**Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 26.**

**Rule 26.  Transfer to Another Judicial Council.**

In exceptional circumstances, a chief judge or a judicial council may ask the Chief Justice to transfer a proceeding based on a complaint identified under Rule 5 or filed under Rule 6 to the judicial council of another circuit.  The request for a transfer may be made at any stage of the proceeding before a reference to the Judicial Conference under Rule 20(b)(1)(C) or 20(b)(2) or a petition for review is filed under Rule 22.  Upon receiving such a request, the Chief Justice may refuse the request or select the transferee judicial council, which may then exercise the powers of a judicial council under these Rules.