ORAL ARGUMENT NOT YET SCHEDULED
No. 24-5173

---

In the United States Court of Appeals
for the District of Columbia Circuit

---

Hon. Pauline Newman,

*Plaintiff-Appellant*,

*v.*

Hon. Kimberly A. Moore, in her official capacities as Chief Judge of the United States Court of Appeals for the Federal Circuit, Chair of the Judicial Council of the Federal Circuit, and Chair of the Special Committee of the Judicial Council of the Federal Circuit; Hon. Sharon Prost, in her official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit; Hon. Richard G. Taranto, in his official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit; and Judicial Council of the Federal Circuit and All Members Thereof, in their official capacities,

*Defendants-Appellees*.

---

On Appeal from the United States District Court for the District of Columbia,
No. 23-cv-01334-CRC; Hon. Christopher R. Cooper, Presiding

---

**Appellant's Reply Brief**

---

Gregory Dolin
*Counsel of Record*
John J. Vecchione
Andrew Morris
Mark Chenoweth
New Civil Liberties Alliance
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
Greg.Dolin@ncla.legal
*Counsel for Plaintiff-Appellant*

February 10, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................i

TABLE OF AUTHORITIES........................................................................ii

GLOSSARY..................................................................................................vi

INTRODUCTION ........................................................................................1

SUMMARY OF THE ARGUMENT ..........................................................3

ARGUMENT .................................................................................................6

    I. AN ACT OF CONGRESS CANNOT AUTHORIZE ACTUAL OR CONSTRUCTIVE REMOVAL OF AN ARTICLE III JUDGE FROM OFFICE ...........................6

        A.    The Statutory Construction Argument Is Properly Before the Court and Concerns a Facial, Not an "As Applied" Challenge.....................................................................................6

        B.    If the Disability Act Permits Suspension of Article III Judges from All Judicial Duties, It Can Never Be Validly Applied..............................................................................9

        C.    Defendants-Appellees' "Parade of Horribles" Actually Supports Judge Newman's Position....................................14

        D.    Contrary to Defendants-Appellees' Assertions, the Act Threatens Judicial Independence .......................................19

    II. DEFENDANTS-APPELLEES' ASSERTION THAT JUDGE NEWMAN'S SUSPENSION IS "TEMPORARY" IS BELIED BY THE ENTIRE RECORD..21

    III. MCBRYDE DOES NOT DICTATE THE OUTCOME HERE ......................26

    IV. DEFENDANTS-APPELLEES' PARTICIPATION IN THE PROCESS VIOLATES JUDGE NEWMAN'S DUE PROCESS RIGHTS........................................30

CONCLUSION ..........................................................................................34

CERTIFICATE OF COMPLIANCE .......................................................35

CERTIFICATE OF SERVICE..................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Jud. Council of Sixth Cir.*,
  No. 17-1894 (ABJ), 2020 WL 5409142 (D.D.C. Sept. 9, 2020)............23

*Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*,
  515 U.S. 687 (1995) ...............................................................13

*Carpenters Loc. Union No. 26 v. U.S. Fid. & Guar. Co.*,
  215 F.3d 136 (1st Cir. 2000)...................................................27

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr.
  for S. Cal.*,
  508 U.S. 602 (1993) ..........................................................31, 32

*Crowell v. Benson*,
  285 U.S. 22 (1932) .................................................................7

*Cummings v. Missouri*,
  71 U.S. (4 Wall.) 277 (1867) ..................................................11

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) .................................................................29

*Free Enter. Fund v. PCAOB*,
  537 F.3d 667 (D.C. Cir. 2008) ..................................................3

*Free Enter. Fund v. PCAOB*,
  561 U.S. 477 (2010) ...............................................................2

*Hastings v. Jud. Conf. of U.S.*,
  770 F.2d 1093 (D.C. Cir. 1985) ...............................................27

*McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords.
  of Jud. Conf. of U.S.*,
  264 F.3d 52 (D.C. Cir. 2001) ....................... 4, 12, 19, 22, 28

*Meredith Corp. v. FCC*,
  809 F.2d 863 (D.C. Cir. 1987) .................................................29

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022) .................................................................19

*Neitzke v. Williams,*
  490 U.S. 319 (1989) ...................................................................26

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*
  458 U.S. 50 (1982) .....................................................................20

*Reno v. ACLU,*
  521 U.S. 844 (1997) .....................................................................8

*SAS Inst. v. Iancu,*
  584 U.S. 357 (2018) ..........................................................4, 21, 28

*Springsteen-Abbott v. SEC,*
  989 F.3d 4 (D.C. Cir. 2021) .......................................................29

*Trump v. Hawaii,*
  585 U.S. 667 (2018) .....................................................................2

*United States v. Albertini,*
  472 U.S. 675 (1985) .....................................................................7

*United States v. Rahimi,*
  602 U.S. 680 (2024) ...................................................................19

*United States v. Salerno,*
  481 U.S. 739 (1987) .................................................................9, 12

*United States v. United Steelworkers of Am.,*
  271 F.2d 676 (3d Cir. 1959) .......................................................10

*United States v. Windsor,*
  570 U.S. 744 (2013) ...................................................................30

*Ward v. Village of Monroeville,*
  409 U.S. 57 (1972) .................................................................31, 32

*Zivotofsky v. Kerry,*
  576 U.S. 1 (2015) .........................................................................3

*Zivotofsky v. Sec'y of State,*
  725 F.3d 197 (D.C. Cir. 2013) .....................................................3

**Constitutional Provisions**

U.S. Const. art. III, § 1 .........................................................12, 19

iii

**Statutes**

21st Century Department of Justice Appropriations Authorization
Act,
  Pub. L. No. 107-273, Div. C, Title I, Subtitle C, § 11044,
  116 Stat. 1758 (Nov. 2, 2002) ....................................................... 5

