No. 24-5173

---

# In the United States Court of Appeals
# for the District of Columbia Circuit

---

HON. PAULINE NEWMAN,

*Plaintiff-Appellant*,

*v.*

HON. KIMBERLY A. MOORE, IN HER OFFICIAL CAPACITIES AS CHIEF JUDGE OF THE
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, CHAIR OF THE
JUDICIAL COUNCIL OF THE FEDERAL CIRCUIT, AND CHAIR OF THE SPECIAL
COMMITTEE OF THE JUDICIAL COUNCIL OF THE FEDERAL CIRCUIT; HON. SHARON
PROST, IN HER OFFICIAL CAPACITY AS MEMBER OF THE SPECIAL COMMITTEE OF THE
JUDICIAL COUNCIL OF THE FEDERAL CIRCUIT; HON. RICHARD G. TARANTO, IN HIS
OFFICIAL CAPACITY AS MEMBER OF THE SPECIAL COMMITTEE OF THE JUDICIAL
COUNCIL OF THE FEDERAL CIRCUIT; AND JUDICIAL COUNCIL OF THE FEDERAL
CIRCUIT AND ALL MEMBERS THEREOF, IN THEIR OFFICIAL CAPACITIES,

*Defendants-Appellees*.

---

On Appeal from the United States District Court for the District of Columbia,
No. 23-cv-01334-CRC; Hon. Christopher R. Cooper, Presiding

---

### PETITION FOR REHEARING *EN BANC*

---

John J. Vecchione
   *Counsel of Record*
Mark Chenoweth
Andrew Morris
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
john.vecchione@ncla.legal
   *Counsel for Plaintiff-Appellant*

September 19, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................ii

GLOSSARY ................................................................................... v

INTRODUCTION AND RULE 40(b)(2) STATEMENT ...........................1

BACKGROUND ..............................................................................3

   I.  Statutory Scheme ............................................................3

   II.  Factual Background ..........................................................7

   III. Panel Decision ...............................................................11

ARGUMENT ..................................................................................12

   I.  This Case Raises Important Separation of Powers and Structural Constitutional Questions ...........................................12

     A.  Whether the Disability Act Deprives Federal Courts of Jurisdiction to Hear As-Applied Constitutional Claims and, If so, Whether the Act Is Unconstitutional as Applied to Judge Newman, Are Issues of Exceptional Importance .......................12

     B.  *McBryde* Cannot Be Reconciled with Other Decisions of This Court ................................................................................14

     C.  Judge Newman's Long-Term Suspension Threatens Judicial Independence and the Constitutional Separation of Powers .....16

CONCLUSION ...............................................................................20

CERTIFICATE OF COMPLIANCE .......................................................21

CERTIFICATE OF SERVICE...............................................................22

ADDENDUM .................................................................................1

# TABLE OF AUTHORITIES

## Cases

*Bowsher v. Synar*,
  478 U.S. 714 (1986) ................................................................. 19

*Dart v. United States*,
  848 F.2d 217 (D.C. Cir. 1988) ...................................... 15, 16

*Demore v. Kim*,
  538 U.S. 510 (2003) ................................................................ 13

*Ex parte McCardle*,
  74 U.S. (7 Wall.) 506 (1868) ............................................... 12

*Humphrey's Ex'r v. United States*,
  295 U.S. 602 (1935) ................................................................ 13

*Johnson v. Robison*,
  415 U.S. 361 (1974) ................................................................ 12

*Lepre v. Dep't of Lab.*,
  275 F.3d 59 (D.C. Cir. 2001) ............................................... 15

*Lucia v. SEC*,
  585 U.S. 237 (2018) ................................................................ 16

*McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of
  the Jud. Conf. of the U.S.*,
  264 F.3d 52 (D.C. Cir. 2001) ................................... 1, 12, 14

*Mistretta v. United States*,
  488 U.S. 361 (1989) ......................................................... 18, 19

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982) .................................................................. 19

*Ralpho v. Bell*,
  569 F.2d 607 (D.C. Cir. 1977) ............................................. 15

*Ungar v. Smith*,
  667 F.2d 188 (D.C. Cir. 1981) ............................................. 14

*Webster v. Doe*,
  486 U.S. 592 (1988) ................................................................ 12

## Statutes

22 U.S.C. § 1631o(c)......................................................................15
28 U.S.C. § 331................................................................................5
28 U.S.C. § 332(d)(1)......................................................................18
28 U.S.C. § 351(a)............................................................................3
28 U.S.C. § 351(b)............................................................................4
28 U.S.C. § 352(b)............................................................................4
28 U.S.C. § 353(a)............................................................................4
28 U.S.C. § 354................................................................................4
28 U.S.C. § 354(a)(2)........................................................................4
28 U.S.C. § 354(a)(2)(A)(i)................................................................4
28 U.S.C. § 354(a)(2)(B)(i)................................................................4
28 U.S.C. § 354(a)(2)(B)(ii)..............................................................4
28 U.S.C. § 354(b)(2)(A)..............................................................5, 10
28 U.S.C. § 357(a)............................................................................5
28 U.S.C. § 357(b)............................................................................5
28 U.S.C. § 357(c)......................................................................5, 15

## Other Authorities

Irving R. Kaufman,
  *Chilling Judicial Independence*,
  88 Yale L.J. 681 (1979).................................................................19
The Federalist No. 79 (Alexander Hamilton)........................................17
William Baude,
  *The Judgment Power*,
  96 Geo. L.J. 1807 (2008).............................................................16

## Rules

Conduct R. 13, comm..........................................................................5
Conduct R. 26....................................................................................6
Conduct R. 4(a)(5)..............................................................................5
Fed. R. App. P. 40(b)(2)(A)................................................................2
Fed. R. App. P. 40(b)(2)(D)................................................................2

## Constitutional Provisions

U.S. Const. amend. XXV ........................................................18

U.S. Const. art. I, § 2, cl. 5 ..................................................17

U.S. Const. art. I, § 3, cl. 6 ..................................................17

U.S. Const. art. III, § 1 ........................................................16

# GLOSSARY

The Act or
Disability Act:     Judicial Conduct and Disability Act, 28 U.S.C.
                    §§ 351-364, Pub. L. 96-458, 94 Stat. 2036 (96th
                    Cong. 1980)

JC&D:               Judicial Conduct and Disability Committee
                    of the Judicial Conference

R.___:              Rules for Judicial-Conduct and Judicial-
                    Disability Proceedings (rule number[s])

## INTRODUCTION AND RULE 40(B)(2) STATEMENT

The Court should accept the Panel's implicit invitation to take this case *en banc* to overrule or at least cabin *McBryde v. Committee to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the United States*, 264 F.3d 52 (D.C. Cir. 2001). That precedent has contributed to a severe Constitutional injustice. The panel recognized the problems with *McBryde*, writing that it likely "was wrong the day it was decided," because it "misapplied" the law on jurisdiction preclusion, "relied on a potentially strained reading of the relevant legislative history," and "itself raise[d] constitutional concerns." Panel Op. at 20-21. The *en banc* Court should correct this error.

For over two years now, and with no end in sight, Pauline Newman, an active judge of the United States Court of Appeals for the Federal Circuit—an Article III court—has, through the actions of her colleagues, been completely deprived of the ability to exercise any of the functions of the office to which she has been duly nominated, confirmed, and appointed, and which the Constitution entitles her to hold during "good Behaviour." As the panel recognized, this suspension "threatens the principle of judicial independence[,] may violate the separation of powers

1

… [and] raise[s] due process concerns." Panel Op. at 21. Despite this, *McBryde* has prevented courts from addressing, on the merits, what a panel of this Court deemed to be "important and serious" arguments raised by Judge Newman. Panel Op. at 20.

