**[ORAL ARGUMENT HELD APRIL 24, 2025]**
**PUBLIC COPY—SEALED MATERIAL DELETED**
**No. 24-5173**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

HON. PAULINE NEWMAN,

Plaintiff-Appellant,

v.

HON. KIMBERLY A. MOORE, *in her official capacities as Chief Judge of the U.S. Court of Appeals for the Federal Circuit, Chair of the Judicial Council of the Federal Circuit, and Chair of the Special Committee of the Judicial Council of the Federal Circuit*, et al.

Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the District of Columbia

————————————

**OPPOSITION TO PETITION FOR REHEARING EN BANC**

————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-0211*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**A.    Parties and Amici**

Plaintiff-appellant is Hon. Pauline Newman.

Defendants-appellees are Hon. Kimberly A. Moore, in her official capacities as Chief Judge of the U.S. Court of Appeals for the Federal Circuit, Chair of the Judicial Council of the Federal Circuit, and Chair of the Special Committee of the Judicial Council of the Federal Circuit; Hon. Sharon Prost, in her official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit; Hon. Richard G. Taranto, in his official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit; and the Judicial Council of the Federal Circuit.

No amici appeared in the district court.  The following amici have filed briefs in this Court in support of Plaintiff:  the Bar Association of the District of Columbia; the Buckeye Institute; the Manhattan Institute; and retired federal judges Hon. Susan G. Braden, Hon. Janice Rogers Brown, Hon. Paul G. Cassell, Hon. Paul R. Michel, Hon. Randall R. Rader, and Hon. Thomas I.

Vanaskie.  The following amicus    filed a brief in this Court in support of affirmance:  Probir Kumar Bondyopadhyay.

### B.    Rulings Under Review

Plaintiff appeals from the memorandum opinion and order issued by the district court (Cooper, J.) on February 12, 2024, and from the memorandum opinion and order issued by the district court on July 9, 2024. The first memorandum opinion is published at 717 F. Supp. 3d 43; the second memorandum opinion is published at 743 F. Supp. 3d. 62.

### C.    Related Cases

This case has not previously been before this Court or any court other than the district court.  Counsel for defendants-appellees are unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

 */s/ Maxwell A. Baldi*
Maxwell A. Baldi

**PUBLIC COPY—SEALED MATERIAL DELETED**

# TABLE OF CONTENTS

**Page**

GLOSSARY ...................................................................................................iv

INTRODUCTION AND SUMMARY .........................................................1

STATEMENT .................................................................................................2

    A.    Statutory Background ...............................................................2

    B.    Factual Background .................................................................4

    C.    Prior Proceedings ..................................................................11

ARGUMENT ...............................................................................................11

I.    *McBryde* Should Not Be Overturned ..............................................12

    A.    *McBryde* Was Correctly Decided. ......................................12

    B.    *McBryde* Was And Is Consistent With Circuit Precedent..........15

    C.    *Stare Decisis* Militates Against Overturning *McBryde*................17

II.    En Banc Review Is Unwarranted To Address Plaintiff's Specific As-Applied Constitutional Arguments..................................................18

    A.    ██████████████████████████████ ..........18

    B.    Plaintiff's Petition Fails To Justify En Banc Review Of Her As-Applied Constitutional Claims.......................................19

CONCLUSION ...........................................................................................22

CERTIFICATE OF COMPLIANCE

## GLOSSARY

| | |
|---|---|
| Act | Judicial Conduct and Disability Act |
| Add. | Addendum to the En Banc Petition |
| App. | Sealed Appendix to Government's Opposition to the En Banc Petition |
| Dkt. | District court docket |
| Gov't Br. | Government's brief on the merits |
| JA | Joint Appendix |
| JC&D Committee | Judicial Conference's Committee on Judicial Conduct and Disability |
| Rules | Rules for Judicial-Conduct and Judicial-Disability Proceedings |

## INTRODUCTION AND SUMMARY

The Judicial Conduct and Disability Act (Act) reinforces the Judicial Branch's autonomy and independence by authorizing the Judiciary to police itself.  The Act enables the Article III judges of the judicial council of the relevant judge's own circuit to address complaints regarding judicial conduct and disability.  It subjects those judicial-council decisions to review by the Judicial Conference's Article III judges.  For judicial-council decisions, Congress mandated that, except for such Judicial-Conference review, "all orders and determinations [made under the Act] … shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise." 28 U.S.C. § 357(c).