28 U.S.C. § 354(a) ............................................................................... 21

28 U.S.C. § 364 .................................................................................... 18

28 U.S.C. § 372(b) .............................................................................. 18

28 U.S.C. § 46(b) ................................................................................ 10

5 U.S.C. § 706 ...................................................................................... 28

Judicial Conduct and Disability Act,
  Pub. L. 96-458, 94 Stat. 2035 (96th Cong. 1980) .................................. 1

**Other Authorities**

Dennis Crouch,
  *Is Google Simply Asking for More Efficient Infringement?*,
  Patently-O (Jan. 29, 2025) ............................................................ 12

Francis X. Shen,
  *Aging Judges*, 81 Ohio St. L.J. 235 (2020) ........................................ 19

H.R. Rep. No. 96-1313 (1980) .............................................................. 24

*In re Complaint No. 05-24-90002*
  (5th Cir. Judicial Council, Nov. 15, 2023) ........................................ 18

*In re Complaint of Judicial Misconduct Against United States
District Judge G. Thomas Porteous, Jr.*,
  No. 07-05-351-0085 (5th Cir. Judicial Council, Dec. 20, 2007) .......... 17

*In re Complaint of Judicial Misconduct*,
  No. 06-13-90009 (6th Cir. Judicial Council, Feb. 22, 2016) ................ 38

*In re Complaint of Judicial Misconduct*,
  No. 06-13-90009 (6th Cir. Judicial Council, June 27, 2018) ............... 27

*In re Judicial Conduct and Disability Complaint Number 22-90121*
  (9th Cir. Judicial Council, July 8, 2024) ...................................... 18, 39

Irving R. Kaufman,
  *Chilling Judicial Independence*, 88 Yale L.J. 681 (1979) .................... 23

Judicial Conduct & Disability Act Study Comm., Implementation of
  the Judicial Conduct and Disability Act of 1980: A Report to the
  Chief Justice,
  239 F.R.D. 116 (2006) ............................................................. 38

*Life Tenure for Federal Judges Raises Issues of Senility, Dementia*,
  ProPublica (Jan. 18, 2011) .................................................... 20

Nat'l Comm'n on Judicial Discipline and Removal,
  Report, 152 F.R.D. 265 (1993) .............................................. 12

Sherman Edwards,
  *1776* (1969) ......................................................................... 13

William Baude,
  *The Judgment Power*, 96 Geo. L.J. 1807 (2008) .................... 11

# GLOSSARY

| | |
|---|---|
| The Act or Disability Act: | Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364, Pub. L. 96-458, 94 Stat. 2036 (96th Cong. 1980) |
| J.A.___: | Joint Appendix (page number[s]) |
| JC&D: | Judicial Conduct and Disability Committee of the Judicial Conference |
| Op.Br.___: | Appellant's Opening Brief (page number[s]) |
| R.___: | Rules for Judicial-Conduct and Judicial-Disability Proceedings (rule number[s]) |
| Resp.Br.___: | Defendants-Appellees' Response Brief (page number[s]) |
| S.A.___: | Supplemental Appendix (page number[s]) |

## INTRODUCTION

The Judicial Council's Response Brief is notable not for what it includes but for what it omits. Defendants-Appellees fail to dispute that as a result of her unlawful suspension Judge Newman does not exercise *any* functions of her office. Nor do Defendants-Appellees address, much less rebut, Judge Newman's argument that this Court has authority to ensure that the Judicial Council, as an administrative body, does not act beyond its statutory remit. Defendants-Appellees do not appear to dispute that the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364, Pub. L. 96-458, 94 Stat. 2035 (96th Cong. 1980) ("Disability Act" or "the Act"), to the extent that it is constitutional at all, permits suspensions from duties only "on a temporary basis for a time certain," and they make clear that Judge Newman's suspension is unlikely to be ever be lifted. The suggestion that the suspension may not be renewed is contradicted not only by Defendants-Appellees' own prior orders, but their own brief. *See* Resp.Br.56 (noting that suspensions will continue so long as they are necessary to "induce compliance."). Defendants-Appellees also fail to engage with Judge Newman's argument as to the nature of "judicial office."

1

Defendants-Appellees' affirmative arguments are ill-taken, and the authorities they cite confirm that a complete involuntary suspension from judicial duties has never been attempted *irrespective* of the seriousness of misconduct by a federal judge.

Finally, Defendants-Appellees remain unable to point to a single instance of a case where a misconduct investigation of a circuit judge was conducted within that judge's own circuit.

Defendants-Appellees fail to address or rebut Judge Newman's argument and are reduced to defending an untenable proposition—that a duly nominated, confirmed, and appointed United States Circuit Judge can, absent impeachment, be debarred from exercising any powers or duties of her office.  This Court should reject outright Defendants-Appellees' claim of such powers—a claim never before made.

The lack of historical examples is highly probative, if not dispositive of the statute's reach, as well as constitutional limits.  *See Trump v. Hawaii*, 585 U.S. 667, 696 (2018) (relying on "historical practice" for statutory interpretation); *see also Free Enter. Fund v. PCAOB*, 561 U.S. 477, 505 (2010) ("[T]he most telling indication of the severe constitutional problem with the [statute] is the lack of historical precedent [or] any

2

historical analogues" for the legal claims.) (quoting *Free Enter. Fund v. PCAOB*, 537 F.3d 667, 699 (D.C. Cir. 2008) (Kavanaugh, J., dissenting)); *Zivotofsky v. Kerry*, 576 U.S. 1, 24 (2015) ("'[T]he most striking thing' about the history … 'is what is absent from it: a situation like this one.'") (quoting *Zivotofsky v. Sec'y of State*, 725 F.3d 197, 221 (D.C. Cir. 2013) (Tatel, J., concurring)).