This is a case of "exceptional importance" not just to the litigants, but to the very "principle of judicial independence" and our constitutional structure. Panel Op. at 20-21. Thus, this case meets the requirements of Fed. R. App. P. 40(b)(2)(D). Furthermore, as the panel recognized, because the *McBryde* decision conflicts with other decisions of this Court, Panel Op. at 20 (citing *Ungar v. Smith*, 667 F.2d 188, 193, 195 n.2, 196 (D.C. Cir. 1981); *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 490, 494-95 (D.C. Cir. 1988)), this case also meets the requirements of subsection (A). *See* Fed. R. App. P. 40(b)(2)(A).

The issues of exceptional importance presented for review are:

1.    Whether the panel erred when it construed *McBryde* as precluding all judicial review of as-applied constitutional challenges to Judicial Council orders; alternatively, if *McBryde* is properly interpreted as precluding all as-applied constitutional challenges, whether it should be overruled.

2.      Whether Appellees have violated the U.S. Constitution's separation of powers by depriving Judge Newman of the functions of her office for an indefinite period of time, a power delegated solely to the U.S. Senate.

3.      Whether the proceedings against Judge Newman, in which her colleagues have acted as accusers, witnesses and adjudicators and have declined her requests to transfer proceedings to another judicial council, comport with the constitutional minimum requirements for due process of law.

## BACKGROUND

### I.   STATUTORY SCHEME

The Disability Act empowers circuit judicial councils[1] to investigate allegations of misconduct or disability lodged against fellow judges.  The process begins when a complaint alleging misconduct or disability is lodged by "[a]ny person," 28 U.S.C. § 351(a), or, alternatively, when a chief judge of a given circuit, "on the basis of information available to

---

[1] The Judicial Council of the Federal Circuit is composed of all active judges of that court.

[such] chief judge … identif[ies] a complaint," even in the absence of a filing from a third party, *id.* § 351(b).

Under the Disability Act, a complaint is investigated by a "special committee" which normally consists of an odd number of judges of the council and includes the chief judge. *See* 28 U.S.C. §§ 352(b), 353(a). This committee compiles evidence and then submits a report, including "recommendations," to the relevant judicial council. The judge being investigated has a right to file a response to this report. Upon receiving the report of the special committee, and the subject judge's response, the judicial council can enter a final decision on the matter. 28 U.S.C. § 354. A judicial council is empowered to sanction the subject judge if it concludes that the judge engaged in misconduct or is disabled. *Id.* § 354(a)(2). The choice of sanctions is limited, but includes "ordering that, on *a temporary basis for a time certain*, no further cases be assigned to the judge whose conduct is the subject of a complaint." *Id.* § 354(a)(2)(A)(i) (emphasis added). A judicial council can also certify a subject judge's disability, *id.* § 354(a)(2)(B)(i), request that a judge voluntarily retire, *id.* § 354(a)(2)(B)(ii), and refer the matter to the Judicial Conference of the United States where it concludes that the

subject judge engaged in conduct "which might constitute one or more grounds for impeachment," *id.* § 354(b)(2)(A). Following consideration by a judicial council, complaints can be reviewed by the Judicial Conference. *See id*. §§ 331, 357(a)-(b).[2]  Under the Disability Act, "all orders and determinations … shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise," *id.* § 357(c), but the Act does not expressly address whether constitutional claims are reviewable on appeal.

Any investigation under the Disability Act proceeds in accordance with the rules established by the Judicial Conference ("Conduct Rules."). Three provisions of the Conduct Rules are relevant here.  First, Rule 4(a)(5) makes it "cognizable misconduct" to "refus[e], without good cause shown, to cooperate in the investigation of a complaint." Second, under Rule 13(a), a special committee may "request the [subject] judge to undergo a medical or psychological examination." R. 13, comm.  And

---

[2] Ordinarily, the Judicial Conference exercises this review power through its Committee on Judicial Conduct and Disability ("JC&D").

finally, Rule 26 authorizes, "[i]n exceptional circumstances, … [a] transfer [of] a proceeding … to the judicial council of another circuit."[3]

Over the entire history of the Disability Act, irrespective of the type or severity of misconduct or disability, no judicial council has ever completely suspended case assignments to a judge for any period of time so as to leave a sanctioned judge with no judicial work whatsoever. Nor had such sanction ever been employed prior to the passage of the Disability Act. Additionally, ever since the enactment of the Disability Act, every judicial council when faced with a non-frivolous complaint against a circuit judge, has, as a matter of course, requested a transfer. Moreover, because all district and circuit judges in this Circuit sit in the same building and know each other particularly well, the Judicial Council of this Circuit has routinely requested transfers whenever a non-frivolous complaint against any judge within this Circuit has been filed. Finally, even when transfers have not been requested, judges sitting on the same court or sharing a courthouse with the complained-of judge,

_____

[3] A transfer is effectuated when "a chief judge or a judicial council" of the relevant circuit makes an appropriate request to The Chief Justice of the United States. Although "the Chief Justice may refuse the request or select the transferee judicial council," R.26, Appellant is not aware of any instance of a Chief Justice denying a transfer request.

have routinely recused themselves from any participation in the proceedings.  This is the only case in the history of the Act when such a case has not been transferred to another Court.

## II.  FACTUAL BACKGROUND

In early 2023, before any investigation was ever proposed, the Chief Judge of the Federal Circuit, Kimberly A. Moore, demanded that Judge Newman retire or take senior status, because in Judge Moore's opinion, Judge Newman could no longer fulfill the responsibilities of a full-time, active circuit judge.  When Judge Newman declined to retire, Judge Moore launched an investigation pursuant to § 351(b) and Rule 5 of the Disability Rules.  As the initial basis for the complaint, Judge Moore cited Judge Newman's a) allegedly low productivity, b) heart attack and a fainting episode (neither of which happened),[4] and, perhaps most importantly for due process purposes, c) concerns raised by *other Federal Circuit judges* (all of whom are members of the Judicial Council) as to Judge Newman's cognitive abilities.  March 24, 2023 Order at 1-2.[5]

---

[4] Indeed, Chief Judge Moore is the only *witness* to the alleged fainting episode, because it allegedly happened immediately following oral argument in which Judges Moore and Newman sat on the same panel.

[5] All orders in this matter (Complaint No. FC-23-90015) are available on the Federal Circuit website, https://tinyurl.com/4jvss48m.

Despite there being no provision for suspension of cases during the pendency of the investigation, Chief Judge Moore also removed Judge Newman from all case assignments and stated that such removal will continue until the complaint is resolved. Contrary to the uniform practice of the preceding 40-plus years, Chief Judge Moore also declined to seek a Rule 26 transfer, even after Judge Newman explicitly requested one.

Within days (and before the receipt of any affidavits or other testimony), Chief Judge Moore and the Special Committee that she formed demanded that Judge Newman produce medical records and submit to two separate medical examinations. *See* April 7, 2023 Order. Judge Newman refused to submit to these demands at least until the matter were transferred to a neutral tribunal. On June 1, 2023, the Special Committee changed the focus of its investigation from Judge Newman's alleged disability to "misconduct" for failure to "cooperate" with its probe. *See* June 1, 2023 Order.[6] The Committee concluded that Judge Newman, despite submitting reports of two separate physicians

---

[6] The Committee has kept other issues "in abeyance." *See* June 20, 2023 Order at 2-5.

8

attesting to her normal cognitive abilities, engaged in misconduct by failing to see doctors handpicked by the Committee and take the tests administered by those doctors. *See* July 31, 2023 Report & Recommendation at 104. The Committee recommended that Judge Newman be sanctioned pursuant to 28 U.S.C. § 354(a)(2)(A)(i), by suspending all case assignments at the panel or *en banc* level for a period of one year with the possibility of renewal should "non-cooperation" continue. *See id.* at 110-11. The Judicial Council endorsed the recommendation on September 20, 2023, and the JC&D (using "abuse of discretion" standard) affirmed. *See In re Complaint No. 23-90015*, at 27 (JC&D, Feb. 7, 2024). On September 6, 2024, the Judicial Council renewed the sanction for another year, and on August 29, 2025, for a third year (again with the possibility of renewal).