In 2001, this Court held that § 357(c) bars district-court jurisdiction over as-applied constitutional challenges to orders made under the Act but permits district courts to adjudicate facial challenges to the Act.  *McBryde v. Committee to Review*, 264 F.3d 52, 62-63 (D.C. Cir.).  That decision respects the statute's plain language and Congress's clear intent to channel review of judicial-council orders to the Judicial Conference.  Plaintiff's arguments to the contrary are unavailing, and she provides no rationale to overcome the

**PUBLIC COPY—SEALED MATERIAL DELETED**

strong *stare decisis* that attaches to statutory-interpretation precedents. Plaintiff provides no sound basis to revisit *McBryde*.

Plaintiff is wrong that her due-process challenges have gone unreviewed.  The Article III judges of the Judicial Conference considered and rejected Plaintiff's due-process arguments (to the extent she presented them), ██████████████████████████████████████████████ ████████████.  As *McBryde* held, Congress clearly and permissibly decided to channel as-applied challenges to those judges.  And in any event, in seeking rehearing, Plaintiff has not developed or articulated her constitutional claims.  En banc review is unwarranted.

## STATEMENT

### A.    Statutory Background

Enacted in 1980, Pub. L. No. 96-458, 94 Stat. 2035, and recodified in 2002, Judicial Improvements Act of 2002, Pub. L. No. 107-273, div. C, tit. I, subtitle C, 116 Stat. 1848, the Act authorizes proceedings "to determine whether a covered judge has engaged in" misconduct "or is unable to discharge the duties of office" due to disability.  Rule 1(a).[1]  The Act's

---

[1] Rules for Judicial-Conduct and Judicial-Disability Proceedings ("Rules") (eff. Mar. 12, 2019), https://perma.cc/TBN3-LJP5, based on the Breyer Committee Report, *see* Rule 1 commentary.

purpose "is not to punish but to protect the judicial system and the public." *In re Complaint of Judicial Misconduct*, 425 F.3d 1179, 1182 (9th Cir. Judicial Council 2005).

Proceedings under the Act may be initiated if a person alleges judicial misconduct or disability or the circuit's chief judge identifies a complaint. 28 U.S.C. § 351(a)-(b). Unless the chief judge summarily dismisses the complaint, she must establish a special committee composed of herself and other judges from the circuit to investigate the allegations. *Id.* §§ 352(a)-(b), 353(a); *see id.* § 363; Rule 11. The Rules require judges to cooperate with investigations and define failure to do so without good cause as "[c]ognizable misconduct." Rule 4(a)(5).

The Act directs proceedings to occur within the subject judge's home judicial council, 28 U.S.C. §§ 353(a)(1), 354(a), making no provision for transfers to other circuits. The Rules, however, state that "[i]n exceptional circumstances, a chief judge or a judicial council may ask the Chief Justice to transfer a proceeding." Rule 26.

Under the Act, the special committee investigates and presents a report and recommendation to the judicial council, 28 U.S.C. § 353(c), which may take appropriate action. *Id.* § 354(a)(1). Then, a judge "may petition the

3

Judicial Conference … for review" of the judicial council's decision. *Id.*
§ 357(a). The Judicial Conference comprises 27 Article III judges, including
the Chief Justice. *See id.* § 331. The Judicial Conference has delegated
responsibility for reviewing judicial-council decisions to its seven-member
Committee on Judicial Conduct and Disability (JC&D Committee). Rule
21(a); *see* 28 U.S.C. §§ 331, 357(b). The Judicial Conference may review the
JC&D Committee's decision or allow it to become final. Rule 21(g).