## SUMMARY OF THE ARGUMENT

*First,* with respect to Judge Newman's facial challenge, this Court bears an independent duty to construe statutes to avoid constitutional problems, if possible. So, it can conclude that the Disability Act does *not* permit functional removal of a judge from office and is constitutional— but the Judicial Council's actions, by going beyond what the Act authorizes, violated it. Or, it can conclude that the Disability Act does permit the functional removal of a judge from office, in which case it is unconstitutional with respect to all such removals.

Nor can an indefinite suspension become constitutional because it is imposed by federal judges acting as members of a judicial council. The Constitution's guarantee of life tenure protects the independence of individual judges from their colleagues as much as from other branches.

3

History confirms the point: No judicial council has ever imposed a similar sanction on any prior judge.

The Act is not saved from a facial attack simply because it authorizes *other* permissible sanctions short of functional removal. The possibility of lesser sanctions does not render the statute constitutional as to any and all functional removals.

*Second*, the Response Brief's argument that Article III courts cannot consider as-applied challenges also fails. It rests almost entirely on *McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 264 F.3d 52, 64-67 (D.C. Cir. 2001). *McBryde* does not control this case. That Court explicitly reserved the issue now presented here: whether a long-term disqualification can constitute an unconstitutional removal from office. The scope of that Court's reservation corresponds with the principle—which the Response Brief does not dispute—that this Court has jurisdiction to consider whether an agency has exceeded its statutory authority. *See SAS Inst. v. Iancu*, 584 U.S. 357, 370-71 (2018); 5 U.S.C. § 706. Congress confirmed judges' right to bring as-applied changes to the Disability Act in 2002 legislation. *See* 21st Century Department of Justice Appropriations Authorization Act,

4

Pub. L. No. 107-273, Div. C, Title I, Subtitle C, § 11044, 116 Stat. 1758, 1856 (Nov. 2, 2002) (codified as Note to 28 U.S.C. § 351). Those challenges belong only in Article III courts, not in the Judicial Council— a mere agency.

*Third*, the Response Brief fails to show that Judge Newman received Constitutionally required due process. The Response Brief does not dispute that members of the Judicial Council are investigators and witnesses, and so it does not consist of the neutral judges that due process requires. Nor does it cite to any other case in which a circuit refused to transfer an investigation of one of its circuit judges. The Response Brief elides this history, focusing instead on the number of briefs filed and arguments held in the Judicial Council proceedings. But those figures mean nothing when the decision-makers who conducted the proceedings were not neutral.

# ARGUMENT

## I. AN ACT OF CONGRESS CANNOT AUTHORIZE ACTUAL OR CONSTRUCTIVE REMOVAL OF AN ARTICLE III JUDGE FROM OFFICE

### A. The Statutory Construction Argument Is Properly Before the Court and Concerns a Facial, Not an "As Applied" Challenge

Defendants-Appellees are in error in their assertion that Judge Newman waived her argument that the Disability Act, in order to preserve its constitutionality, must be narrowly construed. *See* Resp.Br.35-36.

First Judge Newman's submission to the District Court raised the issue of the Disability Act's scope. *See* ECF 30 at 29 (arguing that "*to the extent that the Disability Act authorizes* not mere diminution in a judge's workload, but *a complete debarment from judicial functions*, it necessarily prevents a judge from exercising judicial power and therefore effects a functional "removal" from office ….") (emphasis added). As is evident from that sentence, Judge Newman recognized and argued that if the Act were construed to authorize mere "diminution in a judge's workload," it might pass constitutional muster, but if it authorized complete deprivation of responsibilities of the office it is not

6

constitutional.  As Newman did in her opening brief in this Court, *see* Op.Br.41-43, she presented the District Court with two options—either construe the Disability Act narrowly *or*, if such a construction is inconsistent with Congressional intent, hold the statute unconstitutional.  *See United States v. Albertini*, 472 U.S. 675, 680 (1985) ("Statutes should be construed to avoid constitutional questions, but this interpretative canon is not a license for the judiciary to rewrite language enacted by the legislature.").

Second, even if Judge Newman had not made this argument below, it is the *duty* of the courts, in deciding whether a statute conflicts with the Constitution, to construe the statute and give meaning to the statutory language.  *See Crowell v. Benson*, 285 U.S. 22, 62 (1932) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").  Every facial constitutional challenge necessarily includes within it a statutory construction argument.

Defendants-Appellees' claim that Judge Newman forfeited this argument is meritless.

Equally meritless is Defendants-Appellees' contention that by raising this argument Judge Newman is essentially challenging the application of the statute to herself, rather than the facial validity of the statute. Resp.Br.35. In support of this claim, Defendants-Appellees cite the fact that Judge Newman "points to the length, scope, and effects of her own suspension as the basis of that narrowing construction." *Id.* Defendants-Appellees misstate Judge Newman's argument. It is not that the Disability Act generally permits judicial councils to bar Article III judges from any powers of their office but that it does not allow removal of all judicial functions indefinitely. The Disability Act has *never* permitted such suspensions—which is why her case is unprecedented.

Alternatively, she also argues that to the extent that the Act does tolerate the kind of suspensions imposed on Judge Newman, it is unconstitutional. This is not a challenge to specific orders issued by Defendants-Appellees, but a dispute over a) the meaning of the statute, and b) concordance between the statutory text, as construed, and the Constitution. *See Reno v. ACLU*, 521 U.S. 844, 884 (1997) ("In

8

considering *a facial challenge*, this Court may impose a limiting construction on a statute….") (emphasis added).

## B. If the Disability Act Permits Suspension of Article III Judges from All Judicial Duties, It Can Never Be Validly Applied

Much of Defendants-Appellees' argument rests on the claim that there are some instances where suspension of judges from their judicial duties is constitutionally permissible and therefore Judge Newman's facial challenge fails under *United States v. Salerno*, 481 U.S. 739, 745 (1987). Defendants-Appellees contend that Judge Newman has conceded the point by "acknowledg[ing] that a Judicial Council may cut off further case assignments as long as the judge still has cases pending before her." Resp.Br.34 (citing Op.Br.41-43).