As a result of the Judicial Council's actions, Judge Newman has not exercised *any* functions of her judicial office since November 2023 (when she authored her last opinion on a case she heard prior to her suspension). She has even been excluded from the ceremonial functions of her own court, as well as from pre-publication opinion distributions and administrative business of the Federal Circuit. Nor has she been

9

allowed to replace her staff (such as law clerks and secretary). Throughout this time, the Judicial Council has characterized the situation as "serious misconduct," yet refused to refer her for impeachment proceedings as provided for in 28 U.S.C. § 354(b)(2)(A). The Judicial Council has made clear that, though the Disability Act provides for withdrawal of case assignments "on a temporary basis for a time certain," 28 U.S.C. § 354(b)(2)(A), the suspensions will continue indefinitely (in one-year increments) unless Judge Newman submits to the Council's demands. Furthermore, the Special Committee intimated that were Judge Newman to submit to the demanded neuropsychological testing by the Committee's handpicked doctor, and were the Committee to conclude on the basis of that testing that Judge Newman is disabled, it could suspend her indefinitely.[7]  *See* July 24 Oral Arg. Tr. at 16:22-19:1.

---

[7] Appellees have declined to guarantee that should Judge Newman do well on the requested testing, they would return her to the bench, though the Judicial Council did say "the keys to [unlock] her suspension are in her pocket."  August 31 Order at 11.  Given the record and the obvious conflicts, Judge Newman cannot get a fair hearing on any fact or question of law before the panel.

## III.  PANEL DECISION

The panel recognized that Judge Newman "posed important and serious questions about whether the[] … Disability Act proceedings comport with constitutional due process principles and whether her ongoing suspension comports with the structure of our Constitution," yet it concluded that it could not address those questions because it felt bound by its broad interpretation of *McBryde*.  Panel Op. at 20. Accordingly, the panel affirmed the district court's dismissal of Judge Newman's complaint on jurisdictional grounds.

Thus, no court has yet addressed Judge Newman's constitutional or statutory arguments on the merits.[8]

---

[8] As the panel recognized, neither the Judicial Council nor the JC&D has seriously engaged with Judge Newman's separation-of-powers arguments.  The question is not just whether Judge Newman is engaged in misconduct or not, but whether such misconduct can be met with indefinite suspension from the functions of her office. According to the Council, "[u]nder [Newman's] approach, the entire self-policing mechanism Congress created … could be set at nought by any judge determined to ride out an initial suspension from hearing cases."  *Id*.  But that is plainly not the case since a Council faced with an obstinate judge could (and perhaps should) refer that judge to Congress for impeachment, as Judge Newman expressly invited here. Such an action would not "set at nought" the self-policing mechanism, but would vindicate the constitutionally envisioned process.  Nor would transferring the underlying proceeding here to another circuit's judicial council undermine Congress's design.

11

## ARGUMENT

### I.     THIS CASE RAISES IMPORTANT SEPARATION OF POWERS AND STRUCTURAL CONSTITUTIONAL QUESTIONS

#### A.     Whether the Disability Act Deprives Federal Courts of Jurisdiction to Hear As-Applied Constitutional Claims and, If so, Whether the Act Is Unconstitutional as Applied to Judge Newman, Are Issues of Exceptional Importance

*McBryde* interpreted the Disability Act as depriving Article III judges of any judicial forum to resolve as-applied constitutional questions. 264 F.3d at 62. That "itself raises constitutional concerns." Panel Op. at 21.

In order "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim," *Webster v. Doe*, 486 U.S. 592, 603 (1988), the Supreme Court has consistently shied away from finding that any statute fully precludes all judicial review of constitutional questions. *See, e.g.*, *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) (upholding withdrawal of appellate jurisdiction over a habeas petition, in large part because other avenues for review in an Article III court remained); *Johnson v. Robison*, 415 U.S. 361, 366 (1974) (declining to find jurisdiction-stripping provision as affecting Article III courts' ability to

12

address constitutional issues). The Supreme Court has repeatedly held that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Demore v. Kim*, 538 U.S. 510, 517 (2003) (quoting *Webster*, 486 U.S. at 603). The statutory provision on which Appellees base their jurisdiction-stripping claim, 28 U.S.C. § 357(c), does not clearly preclude review of constitutional claims— indeed, it does not even mention constitutional claims. That provision cannot meaningfully be distinguished from the jurisdictional statutes at issue in *Johnson* and *Demore*, neither of which did the Court deem sufficiently clear to preclude judicial review of constitutional claims.

It is also wildly implausible that Congress meant for the judiciary to review the President's ability to terminate subordinate Executive Branch officials who do not possess any constitutional tenure guarantees, *see, e.g.*, *Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935), but meant to preclude any review of the threats to the independence of federal judges who do enjoy such guarantees.

Whether § 357, which does not even mention judicial review of constitutional issues, contains a sufficiently clear statement to fully strip

13

Article III courts of jurisdiction over such issues, is a question of "exceptional importance" which this Court should consider *en banc*.[9]

## B. *McBryde* Cannot Be Reconciled with Other Decisions of This Court

*McBryde* correctly recognized that "[w]hen the Constitution is invoked, a claim of [jurisdiction] preclusion faces an especially high hurdle," and can be met only upon a showing of "clear and convincing" evidence of Congressional intent. 264 F.3d at 59. However, as the panel noted, to the extent that *McBryde* can be interpreted as precluding *all* as-applied constitutional claims, it applied the clear-and-convincing-evidence requirement in a much looser fashion than other decisions of this Court. *See* Panel Op. at 20.

As Judge Tatel pointed out in the dissent in *McBryde*, the D.C. Circuit has found nearly identical legislative language in other contexts "insufficient to bar review of as-applied constitutional claims." 264 F.3d at 73 (Tatel, J., dissenting). In *Ungar v. Smith*, 667 F.2d 188, 193 (D.C. Cir. 1981), appellants who sought to review a Department of Justice

---

[9] The question of whether having Appellees, who by their own admission, are witnesses to the dispute, serve as adjudicators violates due process is its own question of "exceptional importance," but it is secondary to the question of whether an Article III court has jurisdiction to consider this claim.

determination under the Trading with Enemies Act, had to contend with that Act's provision which made "determinations [under the Act] … final and … not … subject to review by any court." 22 U.S.C. § 1631o(c). This language is nearly identical to the language of § 357(c) which makes "all orders and determinations [under the Disability Act] … final and conclusive and … not … judicially reviewable." 28 U.S.C. § 357(c). Yet, the *Ungar* Court held the provision in question to be an insufficiently clear indication of Congress's attempt to withdraw jurisdiction from as-applied constitutional challenges. *See also Lepre v. Dep't of Lab.*, 275 F.3d 59 (D.C. Cir. 2001) (statute that made an action by the Secretary of Labor "final and conclusive for all purposes and with respect to all questions of law and fact; and not subject to review by another official of the United States or by a court by mandamus or otherwise" did not "clearly and convincingly" express Congress's intent to withdraw jurisdiction over constitutional questions); *Ralpho v. Bell*, 569 F.2d 607, 611 (D.C. Cir. 1977) (same).

Finally, *McBryde* cannot be reconciled with this Court's decision in *Dart v. United States*, 848 F.2d 217 (D.C. Cir. 1988), which held that even clearcut jurisdiction-stripping statutes do not divest courts of jurisdiction

to limit agencies to the authority actually conferred by the statute. *See id.* at 224 ("When an [agency] acts *ultra vires*, courts are normally available to reestablish the limits on [its] authority. Rarely, if ever, has Congress withdrawn courts' jurisdiction to correct such lawless behavior … ."). Yet, *McBryde* holds that even plainly *ultra vires* actions cannot be heard in an Article III court. In short, *McBryde* truly stands alone, but not for any defensible reason.