Except for review under this provision (and 28 U.S.C. § 352(c), which
permits judicial-council review of certain chief-judge orders), Congress
specified that "all orders and determinations [made under the Act] … shall
be final and conclusive and shall not be judicially reviewable on appeal or
otherwise." 28 U.S.C. § 357(c).

## B. Factual Background

The Judicial Council proceeding underlying this litigation has a "robust
record, developed over several years." Judicial Council Order 2 (Aug. 29,
2025) (2025 Order), https://perma.cc/Z48G-J5YC. That voluminous record
evades easy summary, but it includes careful explanations from the
unanimous Judicial Council addressing Plaintiff's narrative (Pet. 7-10) that

4

she has been treated unfairly and that judges of the Federal Circuit preordained her suspension. *See, e.g.*, Dkt. 30-1, at 225-33, 246-50.

1. In early 2023, concerns were raised about "extensive delays" in Plaintiff's resolution of cases, Plaintiff's "inappropriate behavior in managing staff," and the possibility that Plaintiff "may suffer from impairment of cognitive abilities (i.e., attention, focus, confusion and memory)." Dkt. 15-1, at 3, 6. After conducting a "limited inquiry" as contemplated by the Rules, *id.* at 3; *see* Rule 5 & commentary, the Chief Judge determined there existed "probable cause to believe that Judge Newman's health" rendered her unable "to perform the work of an active judge," Dkt. 15-1, at 6. Half of the circuit's active judges tried informally to resolve these concerns, as the judges then understood them—for example, by encouraging Plaintiff to consider senior status. *Id.* at 3, 6-7. When those efforts failed, the Chief Judge identified a complaint and appointed a special committee to investigate. *Id.* at 9. The Judicial Council also unanimously suspended Plaintiff from hearing further cases while her backlog remained pending. *See* Dkt. 32-1, at 2-3.

The Special Committee conducted as thorough an investigation as possible, given Plaintiff's lack of cooperation and the invocation of the Fifth

5

Amendment privilege by Plaintiff's law clerk, *see* Special Committee Report & Recommendation with Attachments 120-59 (July 31, 2023) (2023 Report), https://perma.cc/DM83-ANYX. The Special Committee collected more than twenty statements from court employees, including reports of paranoia, increased confusion, and worsening memory problems as well as Plaintiff's own emails evidencing the same. *See* Dkt. 15-1, at 82-89. Court staff "described Judge Newman in their interactions with her as … 'agitated, belligerent, and demonstratively angry'; and 'ranting, rambling, and paranoid.'" Dkt. 30-1, at 186. As a result, "the Clerk of the Court … advised staff to avoid interacting with her in person or, when they must, to bring a co-worker with them." *Id*; *see, e.g.*, *id.* (Plaintiff "accused staff of trickery, deceit, acting as her adversary, stealing her computer, stealing her files, and depriving her of secretarial support"). Plaintiff did not contest any of this evidence. *See* Dkt. 30-1, at 219 (noting that Plaintiff's special committee brief characterized affidavits as documenting "petty grievances" but did not challenge their accuracy).

On the basis of interviews it had already conducted with multiple court employees, including a member of Plaintiff's chambers staff, and upon medical-expert advice, the Special Committee directed Plaintiff (1) to

produce certain medical records to an independent neurologist and (2) to undergo (non invasive) neurological and neuropsychological examinations to enable resolution of the disability issue. Dkt. 15-1, at 9, 77-78, 82, 98, 101; Dkt. 30-1, at 195, 242-43. It was later revealed that Plaintiff's own expert neurologist had likewise recommended that she undergo such neuropsychological examinations. Special Committee Report & Recommendation 2, 10-13 (July 28, 2025) (2025 Report), https://perma.cc/5NSK-47GZ. Plaintiff refused to comply with the Committee's order. *See, e.g.*, Dkt. 25-1, at 18-21.

2. Plaintiff's refusal shifted the investigation to determine whether her non-cooperation constituted misconduct. Dkt. 15-1, at 115-17; *see generally* Gov't Br. 12-23.