As Judge Newman explained in her opening brief, whether the Act is facially constitutional depends on its breadth. If the Act permits judicial councils to merely *limit* the number or the type of cases a particular judge is working on, then no constitutional problem arises because Article III does not guarantee that all members of a particular court share equally in caseload both in terms of the number or the variety

9

of cases.[1]  Article III *does* require that duly-appointed judges exercise "judicial power," which is "the power to make authoritative and final judgments in individual cases."  William Baude, *The Judgment Power*, 96 Geo. L.J. 1807, 1815 (2008).

Defendants-Appellees' argument that a judge "subject to a temporary suspension who still holds her commission and is still entitled to draw her salary has not been dismissed from her office," Resp.Br.37, must fail.  First, entitlement to salary is a guarantee that is separate and apart from the guarantee that office will be held "during good Behaviour." Nat'l Comm'n on Judicial Discipline and Removal, Report, 152 F.R.D. 265, 287 (1993).  *See also United States v. United Steelworkers of Am.*, 271 F.2d 676, 680 n.1 (3d Cir. 1959), *aff'd*, 361 U.S. 39 (1959) (distinguishing between "hold[ing] office" and receiving compensation). Second, there is nothing "temporary" about Judge Newman's suspension. This is recognized even by neutral commentators.  *See* Dennis Crouch, *Is Google Simply Asking for More Efficient Infringement?*, Patently-O (Jan.

---

[1] A provision applicable only to the Federal Circuit does require a "rotation of judges from panel to panel to ensure that all of the judges sit on a representative cross section of the cases heard."  28 U.S.C. § 46(b).

29, 2025), https://tinyurl.com/5bushudm ("I put 'temp' in scare quotes because it appears that [Judge Newman's] suspension is—in fact—permanent."). And third, having a framed commission on the wall while being unable to exercise any powers granted by that very commission, is meaningless. [2]    Judge Newman's commission, like commissions of Defendants-Appellees and of every judge of this Court, "empower[s] her to execute and fulfil the duties of [her] Office … and to Hold the said Office with all the powers … to the same of right appertaining …." Judge Newman's suspension from her judicial office deprived her of the effects of the very commission upon which Defendants-Appellees rely as evidence that she continues to hold office. While it is true that as a literal matter Judge Newman's seat on the Court is not vacant, the Constitution "deals with substance, not shadows." *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325 (1867). A functional removal runs afoul of Article III's protections no less than a formal removal would. *Ergo*, any act of

---

[2] One is reminded of the comment of Ben Franklin in the play *1776*: "Nor would I, were I given the full rights of an Englishman. But to call me one without those rights is like calling an ox a bull. He's thankful for the honor, but he'd much rather have restored what's rightfully his." Sherman Edwards, *1776* (1969).

Congress other than impeachment and removal that divests a judge of "the power to make authoritative and final judgments" violates Article III's guarantee that judges "shall hold their Offices during good Behaviour."  U.S. Const. art. III, § 1.  Such a divestment is a removal from office (whether permanently or temporarily) in all effects.

Conversely, an act of Congress that authorizes some forms of judicial intra-branch discipline (*e.g.*, censure, reprimand, or diminution of caseload) does not raise the same constitutional concerns.  *See, e.g.*, *McBryde*, 264 F.3d at 64-67.

What does the Disability Act actually authorize?  If it authorizes functional removal, then it is unconstitutional with respect to any and all such removals and is unconstitutional in all its applications.  *Salerno*, 481 U.S. at 745.  If the Act does not grant the power of functional removal, then it is constitutional in at least some applications.  Recognizing this obvious dichotomy is not a concession by Judge Newman that the Disability Act, however broadly or narrowly it may be construed, *necessarily* "has legitimate applications."  Resp.Br.34.

Defendants-Appellees' argument that, because *some* statutorily authorized sanctions are constitutional, the statute is not facially invalid

12

misunderstands how facial challenges work.  The fact that a narrow statute passes constitutional muster does not mean that a much broader statute does too, simply because sometimes such a broad statute may, at the discretion of enforcers, be narrowly applied.  *See Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 731-32 (1995) (Scalia, J., dissenting) (warning that one must not "confuse[] lawful application of the challenged regulation with lawful application of a *different* regulation….") (emphasis in original).

Defendants-Appellees are incorrect when they assert that the Disability Act survives a facial challenge because the "order suspending case assignments to [Judge Newman] was valid between its entry on September 20, 2023, and November 8, 2023," while Judge Newman was working on some outstanding opinions.[3]  Resp.Br.34.  Judge Newman made no such concession.  Rather, the argument is that the Disability Act

---

[3] Defendants-Appellees suggestion that Judge Newman's low case volume is her own fault due to, in part, to her reduced sittings is disingenuous.  The sittings assignments on the Federal Circuit are made at the discretion of the Chief Judge.  *See* ECF 25-5 (Affidavit of Jarrett B. Perlow) ¶4.  Any reductions in sittings were the result of Chief Judge Moore's and not Judge Newman's decisions.

13

itself does not authorize suspensions that divest an Article III judge of the "power to hear and determine judicially questions submitted."

## C. Defendants-Appellees' "Parade of Horribles" Actually Supports Judge Newman's Position

Defendants-Appellees next argue that wholesale suspension of Article III judges from judicial service is consistent with constitutional limits because otherwise "a judicial council may never stop a judge from hearing cases, no matter how egregious h[er] misconduct." Resp.Br.41. Defendants-Appellees worry that were this Court to accept Judge Newman's argument, it would deprive judicial councils of the power to bar "a judge found to be taking bribes" or one "found … to engage in the serial sexual abuse of his law clerks" from hearing cases. *Id.* Yet, in the very cases Defendants-Appellees cite, in which judges engaged in such egregious conduct, those judges were *not* suspended from hearing all cases unless and until impeached and removed from office.