### C. Judge Newman's Long-Term Suspension Threatens Judicial Independence and the Constitutional Separation of Powers

In 1984, when Judge Newman received her judicial commission, she was invested with "the power to … hear and determine judicially questions submitted." *Lucia v. SEC*, 585 U.S. 237, 270 (2018) (Sotomayor, J., dissenting)(cleaned up). *See also* William Baude, *The Judgment Power*, 96 Geo. L.J. 1807, 1815 (2008) ("[T]he 'judicial' power … [i]s the power to make authoritative and final judgments in individual cases."). Under the Constitution, her abilities to exercise that power (as well as her entitlement to undiminished salary) continue "during good Behaviour." U.S. Const. art. III, § 1.

16

The Constitution sets a specific procedure for depriving Article III judges of the power to "make authoritative and final judgments"—impeachment by the majority vote of the House of Representatives, *id.* art. I, § 2, cl. 5, and a conviction by a two-thirds vote of the Senate, *id.* § 3, cl. 6.  It has been well understood for more than two centuries that this constitutionally prescribed mechanism is the *sole* method of depriving an Article III judge of authority to "hear and determine judicially questions submitted."  The Framers were well aware of the possibility that judges may misbehave or become physically or mentally infirm, yet deliberately chose not to provide any alternatives to impeachment to deal with such eventualities.  *See, e.g.*, The Federalist No. 79, at 533 (Alexander Hamilton) (Jacob E. Cooke, ed., 1961) (extolling the absence of a removal provision for disability because such a provision "would be more liable to abuse than calculated to answer any good purpose.").  The subsequent generations have also recognized that any provisions for removal or even a suspension of a constitutional officer from his constitutionally created office must be accomplished either through impeachment or another *constitutionally* prescribed mechanism.

17

*See* U.S. Const. amend. XXV (providing for a way other than impeachment to remove or suspend a disabled President).

Yet, Appellees argue that the Disability Act—a mere statute—permits them to remove all judicial functions from an Article III judge for any period of time, and to renew such suspensions indefinitely. Furthermore, according to Appellees, upon the finding of a disability, a judicial council can order a *permanent* suspension in the interests of "the effective and expeditious administration of justice."     28 U.S.C. § 332(d)(1).  Such long-term suspensions, whether under § 332 or § 354, upset the carefully crafted constitutional balance.  As the Supreme Court emphatically stated, no Act can authorize the President (or by extension anyone else) "to remove, *or in any way diminish* the status of Article III judges, as judges." *Mistretta v. United States*, 488 U.S. 361, 410 (1989) (emphasis added).

Appellees have claimed that the fact that suspensions are a form of *intra*-branch discipline vitiates concerns about judicial independence. But the contrary is true.  First, "[t]he guarantee of life tenure insulates the individual judge from improper influences not only by other branches but by colleagues as well, and thus promotes judicial individualism."

18

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 59 n.10 (1982). *See also* Irving R. Kaufman, *Chilling Judicial Independence*, 88 Yale L.J. 681, 713 (1979). Thus, as far as threats to judicial independence are concerned, it matters not which branch engages in "impeachment-lite."

Second, allowing judges to suspend their colleagues from all judicial duties is not "self-policing" but a clear incursion on the separation of powers because it has the potential to completely nullify the actions of the two other branches of government which united to confer judicial office upon such a judge (and declined to remove her through impeachment). As the *Mistretta* Court explained, "[t]o permit Congress to remove an officer performing executive functions whenever Congress might find the performance of his duties unsatisfactory would, in essence, give Congress veto power over executive action." 488 U.S. at 411 n.35 (citing *Bowsher v. Synar*, 478 U.S. 714, 726-27 (1986)). The same logic applies here. It "is constitutionally impermissible," *Bowsher*, 478 U.S. at 727, to have the judiciary exercise "veto power" over the appointment and removal choices that the other two branches have made.

19

As the panel correctly recognized, whether such incursions on judicial independence and the Constitution's carefully crafted balance of powers are permissible, is an "exceptionally important" question that deserves the full Court's consideration.

## CONCLUSION

Both to resolve the questions of "exceptional importance" and to "maintain uniformity of the court's decisions," this Court should rehear this case *en banc*.  In light of the length of time which has already elapsed, and Judge Newman's advanced age, Judge Newman respectfully requests that the consideration of this petition be expedited to the maximum extent possible.

Respectfully submitted,

/s/ *John J. Vecchione*
John J. Vecchione
    *Counsel of Record*
Mark Chenoweth
Andrew Morris
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
john.vecchione@ncla.legal
    *Counsel for Plaintiff-Appellant*

Dated: September 19, 2025

20

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limit of the Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,872 words. This brief also complies with the typeface and type-style requirements of the Federal Rule of Appellate Procedure because it was prepared using Microsoft Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ John J. Vecchione*

John J. Vecchione

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

/s/ *John J. Vecchione*

John J. Vecchione

# Addendum

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 24, 2025                     Decided August 22, 2025

No. 24-5173

PAULINE NEWMAN, HONORABLE; CIRCUIT JUDGE,
APPELLANT

v.

KIMBERLY A. MOORE, HONORABLE; IN HER OFFICIAL
CAPACITIES AS CHIEF JUDGE OF THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT, CHAIR OF THE JUDICIAL
COUNCIL OF THE FEDERAL CIRCUIT AND CHAIR OF THE
SPECIAL COMMITTEE OF THE JUDICIAL COUNCIL OF THE
FEDERAL CIRCUIT, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-cv-01334)

———

*Gregory Dolin* argued the cause for appellant. With him
on the briefs were *John J. Vecchione* and *Andrew Morris.*

*David C. Tryon* was on the brief for *amicus curiae* the
Buckeye Institute in support of appellant.

*Ilya Shapiro* was on the brief for *amici curiae* Manhattan
Institute, et al. in support of appellant.

2

*Richard A. Samp* was on the brief for *amici curiae* Honorable Janice Rogers Brown, et al. in support of appellant.

*Christopher A. Zampogna* was on the brief for *amicus curiae* the Bar Association of the District of Columbia in support of appellant.

*Melissa N. Patterson*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were Brian M. Boynton, *Principal Deputy Assistant Attorney General*, at the time the brief was filed, *Mark R. Freeman* and *Maxwell A. Baldi*, Attorneys.

*Probir K. Bondyopadhyay, Ph.D.*, pro se, was on the brief for *amicus curiae* Probir K. Bondyopadhyay, Ph.D. in support of appellees.

Before: MILLETT, PILLARD, and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARCIA.

GARCIA, *Circuit Judge*: The Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 empowers circuit judicial councils to investigate allegations of misconduct or disability lodged against fellow judges. The Act also authorizes judicial councils to take "action" to address such allegations, including by "ordering that, on a temporary basis for a time certain, no further cases be assigned" to the judge in question. 28 U.S.C. § 354(a)(1)–(2).

In 2023, a Special Committee of the Federal Circuit opened an investigation into Judge Pauline Newman under the Act. The Committee asked Judge Newman to undergo medical examinations and produce medical records. Judge Newman refused, contending that those requests and the Committee's investigation were unlawful. In response, the Federal Circuit's Judicial Council suspended Judge Newman from receiving new case assignments for one year, subject to potential

3

renewal.  The Judicial Council in fact renewed that suspension in September 2024, and it will decide whether to do so again in September 2025.

In May 2023, Judge Newman filed this suit in district court, contesting her suspension on multiple grounds.  She argued the Judicial Council violated her constitutional due process rights by refusing to transfer the matter to another circuit despite what she submits are stark conflicts of interest.  She claimed that the Act's provision authorizing temporary case-assignment suspensions is facially unconstitutional.  She contended, alternatively, that the case-suspension provision is unconstitutional as applied to her, because she has been effectively removed from office without being impeached.  And she argued that the Judicial Council exceeded its statutory authority in imposing her suspension.