After considering Plaintiff's briefing, evidence, and argument, the Special Committee recommended that the Judicial Council suspend Plaintiff from hearing new cases for one year or until she cooperated. Dkt. 25-1, at 114-15. The Judicial Council unanimously found that the record established "a reasonable basis" to order the specified testing and medical records and that Plaintiff had not shown good cause for refusing to comply. Dkt. 30-1, at 255. The Judicial Council unanimously suspended Plaintiff from hearing new

7

cases for one year "subject to consideration of renewal if Judge Newman's refusal to cooperate continues" or "modification or rescission if justified by an end of the refusal to cooperate." *Id.* at 255-56.

At several points, Plaintiff sought a transfer to another circuit's judicial council. *See, e.g.*, Dkt. 15-1, at 54. The Chief Judge, the Special Committee, and the Judicial Council rejected that request without prejudice to Plaintiff's renewing it after complying. Dkt. 15-1, at 54-58, 54 n.1, 61, 102; Dkt. 30-1, at 188-90, 197 n.8. The Judicial Council explained that the "narrowed" basis underlying the challenged order did not involve any "disputed facts" regarding "'personal interactions between Judge Newman and other judges'" and "the only question before the Council" was Judge Newman's non-compliance with that order. Dkt. 30-1, at 226 (quoting Dkt. 25-1, at 77).

Plaintiff sought review by the JC&D Committee, App.1-31, which unanimously affirmed. Dkt. 40-1. The Committee declined to disturb the Judicial Council's decision against transfer, *id.* at 15-21; concluded Plaintiff "Was Not Denied Due Process," *id.* at 21-22; and decided Plaintiff's one-year suspension, "subject to renewal if the failure to cooperate persists," was appropriate, *id.* at 26-29.

8

3. Plaintiff continued to stymie the investigation. In 2024, after giving Plaintiff an opportunity to present new evidence and arguments, the Judicial Council imposed another one-year suspension, subject to the same possible renewal or rescission. Judicial Council Order 1-2 (Sept. 6, 2024), https://perma.cc/D8WT-LWUN.

Plaintiff moved for reconsideration, submitting a new expert report. 2025 Report at 6-7. The Special Committee retained experts to review Plaintiff's submissions, received expert reports, permitted Plaintiff to file supplemental reports, and, at Plaintiff's request, allowed depositions of all the experts. *Id.* at 8-9; *see* 28 U.S.C. § 353(c); Rule 13(a).

Plaintiff produced medical records that raised concerns about Plaintiff's cognitive abilities. For example, records from 2022 refer to "memory impairment" and "forgetfulness," and some records refer to Plaintiff's law clerk "as her … 'caregiver,' … and even as her 'legal guardian.'" 2025 Report at 4-5.[2] Moreover, Plaintiff's initial expert, Dr. Rothstein, testified that he had actually recommended further testing and

---

[2] At Plaintiff's request, the Special Committee has publicly released various Judicial-Council materials, subject to her redactions regarding her medical records. *E.g.*, Order (July 8, 2023), https://perma.cc/7ZFN-AAWG; Order at 6-7 (Feb. 26, 2025), https://perma.cc/GW6U-D6XD.

**PUBLIC COPY—SEALED MATERIAL DELETED**

that his initial report avoided "definitive" language about fitness for duty. *See* 2025 Report at 2-3; *see also id.* at 3 (Plaintiff's second expert, Dr. Carney, explained a fitness-for-duty evaluation would require more neuropsychological testing).

Against this backdrop, in 2025, the Judicial Council again unanimously concluded that good cause existed to order Plaintiff to undergo neurological and neuropsychological examination and imposed a one-year suspension, subject to the same possibility of renewal or rescission.  2025 Order 13.

4. [3]

---

[3] Records from JC&D proceedings are required to be kept confidential. *See* 28 U.S.C. § 360(a).  Defendants will provide the relevant documents ████████████████████████████ upon request and under seal.

C.    **Prior Proceedings**

In May 2023, Plaintiff sued the Judicial Council in district court, asserting, *inter alia*, that she had been removed from office, *see* JA51-54, and deprived of due process, JA54-55.