Judge G. Thomas Porteous's case (cited by Defendants-Appellees as an example of a bribe-taking judge), was thoroughly discussed in Judge Newman's opening brief. *See* Op.Br.35-36. The key point from that case is that while the Judicial Council of the Fifth Circuit limited Judge

14

Porteous's docket, it allowed him to "continue his civil docket and administrative duties until it is determined that he must devote his time primarily to his defense" against planned impeachment. *In re Complaint of Judicial Misconduct Against United States District Judge G. Thomas Porteous, Jr.*, No. 07-05-351-0085 (5th Cir. Judicial Council, Dec. 20, 2007) at 6.[4]

The most recent case (also cited by Defendants-Appellees) of significant sexual misconduct by a federal judge resulted in a public reprimand, a request for a voluntary resignation, and a certification for possible impeachment proceedings, but notably *no suspension of any kind. See In re Judicial Conduct and Disability Complaint Number 22-90121* (9th Cir. Judicial Council, July 8, 2024) at 27-28, https://tinyurl.com/4yfz6y37.[5]  To put it simply, *every single judicial*

---

[4] When impeachment proceedings against Judge Porteous began in earnest, the Judicial Council of the Fifth Circuit precluded him from hearing all cases—without objection by Judge Porteous—precisely because he "devote[d] his time primarily to his defense."  His case is not precedent for involuntary suspension from all powers of office.

[5] The third example cited is entirely irrelevant because it involved a non-Article III bankruptcy judge who resigned, which resulted in no sanction. *See In re Complaint No. 05-24-90002* (5th Cir. Judicial Council, Nov. 15, 2023), https://tinyurl.com/bdf4hv4b.

*council*, Defendants-Appellees excepted, even when faced with instances of egregious misconduct, did not believe that it possessed the power to deprive any of the misbehaving judges of all functions of their office for any period of time. This consistent application of the Disability Act sheds significant light on its scope, as well as the constitutional limits placed on it, which in turn is fully consistent with the arguments advanced by Judge Newman.

The rest of Defendants-Appellees' "parade of horribles" fare no better. According to the Defendants-Appellees, "to accept [Judge Newman]'s argument would mean that a judicial council could never stop a disabled judge from continuing to hear cases." Resp.Br.42. Rather than being absurd, this simply reflects the Constitution's limits on the power of the Judicial Council. Admittedly, having disabled judges on the bench—of which Judge Newman is not one—is not ideal, but the Constitution, for better or worse, placed the determination of when to step down from the bench in the hands of the judge herself and of Congress as a backstop—not in a judge's colleagues' hands.[6]

---

[6] The article cited by Defendants-Appellees only buttresses Judge

In fact, Defendants-Appellees' arguments encounter insurmountable statutory and constitutional obstacles. First, it proves too much. Under Defendants-Appellees' view, judicial councils must possess the power to suspend mentally decrepit judges from exercising the powers of their office. But if so, and given the fact that age-related mental disability is, by definition, permanent, it would follow that judicial councils could impose *permanent*, rather than temporary orders of suspension. The Disability Act plainly does not authorize such orders, and even if it did, it does not appear that Defendants-Appellees dispute

---

Newman's argument. While the article does "collect[] examples of judges remaining on the bench despite significant mental impairments," Resp.Br.42 (citing Francis X. Shen, *Aging Judges*, 81 Ohio St. L.J. 235, 269-72 (2020)), nowhere does the cited article mention any federal judges being suspended from their judicial duties. The *Aging Judges* article relies heavily on a report by ProPublica. *See Life Tenure for Federal Judges Raises Issues of Senility, Dementia*, ProPublica (Jan. 18, 2011), https://tinyurl.com/2nk5x26p. None of the cases discussed by ProPublica resulted in involuntary suspension of all judicial functions from an Article III judge. In one instance, a judge who "insisted on returning to the bench after a stroke, [but who] had difficulties 'with executive function,'" had "criminal cases [removed] from [his] docket," but otherwise continued to exercise judicial powers. *Id.* Defendants-Appellees cannot cite a *single case* where any judge involuntarily had all of his judicial functions suspended for either misconduct or disability.

that a permanent suspension would run afoul of the Constitution. Congress has recognized as much in the Disability Act. Under the Act, were a judicial council to conclude that a judge is disabled, the *only* remedy available is an appointment of a supernumerary judge and treating the disabled judge "for purpose of precedence [as] junior in commission to the other judges of" her court. 28 U.S.C. § 372(b).

The Constitution provides two remedies for situations where a mentally incompetent judge renders decisions. First, there is an appellate process that can rectify any mistakes made. And second, if Congress is convinced that a judge is no longer capable of discharging her duties, she can be impeached and removed. The Constitution provides no alternative pathway.[7]

_____

[7] Cases of incarcerated or comatose judges, hypothesized by Defendants-Appellees, are inapposite. In such cases, the hypothetical judge is simply unable to be present at the courthouse where cases are heard, so she is not "suspended" for any sort of misbehavior but rather is absenting herself from the work of the court. *See* Op.Br.29-37 (discussing judges voluntarily taking leaves of absence from judicial duties).

Defendants-Appellees also argue that accepting Judge Newman's argument would raise constitutional doubts about § 364(1) which precludes a judge convicted of a felony from "hear[ing] or decid[ing] cases" once she "has exhausted all means of obtaining direct review of the conviction." 28 U.S.C. § 364. The Court need not address a provision

18

### D.    Contrary to Defendants-Appellees' Assertions, the Act Threatens Judicial Independence

Defendants-Appellees advance a rather odd argument in support of the Disability Act's constitutionality—claiming that by vesting the powers of suspension within the Judicial Branch itself, the Act does not threaten judicial independence.  This argument fails.