As the district court recognized, our ability to review Judge Newman's statutory and constitutional claims is largely foreclosed by binding precedent.  In *McBryde v. Committee to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the United States*, 264 F.3d 52 (D.C. Cir. 2001), this court held that Congress precluded our jurisdiction over statutory and as-applied constitutional challenges to judicial council orders.  *Id.* at 58–63.  Instead, *McBryde* concluded, Congress intended for those claims to be considered exclusively by the Judicial Conference.  *Id.*  This panel has no authority to depart from *McBryde*.

As a result, we have jurisdiction to consider only Judge Newman's facial constitutional challenge to the Act's case-suspension provision.  Under well-settled standards for such claims, that facial challenge fails because—irrespective of whether the provision's application to Judge Newman is constitutional—Judge Newman agrees that the provision has many other constitutional applications.

4

We therefore affirm the district court's judgment. As just explained, however, our reasons for affirming are unrelated to the strength of Judge Newman's statutory claim or as-applied constitutional claims. Nor does our decision reflect our views of the underlying dispute or of Judge Newman's suspension. Under *McBryde*, any recourse for Judge Newman must come from a judicial council or from the Judicial Conference, the entity statutorily empowered to review council decisions.

**I**

**A**

The Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 "established a formal mechanism by which federal judges could be disciplined by fellow judges for 'conduct prejudicial to the effective and expeditious administration of the business of the courts.'" *Hastings v. Jud. Conf. of U.S.*, 770 F.2d 1093, 1095 (D.C. Cir. 1985) (quoting 28 U.S.C. § 351(a)). The Act outlines the following procedures.

First, "[a]ny person" may submit a complaint alleging judicial misconduct or disability to the clerk of the circuit where the accused judge sits. 28 U.S.C. § 351(a). The clerk will then transmit the complaint to the circuit's chief judge. *Id.* § 351(c). Alternatively, the chief judge may "identify a complaint" on her own initiative. *Id.* § 351(b).

The Act contemplates that proceedings on a complaint will ordinarily take place in the accused judge's own circuit. Congress, however, has also authorized the Judicial Conference of the United States—a body which includes the Chief Justice of the United States, the chief judge and a district judge from each federal circuit, and the Chief Judge of the Court of International Trade—to promulgate rules governing the proceedings. *See id.* §§ 331, 358(a). One such rule

5

provides that "[i]n exceptional circumstances, a chief judge or a judicial council may ask the Chief Justice to transfer a proceeding . . . to the judicial council of another circuit." R. for Jud. Conduct & Jud. Disability Procs. 26.

Upon receiving or identifying a complaint, the chief judge may dismiss the complaint, "conclude the proceeding" because "intervening events" render action unnecessary, or "certify the complaint" to an investigative "special committee." 28 U.S.C. §§ 352(b), 353(a). A special committee usually consists of the chief judge and two other judges. *See id.* § 353(a). If appointed, the special committee will "conduct an investigation as extensive as it considers necessary," *id.* § 353(c), with "full subpoena powers" at its disposal, *id.* § 356(a). Upon completing the investigation, the committee will prepare "a comprehensive written report," including "recommendations," for the circuit's judicial council, *id.* § 353(c)—a body that in the Federal Circuit includes all active judges, *see id.* §§ 332(a)(1), 363; Appellant's Brief 4 n.1.

After receiving a special committee's report, the circuit's judicial council may investigate further, and then must either dismiss the underlying complaint, or "take . . . action" to address it. 28 U.S.C. § 354(a). Potential "action" includes formally censuring the judge or requesting that the judge retire. *Id.* § 354(a)(2). The statute also authorizes a judicial council to "order[] that, on a temporary basis for a time certain, no further cases be assigned to the judge." *Id.* § 354(a)(2)(A)(i). The Act specifies, however, that judicial councils are prohibited from "order[ing the] removal from office of any [Article III] judge appointed to hold office during good behavior." *Id.* § 354(a)(3)(A).

Following consideration by a judicial council, complaints can be reviewed by the Judicial Conference. *See id.* §§ 331, 357(a)–(b). A circuit's judicial council may directly refer or

6

certify any complaint to the Judicial Conference. *Id.* § 354(b)(1)–(2). Alternatively, a "complainant or judge aggrieved by an action of the judicial council . . . may petition the Judicial Conference . . . for review." *Id.* § 357(a). Upon review, the Conference is empowered to take any of the actions available to a judicial council, or to inform the House of Representatives that it believes impeachment is warranted. *Id.* § 355. The Conference has delegated that responsibility for reviewing judicial council orders to its Committee on Judicial Conduct and Disability (the JC&D Committee). *See* R. for Jud. Conduct & Jud. Disability Procs. 21(a).

The Act, however, purports to preclude judicial review of any orders issued during such proceedings. The Act provides for only two forms of intrabranch review: the Judicial Conference's review of council orders, and a judicial council's review of certain orders issued by the circuit's chief judge. *See* 28 U.S.C. §§ 352(c), 357(a). But except for those review mechanisms, Section 357(c) of the Act—in a provision entitled "No Judicial Review"—states that "all orders and determinations, including denials of petitions for review, shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise." *Id.* § 357(c).

**B**

On March 24, 2023, Federal Circuit Chief Judge Kimberly A. Moore initiated a complaint against Judge Newman, who was then ninety-five years old and remained in active service. Citing reports from court staff, Chief Judge Moore's complaint claimed that Judge Newman could no longer manage her workload due to health- and age-related mental impairments. The Chief Judge certified the complaint to a Special Committee composed of herself and two other Federal Circuit judges.

As part of its investigation into the complaint, the Special Committee asked Judge Newman to submit medical records

7

and undergo independent neurological and neuropsychological examinations. Judge Newman objected to the records' and tests' relevance and refused to comply. She also requested that the complaint be transferred to another circuit, arguing that due process precluded the judges on her circuit's Committee—whom she described as her "accusers" and as "witnesses" to relevant events—from also conducting the investigation and adjudicating the complaint. J.A. 38–39 ¶ 33. The Committee denied her transfer request without prejudice.

On July 31, 2023, the Committee submitted its report to the Judicial Council. The report concluded that Judge Newman's noncooperation itself constituted misconduct, as she had violated Judicial Conduct Rules prohibiting refusal to cooperate in an investigation without good cause. *See* R. for Jud. Conduct & Jud. Disability Procs. 4(a)(5). The Committee recommended that Judge Newman be suspended from receiving new case assignments for at least one year, subject to renewal if her conduct continued.

On September 20, 2023, the Federal Circuit's Judicial Council issued an order affirming the Committee's conclusions and adopting its recommendation. Specifically, the Council found that the Committee had a reasonable basis to request the medical records and testing at issue, and it concluded that Judge Newman had not shown good cause for her refusal to comply. The Council ordered that Judge Newman not be permitted to hear any new cases "for a period of one year, . . . subject to consideration of renewal if [her] refusal to cooperate continues after that time and to consideration of modification or rescission if justified by an end of the refusal to cooperate." Jud. Council Order (Sept. 20, 2023), at 72–73. Judge Newman petitioned the JC&D Committee for review of her suspension. On February 7, 2024, the JC&D Committee affirmed the Council's order.

8

In the meantime, Judge Newman filed this suit in district court against Chief Judge Moore, the two other members of the Special Committee, and the Judicial Council. As amended, her complaint asserted eleven counts. Among them were allegations that the Council's proceedings violated her Fifth Amendment due process rights, that her suspension was not authorized by the Act, and that the Act's case-suspension provision was unconstitutional facially and as-applied.

The district court dismissed Judge Newman's complaint in part and granted the defendants' motion for judgment on the pleadings as to the remaining claims. The court concluded that it lacked jurisdiction over Judge Newman's as-applied and statutory challenges and dismissed her facial constitutional challenge on the merits. Judge Newman appealed.