The district court held that Congress precluded it from reviewing statutory and as-applied constitutional challenges to determinations made under the Act, JA162-68, and rejected Plaintiff's facial challenges to the Act, JA178-82, JA203-15.

This Court unanimously affirmed.  Add.22.  The panel rejected Plaintiff's arguments that *McBryde* had been overruled or was inapplicable, Add.11-17, and rejected Plaintiff's facial challenges, Add.17-19.

## ARGUMENT

This case does not warrant rehearing en banc.  Plaintiff's central contention is that this Court should overrule *McBryde*.  But *McBryde*'s interpretation of the Act has been this Circuit's settled law for nearly a quarter-century; its reasoning is correct and consistent with the Act's plain language; the only other court of appeals to consider the same question reached a similar conclusion; and Congress subsequently reenacted the Act's text without change.  Plaintiff can raise her constitutional arguments to the

Judicial Conference's JC&D Committee, ██████████████████

████████████████████████████████████████.

## I.    *McBryde* Should Not Be Overturned.

### A.    *McBryde* Was Correctly Decided.

When creating the Act's regime for addressing judicial conduct and disability, Congress sought to protect judicial autonomy and independence by empowering the Judiciary to self-police.  S. Rep. No. 96-362, at 11 (1980) (discussing ways "the judicial branch … can keep its own house in order").  Accordingly, Congress authorized the Article III judges of each circuit's judicial council to issue orders addressing judicial conduct and disability, subject to review by the Article III judges of the Judicial Conference.

Because Congress provided this alternative form of review by Article III judges, this Court in *McBryde* correctly gave effect to the Act's plain language: "review of [an] action of [a] Judicial Council" may happen only by "petition[ing] the Judicial Conference," 28 U.S.C. § 357(a), and except for such review, "all orders and determinations[ ] … shall not be judicially reviewable on appeal or otherwise," *id.* § 357(c).  *See McBryde*, 264 F.3d at 59-63.  As the Fifth Circuit observed, "Congress has made crystal clear its intent that the federal courts as such exercise no appellate jurisdiction" over

12

judicial-council decisions under the Act.  *In re McBryde*, 117 F.3d 208, 220 n.7 (5th Cir. 1997).

Section 357(c) does not foreclose all avenues to challenge judicial-council orders on constitutional grounds.  As-applied constitutional claims can be raised before the Judicial Conference—specifically, its JC&D Committee.  Add.17; *McBryde*, 264 F.3d at 62-63.  Under Judicial Conference rules, Article III judges on the JC&D Committee review a challenged judicial-council order under a classic judicial standard of review, looking "for errors of law, clear errors of fact, or abuse of discretion." Rule 21(a).  And each reviewing judge enjoys life tenure and protection against salary diminution, rendering them as independent in their review functions under the Act as they are in their review functions in court.  *See McBryde*, 264 F.3d at 61 (observing that "it is not clear whether there is any material difference between" review by a "court" and review by the Judicial Conference).  It makes sense, then, that Congress referred to Judicial-Conference review under § 357(a) as a form of "judicial review[ ]."  28 U.S.C. § 357(c) (orders under the Act "not judicially reviewable" "[e]xcept as expressly provided in this section").

Plaintiff insists that § 357(c) does not mean what it says regarding the exclusivity of Judicial-Conference review. She asks this Court to modify the internal-policing scheme that Congress designed for the Judicial Branch by permitting district-court review of judicial-council orders. 28 U.S.C. § 357(a). Yet Plaintiff does not identify any salient protection offered by Article III courts but not the judges of the Judicial Conference. She instead relies on the presumption that Congress does not "intend[ ] to preclude judicial review of constitutional claims." Pet. 13 (quoting *Demore v. Kim*, 538 U.S. 510, 517 (2003)).