The text of the Constitution is plain—judges "shall hold their Offices during good Behaviour."  U.S. Const. art. III, § 1.  While it is beyond dispute that the purpose of this provision was to protect judicial independence, *see McBryde*, 264 F.3d at 314, it is the text of the Constitution that controls.  *See United States v. Rahimi*, 602 U.S. 680, 718 n.2 (2024) (Kavanaugh, J., concurring) ("[T]he text of the Constitution always controls."); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 36 (2022).  Even if Defendants-Appellees were right that suspensions from all judicial duties imposed by an intra-branch administrative process do not threaten judicial independence, such suspensions would still violate the Constitution's plain text.

But Defendants-Appellees are not right.  As the Supreme Court

---

that is not part of this case.

19

explained in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, "[t]he guarantee of life tenure insulates the individual judge from improper influences not only by other branches *but by colleagues as well* and thus promotes judicial individualism."  458 U.S. 50, 59 n.10 (1982) (emphasis added).  *See also* Irving R. Kaufman, *Chilling Judicial Independence*, 88 Yale L.J. 681, 713 (1979) ("[I]t is … essential to protect the independence of the individual judge, even from incursions by other judges.  The heart of judicial independence … is judicial individualism.");  H.R. Rep. No. 96-1313, at 14 (1980) (seeking to prevent "one group of federal judges arbitrarily 'ganging up' or 'hazing'" a colleague); *Amici* Judges Brief at 28.

Under Defendants-Appellees' view, judicial independence would not be threatened by, for example, an appellate judge pressuring a trial judge to render a particular decision, as such pressure would come from within the judiciary itself rather than from other branches.  The absurdity of this proposition is self-evident, and it follows that the "good Behaviour" clause protects not just the judiciary as a whole from interbranch interference, but also each judicial officer from interference from whatever corner.

Few threats to judicial independence are more potent than a mechanism that permits divestment of all judicial functions from a judicial officer. Construing the Disability Act to permit such wholesale divestment runs afoul not only of the clear text of the Constitution, but also of the purpose behind the "good Behaviour" clause. To avoid constitutional difficulty, this Court should construe the Disability Act as forbidding the type of suspensions levied against Judge Newman. If unable to do so, it should hold the Act unconstitutional.

## II. DEFENDANTS-APPELLEES' ASSERTION THAT JUDGE NEWMAN'S SUSPENSION IS "TEMPORARY" IS BELIED BY THE ENTIRE RECORD

Defendants-Appellees do not appear to dispute that this Court possesses the power to ensure that actions they take stay within the bounds of the Disability Act, however construed. *See SAS Inst.*, 584 U.S. at 370-71. Defendants-Appellees also do not appear to dispute that the Disability Act does not authorize indefinite suspensions, and instead (to the extent it is constitutional) tolerates only suspensions for "a temporary basis for a time certain," 28 U.S.C. § 354(a)(2)(A)(i).

Instead, Defendants-Appellees argue, *see* Resp.Br.53-56, that because renewals of Judge Newman's suspensions are not "automatic,"

21

each suspension must be considered in isolation, and when so considered, each suspension is, in fact, for "a temporary basis for a time certain."[8] Defendants-Appellees rest their argument on two fundamentally flawed premises. First, they argue that they can impose *seriatim* "limited" suspensions in order "to induce compliance." Resp.Br.56. Second, Defendants-Appellees argue that renewal of Judge Newman's suspensions is not "automatic," but is preceded by opportunities to present argument, show "changed circumstances," or comply with the orders for examination. Resp.Br.53-55. According to Defendants-Appellees, "[t]he keys to ending [Judge Newman's] current suspension are [] in her own pocket." Resp.Br.54. All of these contentions are factually insupportable and legally meaningless.

First, the Disability Act does not empower judicial councils to use sanctions as a coercive tool to "induce compliance." Rather, the statute

---

[8] Defendants-Appellees curiously suggest that this Court need not consider the Sept. 6, 2024 suspension order, because it was not "before the district court." Resp.Br.55, n.10. Yet, they acknowledge that this Court can take judicial notice of Judicial Council orders. Resp.Br.11-12, n.5. This stratagem cannot enable Defendants-Appellees' actions to avoid judicial review, because even on their terms, the challenged actions are "capable of repetition, yet evading review." *McBryde*, 264 F.3d at 55.

permits (and has been used only to impose) sanctions as remedies for past misconduct. Defendants-Appellees themselves have abjured the claim that Judge Newman's suspension is meant to be "coercive." *See* July 24, 2024 Report & Recommendation at 26 n.4, https://tinyurl.com/bdtwnbfa ("Coercion is not even mentioned in the Judicial Council Order, the JC&D Committee Decision, or the Special Committee Report and Recommendation addressing the September 2023 suspension.").

The case of Judge John Adams illustrates that never before has any judicial council viewed suspensions as a mechanism to "induce compliance." Much like Judge Newman, Judge Adams was ordered to undergo a psychiatric examination—a requirement that the JC&D Committee eventually affirmed. When Judge Adams continued to refuse to undergo the testing, the investigating committee recommended a six-month suspension from hearing cases *without any possibility of renewal. See In re Complaint of Judicial Misconduct*, No. 06-13-90009 (6th Cir. Judicial Council, June 27, 2018).[9] Defendants-Appellees' argument that

_____

[9] The Judicial Council of the Sixth Circuit ultimately abandoned even this requirement. *See Adams v. Jud. Council of Sixth Cir.*, No. 17-1894 (ABJ), 2020 WL 5409142, at *5 (D.D.C. Sept. 9, 2020). Defendants-

23

they will continue to evaluate whether further suspensions are needed to induce compliance is contrary to their own prior asserted justifications for the suspensions, as well as the text of the Disability Act and the history of its application.