Before this court, Judge Newman continues to press her claim that the Council exceeded its statutory authority because her suspension is not "temporary" and "for a time certain." 28 U.S.C. § 354(a)(2)(A)(i). She also raises three constitutional challenges to her suspension. First, she argues that the case-suspension provision is facially unconstitutional. Second, she asserts that the provision is unconstitutional as it has been applied to her because it has resulted in her unlawful removal from office. The Constitution, Judge Newman emphasizes, provides that Article III judges "shall hold their Offices during good Behaviour." U.S. Const. Art. III, § 1. And, she submits, the only method to remove a judge from her "Office[]" is impeachment. *See* Appellant's Brief 27. In Judge Newman's view, because she no longer has pending cases to decide, she cannot exercise judicial power and the suspension has, in effect, unconstitutionally removed her from "Office[]" without impeachment. Appellant's Brief 23–28. Third, Judge Newman brings an as-applied challenge that the Council violated "basic norms of Due Process" by declining to transfer her case to another circuit, and instead "having the same

9

individuals act as both witnesses and adjudicators." *Id.* at 55–56, 58–60.

In September 2024, while this appeal was pending, the Federal Circuit's Judicial Council renewed Judge Newman's suspension for a second year. And in July 2025, the Special Committee recommended that her suspension be renewed for a third year.

## II

The district court dismissed Judge Newman's as-applied constitutional claims and statutory claim for lack of jurisdiction. Our court reviews that dismissal de novo. *Statewide Bonding, Inc. v. DHS*, 980 F.3d 109, 114 (D.C. Cir. 2020). We affirm. Binding circuit precedent dictates that federal courts lack jurisdiction to review those claims.

### A

Recall that Section 357(c) of the Act provides that "all orders and determinations" of a judicial council or the Judicial Conference "shall not be judicially reviewable on appeal or otherwise." 28 U.S.C. § 357(c). By its plain text, that provision appears to explicitly preclude judicial review of all challenges to covered orders.

The Supreme Court, however, has long instructed that a "serious constitutional question . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (citation modified). Thus, "a statutory bar to judicial review" is understood to "preclude[] review of constitutional claims only if there is 'clear and convincing' evidence that the Congress so intended." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 308 (D.C. Cir. 2014) (citation omitted). To ascertain the scope of an explicit preclusion provision like Section 357(c), our court "examine[s]

10

both the text of the statute and the legislative history" and asks whether there is "clear-and-convincing evidence" of "congressional intent to bar judicial review of constitutional claims." *Id.* at 309.

Twenty-four years ago, our court applied those principles to determine the preclusive scope of Section 357(c). *See McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 264 F.3d 52, 58–63 (D.C. Cir. 2001). In *McBryde*, we considered a judge's statutory and constitutional challenges to a judicial council order imposing sanctions under the Act. *See id.* at 54–55. We held that Section 357(c) explicitly precluded that judge's statutory claims. *Id.* at 59, 63–64. And we used the clear-and-convincing-evidence test to determine that Section 357(c) precluded some of that judge's constitutional claims. *Id.* at 58–63. Specifically, our court held that Section 357(c) did not preclude facial constitutional challenges given the "serious constitutional question" that would arise if such claims could not be brought in any forum. *Id.* at 58 (quoting *Webster*, 486 U.S. at 603). We also held, however, that Section 357(c) did "preclude review in the courts for as applied constitutional claims." *Id.* at 62–63. In the Act's legislative history, we discerned "clear and convincing" evidence of Congress's intent to channel review of as-applied challenges to the Judicial Conference alone and away from federal courts. *Id.*[1]

---

[1] As this description of *McBryde* reflects, our court has treated judicial councils and the Judicial Conference as administrative rather than judicial bodies. *See McBryde*, 264 F.3d at 62–63; *Hastings v. Jud. Conf. of U.S.*, 829 F.2d 91, 103–04 (D.C. Cir. 1987); *cf. also Chandler v. Jud. Council of Tenth Cir.*, 398 U.S. 74, 83–86 (1970) (declining to resolve this issue). Neither party challenges that treatment before our panel. The appellees do, however, "preserve" for later review the argument that these entities should be understood

11

*McBryde*'s jurisdictional holding was unambiguous: Section 357(c) bars from federal court statutory and as-applied constitutional challenges to judicial council or Judicial Conference orders issued under the Act. *Id*. at 59, 62–63.

We are bound by a prior panel decision "unless intervening Supreme Court precedent" has "effectively overrule[d], *i.e.*, eviscerate[d]" that decision. *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1334 (D.C. Cir. 2024) (citation modified). Neither our court nor the Supreme Court has reconsidered the scope of Section 357(c) (or altered the clear-and-convincing-evidence test) since *McBryde* was decided. And *McBryde* has not otherwise been overruled or meaningfully undermined. We therefore may not review Judge Newman's statutory challenge or as-applied constitutional challenges.

**B**

Judge Newman resists that conclusion principally by arguing that *McBryde* has been effectively overruled and so no longer forecloses review of statutory challenges or as-applied constitutional challenges. We are not persuaded.

Judge Newman first claims that *McBryde*'s holding respecting statutory challenges was eviscerated by the Supreme Court's decision in *SAS Institute, Inc. v. Iancu*, 584 U.S. 357 (2018). That case, she says, suggests that even an explicit statutory bar cannot preclude judicial review of claims that an agency exceeded its statutory authority. *See* Appellant's Brief 52–53. But *SAS Institute* says no such thing. That case applied the same principles as *McBryde* to a differently worded preclusion provision. And the Court permitted that petitioner's challenge to proceed because the preclusion provision by its

―――――――――――――――

as judicial in nature, in which case their decisions would not be subject to district court review at all. *See* Appellees' Brief 31 n.7.

12

terms did not encompass the petitioner's challenge.    The provision there stated that a "determination by the Director [of the Patent Office] *whether* to institute an inter partes review under this section shall be final and nonappealable." *SAS Inst.*, 584 U.S. at 370 (quoting 35 U.S.C. § 314(d)) (emphasis added).    But the petitioner challenged *how* the Director conducted his inter partes review—not the Director's determination of "*whether* to institute" such review—so that challenge was not precluded.  *Id.* at 370–71.  Judge Newman does not argue that the order imposing her suspension somehow falls outside the category of "all orders and determinations" described in Section 357(c).  And *SAS Institute* is irrelevant to the argument she does make: that Section 357(c) cannot bar any argument that a judicial council exceeded its statutory authority.[2]

Judge Newman also fails to show that *McBryde*'s holding regarding as-applied constitutional challenges has been eviscerated.

---

[2] Judge Newman's brief also might be read as suggesting that, despite Section 357(c), we can review her statutory challenge under cases allowing us to review agency overreach of statutory authority that is "so extreme that one may view it as jurisdictional or nearly so."  *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988).  She makes any such argument in (at most) a "skeletal" manner, and so it is forfeited.  *See N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) (quotation omitted). And even if we considered her claim, the exception she invokes has only been applied to statutory schemes raising questions of implicit preclusion, not to explicit preclusion provisions like the one at issue here.  *See Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022).  The exception is also exceedingly narrow—as the Supreme Court recently reiterated, it is "essentially a Hail Mary pass [that] in court as in football, . . . rarely succeeds."  *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681–82 (2025) (citation modified).

13

First, Judge Newman argues that *McBryde*'s holding was undermined by Congress's 2002 addition of a severability clause to the Act. That clause states: "If any provision of this subtitle . . . or the application of such provision . . . to any person or circumstance is held to be unconstitutional, the remainder of this subtitle . . . and the application of the provisions of such to any person or circumstance shall not be affected thereby." 28 U.S.C. § 351 Note. Judge Newman argues that the provision's text—by imagining that an application of the Act could be found unconstitutional— "*expressly* contemplates 'as applied' challenges to the Act being adjudicated in Article III courts." Appellant's Brief 60.