The Act, however, does not preclude judicial review. It simply routes as-applied challenges for review by the Article III judges of the Judicial Conference. Moreover, *McBryde* leaves plaintiffs free to bring facial constitutional challenges to Congress's handiwork in district court. *Cf. Johnson v. Robison*, 415 U.S. 361, 373 (1974). Plaintiff identifies no way in which *McBryde* is inconsistent with the principles applied in cases like *Demore* and *Johnson*, *see Weinberger v. Salfi*, 422 U.S. 749, 762 (1975), nor does she defend an interpretation that would empower a single district judge to reject a unanimous conclusion of the many Article III judges of a judicial council and the JC&D Committee. Nor, to the extent Plaintiff seeks a

14

district-court order compelling transfer, does she address the propriety of a district-court injunction affecting the decisions of the Chief Justice—who alone has transfer authority.[4]  As *McBryde* recognized, Congress clearly chose to foreclose district-court litigation over internal judicial investigations and discipline of specific judges, and the Constitution permits that choice.

### B.    *McBryde* Was And Is Consistent With Circuit Precedent.

Plaintiff errs in asserting (Pet. 14-16) *McBryde* conflicts with this Court's decisions.  She points to no decision addressing a statute in which Congress created an alternative route to review by Article III judges, nor does she acknowledge the unique task Congress faced in creating mechanisms for judicial oversight of judges themselves.

Plaintiff's effort to manufacture an intra-circuit conflict relies largely on cases predating *McBryde*.  *See* Pet. 14-15 (citing *Ungar v. Smith*, 667 F.2d 188 (D.C. Cir. 1981); *Dart v. United States*, 848 F.2d 217 (D.C. Cir. 1988)).  But *McBryde* addressed these cases and found no conflict, 264 F.3d at 59, 62-63, and this Court declined to review that conclusion en banc,

---

[4]  Plaintiff wrongly suggests (Pet. 6 n.3) that the Chief Justice never refuses transfer requests.  *See* Letter from Jeffrey P. Minear to Elizabeth H. Paret (May 8, 2020), https://perma.cc/KM7E-VFPP.

**PUBLIC COPY—SEALED MATERIAL DELETED**

278 F.3d 29 (D.C. Cir. 2002) (per curiam); *see also* 537 U.S. 821 (2002)

(denying certiorari). *McBryde* also fully accords with out-of-circuit

reasoning. *See In re McBryde*, 117 F.3d at 220 n.7.

Nor has Judicial-Conference practice post-*McBryde* "undermine[d]"

this Court's decision. Add.13-14. The panel correctly rejected that

argument, Add.14, and in any event, Plaintiff is simply wrong that the JC&D

Committee has not "seriously engaged" with her constitutional arguments,

Pet. 11 n.8.

Since *McBryde*, the JC&D Committee has expressly addressed

constitutional claims, including Plaintiff's. *See In re Complaint of Judicial

Misconduct*, slip op. at 30-34, C.C.D. No. 17-01 (Aug. 14, 2017)

https://perma.cc/AKC7-UB4Z (explaining that a judicial council order "did

not violate the Fourth Amendment"); Dkt. 40-1, at 14-15, 21-22 (outlining

Plaintiff's constitutional challenges but concluding "Judge Newman Was Not

Denied Due Process"). To the extent Plaintiff complains (Pet. 11 n.8; *see*

Add.14 n.3) the JC&D Committee's analysis of her constitutional arguments

was superficial, ██████████████████████████████████.

*Compare* App. 9-13, *with* Dkt. 40-1, at 14-15, 21-22. Notably, in her 2023

JC&D Committee petition, ██████████████████████████

16

██████████████████████████████. *See* App. 6, 12. █████████

██████████████████████████████████████. *See* App. 29-30.

Plaintiff cannot complain about the brevity of the Committee's discussion

after failing to develop her arguments.

### C. *Stare Decisis* Militates Against Overturning *McBryde*.

*McBryde* embodies a longstanding judicial interpretation of an Act of

Congress. There is a "high burden imposed on any party who urges this

Court to depart from the principle of *stare decisis*." *United States v.

Burwell*, 690 F.3d 500, 504 (D.C. Cir. 2012) (en banc). *McBryde*'s

jurisdictional holding rests on statutory interpretation, making Plaintiff's

burden "greater" because "unlike … constitutional interpretation, Congress

remains free to alter what [courts] have done." *Id.* (cleaned up).