Because the argument that "[t]he keys to ending [Judge Newman's] current suspension are [] in her own pocket," Resp.Br.54, is simply a variation on the above theme, it fares no better. Importantly, this argument is hard to square with Defendants-Appellees' prior actions. It should not go unnoticed that even before the formal disciplinary process against Judge Newman began, Chief Judge Moore demanded Judge Newman's resignation. *See* Sept. 20, 2023 Order at 64, https://tinyurl.com/mryattft (stating that Chief Judge Moore's "disability concerns were so serious that taking senior status was the minimum needed to avoid an investigation."); March 24, 2023 Order at 2,

---

Appellees claim that the abandonment was the result of "changed circumstances." *See* July 24, 2024 Report & Recommendation at 36, https://tinyurl.com/5n79k5hn. That observation, even if true, is irrelevant to the fact that the Judicial Council of the Sixth Circuit *at no point* viewed itself as having the power to renew suspensions in order to "induce compliance."

https://tinyurl.com/ywp5mf (stating that several judges demanded that Judge Newman take senior status).  Even were Judge Newman to comply with the examination order,[10] it is unlikely anything will change, because Defendants-Appellees have not provided any assurances that the justification for yet another suspension will not morph yet again.[11]  The entire history of this process shows that Defendants-Appellees have already concluded that Judge Newman has no place on the bench and they are willing to remove her irrespective of what medical evidence shows.  Neither the Disability Act, nor the Constitution places this decision in their hands.

Finally, the fact that Defendants-Appellees intend to continue having more hearings and allowing Judge Newman to submit more briefs

---

[10] Judge Newman does not concede that she failed to comply with the Committee's orders for medical testing.  Indeed, she submitted reports by three separate and independent physicians all of whom have concluded that he does not suffer from any cognitive impairment.

[11] In light of conclusions made by three independent physicians conducting separate tests showing her to be mentally fit for the job, Judge Newman has no intention of accepting the conclusions or following the recommendations, whatever they may be, of the Committee's hand-picked doctor(s).  Besides which, Defendants-Appellees' have never committed to abiding by even their own physicians' conclusions.

25

prior to renewing her suspension is irrelevant. Whether or not Judge Newman is ostensibly afforded more *process* does not convert what is *in substance* a perpetually renewable suspension into one that is imposed "on a temporary basis for a time certain." The Act's language simply does not authorize renewable suspensions with or without additional hearings. The Act (to the extent constitutional) requires that suspensions be *limited in time*. This *substantive* statutory requirement cannot be evaded through additional *procedures*.[12]

## III.   *MCBRYDE* DOES NOT DICTATE THE OUTCOME HERE

Defendants-Appellees do not make a serious effort to engage with arguments raised in Judge Newman's opening brief, instead relying almost exclusively on the force of precedent. They do not dispute that *McBryde* is no barrier to this Court's authority to ensure that the statute authorizes the actions taken against Judge Newman.

---

[12] Defendants-Appellees' argument that though Judge Newman has made it clear she will not comply with the Committee's order to be examined by the Committee's hand-picked doctors, the Committee need not "accept such preemptive declarations at face value," Resp.Br.56, is baffling. On a motion to dismiss, Judge Newman's factual assertions must be credited. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Judge Newman does not dispute that a panel of this Court is bound by prior panel decisions. But it is equally true that "a newly constituted panel should eschew prior circuit precedent in deference to intervening authority." *Carpenters Loc. Union No. 26 v. U.S. Fid. & Guar. Co.*, 215 F.3d 136, 141 (1st Cir. 2000). And, in applying a prior decision, the subsequent panel should not read out of that decision the limits contained therein.

Defendants-Appellees ignore the limit that the Court imposed on *McBryde*. According to Defendants-Appellees, *McBryde*'s footnote 5 is not a limit on the reach of that case, but a meaningless throw-away observation. Footnote 5 was much more than that. In a prior case where a (partial) suspension from (some) judicial duties was challenged in this Court, "[w]hen asked whether a judicial council could 'temporarily' suspend a judge for fifteen years, counsel for the [Judicial Conference] unhesitatingly responded, 'yes.'" *Hastings v. Jud. Conf. of U.S.*, 770 F.2d 1093, 1108 (D.C. Cir. 1985) (Edwards, J., concurring). In that case, Judge Edwards sounded an alarm about such a broad construction of the Act. *See id.* at 1108-09. In light of this history, the *McBryde* Court reserved the question "whether a long-term disqualification from cases could, by

27

its practical effect, affect an unconstitutional 'removal.'" 264 F.3d at 67, n.5.[13] The *McBryde* Court limited itself to considering whether *any* intrabranch discipline violates the strictures of Article III. The Court was not considering, and made it clear that it was not considering, the question of whether *every* type of intrabranch discipline, including a long-term suspension, runs afoul of the Constitution. Given that, at the time *McBryde* was argued, all orders of suspensions against Judge McBryde had expired, the Court simply did not need to consider the question. *McBryde* simply cannot be read as endorsing the proposition that § 357(c) is a blanket prohibition on judicial review of all as-applied constitutional claims, no matter the content of judicial councils' orders.

Defendants-Appellees do not dispute that this Court has jurisdiction to consider whether an agency has exceeded its statutory authority. *See SAS*, 584 U.S. at 370-71; 5 U.S.C. § 706. This Court has to consider what suspensions (if any) the Disability Act authorizes, and

---

[13] There is, of course, no principled constitutional reason to differentiate between a single fifteen-year suspension and fifteen one-year suspensions, unless perhaps the one-year suspensions are planned to continue deliberately until a judge advanced in age passes away.

whether it sanctions long-term suspensions (of the type mentioned in footnote 5) or *seriatim* shorter-term ones.  Hence, footnote 5 was not a mere throw-away observation, but a reservation of the question for the future, since the *McBryde* Court did not need to address the issue.