We disagree. The clause does not state that Article III courts can consider as-applied challenges. And although it contemplates some entity finding applications of the Act unconstitutional, it is possible Congress envisioned that a judicial council or the Judicial Conference (not an Article III court) could make such findings. Our court in *McBryde*, after all, concluded that the Judicial Conference could decide such claims. *See* 264 F.3d at 62, 68. At the least, the clause does not provide clear evidence of Congressional intent to, in effect, partly repeal Section 357(c) as it was understood in *McBryde*. *See United States v. Hansen*, 772 F.2d 940, 944 (D.C. Cir. 1985) ("[R]epeals by implication are not favored, and will not be found unless an intent to repeal is clear and manifest." (citation modified)).

Second, Judge Newman argues that the Judicial Conference has declined to consider constitutional issues in the years since *McBryde* was decided. Its failure to do so, she says, undermines *McBryde*'s reasoning, which emphasized Congress's intent to channel review of those claims to the Judicial Conference. *See* 264 F.3d at 62–63.

14

Whatever the Judicial Conference's current practices are, they do not undermine *McBryde*. When *McBryde* was decided, the Judicial Conference declined to pass on constitutional issues. *See id.* at 62. The *McBryde* court acknowledged as much and conceded that it had no power to order the Judicial Conference to begin hearing such claims (though it urged the Conference to do so). *See id.* at 62, 68. Our court's reasoning thus never depended on the Conference in fact reviewing constitutional claims. Instead, our holding rested on the finding that Congress had—clearly and convincingly— intended that the Conference, rather than courts, review as-applied challenges (even if the Conference in fact shirked its duty). *See id.* at 59–61.[3]

Third and finally, Judge Newman turns to the Supreme Court's opinions in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), and *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010). On her

_____

[3] The parties debate whether judicial councils and the Judicial Conference have in fact begun to address constitutional issues in this case and others since *McBryde*. Counsel for appellees represents that the Judicial Council agrees it can address as-applied constitutional challenges, and appellees identify one other JC&D Committee decision that, in their view, considered and rejected a Fourth Amendment challenge. *See* Tr. of Oral Arg. 64; Appellees' Brief 49 (citing In re Complaint of Judicial Misconduct, C.C.D. No. 17-01 (U.S. Jud. Conf. Aug. 14, 2017), at 30–34). In this case, however, neither the Judicial Council's orders nor the JC&D Committee's decision explicitly reflects genuine consideration of Judge Newman's constitutional arguments. None of the orders appear to address any argument by Judge Newman that her suspension violates the Constitution by effectively removing her from office. The JC&D Committee acknowledged that Judge Newman argued for a transfer in constitutional terms, In re Complaint No. 23-90015, C.C.D. No. 23-01 (U.S. Jud. Conf. Feb. 7, 2024), at 14, 21, but its order does not much discuss constitutional due process case law.

15

view, those cases held that all constitutional questions "are outside the scope of agencies' expertise" and so must be reviewable in federal courts. Appellant's Brief 62. Those holdings, she says, undermine *McBryde*'s conclusion that Congress intended to route review of as-applied challenges exclusively to the Judicial Conference.

Judge Newman overreads *Axon* and *Free Enterprise Fund*. Most simply, those cases did not involve an explicit statutory bar on judicial review, and so did not address the same type of legal question as did *McBryde*. In *Axon* and *Free Enterprise Fund*, entities facing agency investigations or enforcement actions sued in district court, arguing that the agencies at issue were unconstitutionally structured. *See Axon*, 598 U.S. at 180; *Free Enter. Fund*, 561 U.S. at 487. As the Court emphasized, neither case involved an *explicit* jurisdiction-stripping provision like Section 357(c). *See Free Enter. Fund*, 561 U.S. at 489 ("[T]he text does not expressly limit the jurisdiction . . . [of] district courts."); *see also Axon*, 598 U.S. at 185. Instead, the agencies claimed that Congress's creation of a scheme of administrative review, followed by review in a court of appeals, *implicitly* precluded district court suits challenging the agencies' actions. *See Axon*, 598 U.S. at 184–88; *Free Enter. Fund*, 561 U.S. at 489–91. In such a case, rather than the clear-and-convincing-evidence test *McBryde* applied, courts deploy a different doctrinal framework stemming from *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). *See Axon*, 598 U.S at 185–86; *Free Enter. Fund*, 561 U.S. at 489–91. That difference alone defeats any argument that *Axon* or *Free Enterprise Fund* eviscerates *McBryde*'s reading of Section 357(c)'s explicit bar on judicial review.

A further weakness in Judge Newman's analogy is also worth noting. She seizes on the Court's explanation that the SEC and FTC were comparatively inexpert as compared to district courts in evaluating constitutional claims. *See Axon*,

16

598 U.S. at 194–95; *Free Enter. Fund*, 561 U.S. at 491.  But it is far from clear that concern applies equally to judicial councils or the Judicial Conference.  Those entities are, after all, composed exclusively of Article III judges.

## C

Taking a different tack, Judge Newman argues that, even if *McBryde* generally remains good law, its reasoning does not apply to her specific as-applied challenges.  This line of argument also proves unpersuasive.

To start, Judge Newman contends that *McBryde* held in a footnote that Section 357(c) did not cover as-applied challenges (like hers) to long-term disqualifications from hearing cases.  That footnote states:  "Obviously, we do not decide whether a long-term disqualification from cases could, by its practical effect, [e]ffect an unconstitutional 'removal.'"  *McBryde*, 264 F.3d at 67 n.5.  Through that footnote, she argues, *McBryde* promised that a court *would* have jurisdiction to consider that type of as-applied challenge if it arose.

That reading is implausible.  *McBryde* squarely held—in an earlier section of the opinion—that Section 357(c) reflects Congress's intent "to preclude review in the courts for as applied constitutional claims."  *Id.* at 62–63.  The footnote appears in the panel's later discussion of *McBryde*'s facial challenge and does not purport to modify the court's jurisdictional holding.

Next, Judge Newman argues that *McBryde* does not preclude review of her due process challenge to the Judicial Council's refusal to transfer her case.  The Act, she notes, does not explicitly provide for Judicial Conference review of a council's decision to transfer (or not transfer) a case.  And she argues that *McBryde*'s rationale cannot apply to her due

17

process claim because it turned on the availability of review before the Judicial Conference.

Judge Newman may be right that the Act provides no means to petition the Conference for interlocutory review of the Council's transfer decision. But the Act does provide for Conference review of any final council action stemming from a case that was not transferred. *See* 28 U.S.C. § 357(a)–(b). Judge Newman's due process challenge to the Council's transfer decision can thus be raised to the Conference as part of a petition challenging the Council's final action in this case. Indeed, Judge Newman challenged the Judicial Council's denial of her transfer request in her 2023 petition for review of the Council's initial suspension order, and the JC&D Committee addressed it. *See* In re Complaint No. 23-90015, C.C.D. No. 23-01 (U.S. Jud. Conf. Feb. 7, 2024), at 15–22.

Judge Newman cannot show that *McBryde* has been eviscerated or that her specific claims escape its grasp. We thus lack jurisdiction over her statutory and as-applied constitutional challenges.

**III**

We do have jurisdiction over Judge Newman's facial challenge to the Act's case-suspension provision, *see McBryde*, 264 F.3d at 58, and now turn to the merits of that challenge.

In a facial challenge, the plaintiff asks a court to look beyond the facts of her own case and declare a statutory provision unconstitutional in all its applications. Facial challenges thus strain against the many "good reasons" that "courts usually handle constitutional claims case by case, not en masse." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). As a result, under longstanding precedent, such challenges are quite difficult to make out. To succeed in a facial challenge, a plaintiff must show that "no set of

18

circumstances exists under which the law would be valid" or "that the law lacks a plainly legitimate sweep." *Comm. on Ways & Means v. Dep't of Treasury*, 45 F.4th 324, 339 (D.C. Cir. 2022) (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021); *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (citation modified).  Put differently, the plaintiff must demonstrate that the provision at issue does not have any—or at least not many—constitutional applications.