Congress has indicated no discomfort with *McBryde* or the Fifth

Circuit's analogous reasoning in the nearly twenty-five years since this

Court's decision. To the contrary, in 2002, Congress reenacted the Act's text,

116 Stat. 1848-1855, and thus presumptively "accepted and ratified" those

holdings. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project,

Inc.*, 576 U.S. 519, 536 (2015) (cleaned up). The argument for adhering to

*McBryde* is thus even stronger today than in 2002 when this Court denied rehearing.

## II. En Banc Review Is Unwarranted To Address Plaintiff's Specific As-Applied Constitutional Arguments.

Even apart from the soundness of this Court's holding in *McBryde*, nothing in Plaintiff's as-applied constitutional challenges warrants rehearing en banc. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████ And Plaintiff's cursory treatment of those claims in her en banc petition reflect their lack of merit.

### A. ████████████████████████████████████

████████████████████████████████

As the panel recognized, a judge can raise an as-applied constitutional challenge to a judicial-council order in a petition for review to the JC&D Committee. Add.17. As discussed above, Plaintiff previously availed herself of that option, asserting (albeit cursorily) such a challenge in 2023. *See supra* pp. 16-17.

████████████████████████████████████████████

████████████████████████████████████████

18



**B.      Plaintiff's Petition Fails To Justify En Banc Review Of
Her As-Applied Constitutional Claims.**

In all events, Plaintiff's as-applied claims do not warrant review by the

en banc Court.  In the introduction to her petition, Plaintiff suggests (Pet. 3)

without elaboration that the en banc Court should review a due process challenge, but then fails to explain that contention, merely flagging that claim as a "secondary" question in a footnote, Pet. 14 n.9. Plaintiff does not otherwise even advert to her as-applied due process challenge. Accordingly, Defendants do not here engage with Plaintiff's passing reference to her due process claim, which we have previously explained lacks merit. *See* Gov't Br. 61-63.

Similarly, Defendants have already explained why Plaintiff's contention (Pet. 16-20) that her suspension constitutes an unconstitutional removal from office fails. *See* Gov't Br. 53-56. Plaintiff has been only temporarily suspended from new case assignments in compliance with the Act. By their terms, the relevant orders apply "on a temporary basis for a time certain." 28 U.S.C. § 354(a)(2)(A)(i). And Plaintiff's suspension is also time-limited because she has the power to end it any time by cooperating with the Judicial Council's orders—the keys are in her own pocket. A judge subject to a temporary suspension who still holds her commission and is still entitled to draw her salary has not been dismissed from her office, and, thus, has not been removed. *See* Report of the National Commission on Judicial Discipline and Removal, 152 F.R.D. 265, 285-87 (1993).

20

***

Consistent with separation-of-powers concerns, Congress authorized the Judiciary to police itself.  The Act presumes that judicial-conduct-and-disability matters will be resolved in the first instance by a judge's home judicial council and limits judicial review of judicial-council decisions regarding a specific judge's discipline to that performed by the Article III judges of the Judicial Conference. ███████████████

████████████████████████

███████████████████ Plaintiff offers no reason to disturb this Court's longstanding respect for Congress's carefully crafted system.

21

## CONCLUSION

For the foregoing reasons, the petition should be denied.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON

 */s/ Maxwell A. Baldi*
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-0211*
  *maxwell.baldi@usdoj.gov*

DECEMBER 2025

22

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 40(d)(3)(A) and 40(d)(4) because it contains 3,897 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Expanded BT 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
Maxwell A. Baldi

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2025, I electronically filed the public, redacted version of the foregoing opposition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service of the public, redacted version of the foregoing opposition will be accomplished by the appellate CM/ECF system.

I further certify that on December 1, 2025, I caused to be filed the under-seal version of the foregoing opposition with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by electronic drop box. Service of the under-seal version of the foregoing opposition will be accomplished by mail upon:

John J. Vecchione
Andrew Morris
Mark Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203.

*/s/ Maxwell A. Baldi*
Maxwell A. Baldi