With respect to the 21st Century Department of Justice Appropriations Authorization Act, which expressly contemplates "as applied" challenges to the Disability Act, Defendants-Appellees argue that the JC&D Committee can process such challenges.  According to Defendants-Appellees, this statute does not affect the holding in *McBryde*.  This argument flies in the face of the clear Supreme Court holding that "agencies cannot declare a statute unconstitutional." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 17 (2012). *See also Springsteen-Abbott v. SEC*, 989 F.3d 4, 8 (D.C. Cir. 2021) ("[R]egulatory agencies are not free to declare an act of Congress unconstitutional.") (quoting *Meredith Corp. v. FCC*, 809 F.2d 863, 872 (D.C. Cir. 1987)).  The argument that the JC&D Committee, which is an agency, could consider "as applied" constitutional challenges cannot be seriously entertained.  The only body that can consider "as applied" challenges and which Congress expressly contemplated is an Article III court, because only Article III courts are

29

empowered to declare congressional enactments unconstitutional. *See United States v. Windsor*, 570 U.S. 744, 754 (2013) ("[J]udiciary [i]s the final arbiter of the constitutional claims raised."). This also explains why the JC&D has never undertaken any analysis of any constitutional arguments. Though the JC&D affirmed the Judicial Council's decision even in the face of constitutional arguments, its decision is notably devoid of any constitutional analysis.

Simply put, *McBryde* is no bar to this Court's consideration of a) whether the Disability Act authorizes *seriatim* suspensions of all judicial functions from an Article III judge, b) whether if the Act does authorize such suspensions, it violates the Constitution, and c) whether the proceedings against Judge Newman violate her Due Process rights.

## IV. DEFENDANTS-APPELLEES' PARTICIPATION IN THE PROCESS VIOLATES JUDGE NEWMAN'S DUE PROCESS RIGHTS

Defendants-Appellees argue that Judge Newman received due process because she had multiple opportunities to file briefs and make oral presentations to the Special Committee. Resp.Br.57-63. Limitless briefing before an interested tribunal is not due process. Even Soviet justice permitted attorney arguments. "[D]ue process requires a 'neutral

30

and detached judge in the first instance.'" *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 617 (1993) (quoting *Ward v. Village of Monroeville*, 409 U.S. 57, 61-62 (1972)).  It is undisputed that Defendants-Appellees are not just investigators but also *witnesses* to Judge Newman's alleged (though non-existent) disability.  A witness, by definition, cannot be a "neutral and detached judge."

Defendants-Appellees have attempted to avoid this conclusion by arguing that Judge Newman's suspension is predicated not on the finding of disability, but on her lack of cooperation with ordered psychological examinations.  Resp.Br.61.  But the reason Judge Newman has declined to cooperate is precisely because the evaluation of any medical report would be done by people who are, *by their own admission*, witnesses to the underlying allegations.[14]  Judge Newman has indicated on multiple occasions that she would be willing to undergo medical testing were the matter in the hands of neutral decision-makers in another circuit.  *See* July 5, 2023 Letter Brief at 2, https://tinyurl.com/59a5afru.  The fact that the JC&D reviewed the matter does not solve the due process concerns,

---

[14] After all, at no point did Defendants-Appellees suggest that medical reports would be determinative.  *See supra* n.11.

because "[e]ven appeal and a trial *de novo* will not cure a failure to provide a neutral and detached adjudicator." *Concrete Pipe & Prods. of Cal.*, 508 U.S. at 618 (citing *Ward*, 409 U.S. at 61).

It is noteworthy that in almost two years of litigation, Defendants-Appellees have been unable to find a *single case* where an investigation against a circuit judge was conducted in that judge's home circuit. Every single investigation involving a circuit judge (as well as judges of the Court of International Trade, and often of judges who are members of small judicial councils) has been transferred elsewhere. Even the case of Judge Adams relied on by Defendants-Appellees actually supports Judge Newman's position. While Judge Adams's case was not transferred out of the Sixth Circuit, every single member of the judicial council who was also a judge on his district court recused himself. Even then-Chief Judge Alice Batchelder, who before becoming a Circuit Judge, served on the same district court on which Judge Adams sat and therefore was familiar with "local circumstances and personalities,"[15] recused herself. *See In re*

---

[15] Judicial Conduct & Disability Act Study Comm., *Implementation of the Judicial Conduct and Disability Act of 1980: A Report to the Chief Justice*, 239 F.R.D. 116, 215 (2006).

*Complaint of Judicial Misconduct*, No. 06-13-90009 (6th Cir. Judicial Council, Feb. 22, 2016), at 3, https://tinyurl.com/bdz538ak.

Similarly, neither Circuit Judge Morgan Christen nor Senior District Judge Timothy M. Burgess, though members of the Judicial Council of the Ninth Circuit, participated in the investigation and adjudication of the complaint against Judge Joshua Kindred precisely because all these judges were from Alaska and had chambers in the same courthouse, thus making them not "neutral." *See In re Judicial Conduct and Disability Complaint Number 22-90121* at 1 n.*. The proceedings against Judge Newman provide the *only* example of judges who are "familiar" with "local circumstances and personalities" failing to recuse themselves.[16] The unprecedented nature of these proceedings, overseen by judges who are also witnesses, weighs heavily in favor of their unlawfulness.

---

[16] Defendants-Appellees turn the usual standards for recusal on their head. Familiarity with parties or events is usually *the* reason for recusal. *See* Canon 3(C)(1)(a) ("A judge shall disqualify himself or herself in a proceeding in which … the judge has … personal knowledge of disputed evidentiary facts concerning the proceeding."). Here, such knowledge is being cited as the reason *not* to recuse.

## CONCLUSION

The Court should reverse the judgment below and render judgment for Judge Newman.

Respectfully submitted,

/s/ Gregory Dolin

Gregory Dolin
    *Counsel of Record*
John J. Vecchione
Andrew Morris
Mark Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
Greg.Dolin@ncla.legal
*Counsel for Plaintiff-Appellant*

Dated: February 10, 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 6,495 words. This brief also complies with the typeface and type-style requirements of the Federal Rule of Appellate Procedure because it was prepared using Microsoft Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ Gregory Dolin
Gregory Dolin

35

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

/s/ Gregory Dolin

Gregory Dolin