Judge Newman's own concessions demonstrate that she cannot meet that settled standard.  She challenges 28 U.S.C. § 354(a)(2)(A)(i), which authorizes judicial councils to "order[] that, on a temporary basis for a time certain, no further cases be assigned to the judge whose conduct is the subject of a complaint."  But Judge Newman concedes that, under that provision, short suspensions from receiving new case assignments can be constitutional at least as long as the judge still has cases left to decide—while a judge clears a mounting backlog of opinions, for example.  *See* Reply Brief 6, 9; Appellant's Brief 41–43.  In fact, both our court and the Supreme Court have suggested the same (albeit in dicta).  *See McBryde*, 264 F.3d at 65; *Chandler v. Jud. Council of Tenth Cir.*, 398 U.S. 74, 85 (1970).  Judge Newman thus cannot show that there is "no set of circumstances . . . under which the law would be valid" or that it "lacks a plainly legitimate sweep." *Comm. on Ways & Means*, 45 F.4th at 339 (citation modified).  Indeed, Judge Newman does not attempt to make that showing.

Judge Newman's argument instead proceeds as though she needs to show only that some portion of the statute's applications are unconstitutional.  She accordingly argues that her lengthy suspension is unconstitutional, and that if the provision authorizes that suspension and similar ones, it must be facially unconstitutional.

19

That argument misunderstands the law governing facial constitutional challenges.  To be sure, in the First Amendment context, statutes may sometimes be deemed facially invalid where only a subset of their applications are unconstitutional. *See United States v. Hansen*, 599 U.S. 762, 769 (2023).  But that unique way of evaluating facial challenges—called "overbreadth doctrine"—"[b]reak[s]" from the ordinary rules for evaluating such claims to "guard against" the potential that even partly unconstitutional laws "may deter or 'chill' constitutionally protected speech." *Id.* at 769–70 (citation modified).  Given that other types of constitutional challenges do not raise those same concerns, however, courts "have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *Salerno*, 481 U.S. at 745; *accord Metro. Wash. Chapter, Associated Builders & Contractors, Inc. v. District of Columbia*, 62 F.4th 567, 577 (D.C. Cir. 2023).  This is not a First Amendment case. Overbreadth doctrine does not apply.  So Judge Newman's theory fails.

Judge Newman further urges us to adopt a "narrowing construction" of the statute.  Appellant's Brief 41–42.  She asks us to find that case suspensions like hers are at least constitutionally suspect and construe the case-suspension provision not to authorize such suspensions to avoid a potentially serious constitutional flaw. *See Crowell v. Benson*, 285 U.S. 22, 62 (1932).  But a narrowing construction can be justified only if a party first raises a serious constitutional question. *See id.*  Here, the only claim properly before us is Judge Newman's facial challenge.  And as just explained, that challenge does not present a close question.  We therefore have no occasion to consider a narrowing construction.

20

**IV**

We have now resolved all issues presented in this case. Before concluding, however, we emphasize two points.

First, we do not consider—because we cannot consider—the merits of Judge Newman's as-applied constitutional claims. Judge Newman has posed important and serious questions about whether these Judicial Conduct and Disability Act proceedings comport with constitutional due process principles and whether her ongoing suspension comports with the structure of our Constitution. That we do not answer those questions is no indication that her arguments lack merit, nor signals how we might have addressed them if we were able. As already discussed, precedent strips us of authority to consider those challenges. We do not reach them for that reason alone.

Second, as a panel of this court, we are unable to overrule *McBryde*, and so do not resolve whether *McBryde* was rightly decided. To be sure, there are substantial arguments that—if judicial councils and the Conference are properly regarded as administrative bodies—the *McBryde* majority misapplied the clear-and-convincing-evidence test when interpreting Section 357(c). Judge Tatel's partial dissent articulated several such arguments: The *McBryde* majority may have applied the clear-and-convincing-evidence test more loosely than our court had in prior cases, in part because it thought that as-applied constitutional claims would still be heard by "a reviewing 'agency' composed exclusively of Article III judges." *McBryde*, 264 F.3d at 62; *see id.* at 73–76 (Tatel, J., concurring in part and dissenting in part) (citing *Ungar v. Smith*, 667 F.2d 188, 193, 195 n.2, 196 (D.C. Cir. 1981); *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 490, 494–95 (D.C. Cir. 1988)). It relied on a potentially strained reading of the relevant legislative history. *See id.* at 74–76. And its holding could be taken to suggest that certain constitutional questions might be

21

heard in no forum (if the Judicial Conference does not consider those challenges) and that, regardless, the Judicial Conference—not the Supreme Court—would be the last word on major questions of constitutional law. *See id.* at 75.

The seeming absence of a judicial forum to address Newman's as-applied constitutional claims itself raises constitutional concerns. *See Webster*, 486 U.S. at 603. Judge Newman presents substantial arguments that her suspension— which has now lasted nearly two years, with a third year recommended—threatens the principle of judicial independence and may violate the separation of powers. She further contends that the refusal to transfer her case to a different circuit deprived her of an impartial tribunal, which if correct would raise due process concerns. *See, e.g.*, *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973); *In re Murchison*, 349 U.S. 133, 136–37 (1955).

Those doubts, however, would at most suggest that *McBryde* was wrong the day it was decided, not that it does not bind us now. (Indeed, many of those arguments were presented when *McBryde* was issued, and our full court nonetheless denied en banc review. *See McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 278 F.3d 29, 29 (D.C. Cir. 2002) (per curiam).)

The result of faithfully applying *McBryde* is that Judge Newman cannot raise her as-applied constitutional arguments in any Article III forum.[4] It is thus up to the Judicial Council and the Judicial Conference to genuinely engage with those arguments.

---

[4] Appellees suggested at oral argument that the Supreme Court may be able to review Judicial Conference orders via mandamus. *See* Tr. of Oral Arg. 71–74. We express no opinion on that possibility.

22

**V**

The judgment of the district court is affirmed.

*So ordered.*

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

## PURSUANT TO CIRCUIT RULE 28(A)(1)

**A. Parties:**

The parties in the district court include the Honorable Pauline Newman, United States Circuit Judge of the United States Court of Appeals for the Federal Circuit, the Honorable Kimberly A. Moore, in her official capacities as Chief Judge of the United States Court of Appeals for the Federal Circuit, Chair of the Judicial Council of the Federal Circuit, and Chair of the Special Committee of the Judicial Council of the Federal Circuit; the Honorable Sharon Prost, in her official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit; the Honorable Richard G. Taranto, in his official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit; and the Judicial Council of the Federal Circuit and all Members thereof, in their official capacities.

***Disclosure Statement***:  No Disclosure Statement under Federal Rule of Appellate Procedure 26.1 nor under Circuit Rule 26.1 is necessary, as Plaintiff-Appellant is neither a corporation nor similar entity.

**B. Ruling Under Review:**

The parties are before this Court on appeal from the February 12, 2024 and July 9, 2024 Memorandum Opinions and Orders of the district court issued by the Hon. Christopher R. Cooper, ECF 43, 49, and 50 in *Newman v. Moore*, No. 23-cv-01334-CRC. The February 12, 2024 Opinion is reported at 717 F.Supp.3d 43 (D.D.C. 2024), and is reproduced at Joint Appendix pp. 147-182. The July 9, 2024 Opinion is reported at 743 F.Supp.3d 62 (D.D.C. 2024), and is reproduced at Joint Appendix pp. 209-215. The district court's final order dismissing the action is reproduced at Joint Appendix p. 200.

**C. Related Cases:**

There are no related cases pending in this or any other court. The disciplinary proceedings under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364 remain pending before the Judicial Council of the Federal Circuit and the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States.